KIEVE LAW OFFICES
　Loren Kieve (Bar No. 56280)
　　lk@kievelaw.com
5A Funston Avenue
The Presidio of San Francisco
San Francisco, California 94129-5266
Telephone: 　(415) 364-0060
Facsimile: 　(435) 304-0060
lk@kievelaw.com

Counsel for Plaintiff
Grouse River Outfitters, Ltd.

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GROUSE RIVER OUTFITTERS, LTD, <br><br> Plaintiff, <br><br> vs. <br><br> NETSUITE, INC., <br><br> Defendant. | CASE NO. 16-CV-02954 LB <br><br> OPPOSITION OF PLAINTIFF GROUSE RIVER OUTFITTERS, LTD. TO THE MOTION TO DISMISS OF DEFENDANT NETSUITE, INC. <br><br> Date: September 15, 2016 <br> Time: 9:30 a.m. |

　　　　Plaintiff Grouse River Outfitters, Ltd ("Grouse River") respectfully opposes the motion of defendant NetSuite, Inc. ("NetSuite") to dismiss Grouse River's first amended complaint (the "Complaint") for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

　　　　Grouse River's Complaint was drafted taking into account (1) the complaint filed in this Court in 2014 by another NetSuite customer alleging a remarkably similar pattern of fraudulent conduct, *Kentwool Co. v. NetSuite Inc.,* No. 14-CV-05264-JST (N.D. Cal.), as well as (2) this Court's ruling on NetSuite's motion to dismiss that complaint, 2015 WL 693552 (N.D. Cal. Feb. 18, 2015).

NetSuite was represented in that action by the same counsel who represent it here. *Id.*

NetSuite's motion is therefore noteworthy for its failure to bring to the Court's attention authority (a) from this Court and (b) in which NetSuite was a party that is directly contrary to each of meritless arguments it again raises in its motion. *Id.*[1] In view of that decision, NetSuite's motion borders on the frivolous.

Grouse River assumes that the Court is thoroughly familiar with Rule 12(b)(6)'s standards. *Id.*, 2015 WL 693552, at *3.

**I.     The Complaint's Detailed Allegations of Fraud and Misrepresentation.**

The Complaint details **(a)** NetSuite's published statements, with cited references, about its capabilities [¶¶ 11-27]; **(b)** Grouse River's express stated requirements to NetSuite for an e-commerce integrated software system with improved service levels and a scalable platform capable of supporting the company's multiple retail/warehouse locations [¶¶ 29-40]; **(c)** NetSuite's extensive discussions with and representations to Grouse River, with specific dates and the people involved [¶¶ 41-65]; **(d)** how and when, again with specific dates and the people involved, NetSuite's false representations become apparent [¶¶ 66-114] – including the admission by NetSuite's Director of Account Management, Jeff Swan, that Grouse River was **(i)** one of the first, if not the first, Canadian customer and **(ii)** one of the very first customers to attempt to use NetSuite's new combination of technology, which NetSuite never told Grouse River [¶¶ 94-95, 99], and NetSuite's admissions in its subsequent SEC filings about its shortcomings with non-U.S. customers and new, untested technology [¶¶ 96-97] – **(e)** NetSuite's wholesale failures to meet its promised deliverables, and further proof of its fraudulent and negligent representations to Grouse River [¶¶ 1151-52]; **(f)** evidence of NetSuite's having similarly defrauded other customers [¶¶

---

[1] See *S. Pac. Transp. Co. v. Pub. Utilities Comm'n of State of Cal.,* 716 F.2d 1285, 1291 (9th Cir. 1983) ("dereliction of duty to the court" in failing to advise of a contrary decision in a case in which the same counsel represented the adverse party); *In re Reno*, 55 Cal. 4th 428, 510 (2012), as modified on denial of reh'g (Oct. 31, 2012) ("Attorneys are officers of the court and have an ethical obligation to advise the court of legal authority that is directly contrary to a claim being pressed").

153-56]; and **(g)** how Grouse River has been seriously damaged [¶¶ 157-165]; as well as **(h)** NetSuite's intentional efforts to destroy Grouse River [¶¶ 166-184].

## II. The Complaint Pleads Fraud with Sufficient Particularity.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." . . . To meet this standard, a "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"

*Kentwool Co. v. NetSuite Inc.,* 2015 WL 693552, at *3 (citations omitted).

A fair reading of the Complaint underscores that NetSuite is told, chapter and verse, exactly how it defrauded Grouse River. NetSuite does not even attempt to show the contrary, other than its conclusory statement [at 9:16] that the Complaint "on many occasions has not provided the requisite facts regarding the 'who, what, where and how' related to the proposed statements. *See, e.g.,* Complaint ¶¶ 14, 57, 59, 60, 63-64."

The paragraphs following ¶ 14 describe, with express citation references to NetSuite's own documents, exactly what NetSuite promised in its own published materials. ¶ 57 is simply a summary of the meetings and communications that are detailed in the preceding paragraphs. ¶¶ 59, 63-64 tell exactly who made the commitments on behalf of NetSuite. ¶ 60 is the only paragraph that does not give a "who, what or when" – but it tells NetSuite just what its representatives claimed, and how Grouse River learned it was false.

The Complaint more than satisfies the pleading standards for fraud. *Kentwool Co. v. NetSuite In.c,* 2015 WL 693552, at *3 (citations omitted). NetSuite cites [at 9:1-5] a 2013 decision by Judge Tigar on Rule 9(b)'s pleading standards, but fails to cite His Honor's more recent 2015 *Kentwool* decision. Grouse River has therefore properly pleaded fraud, to the extent necessary, in its First (fraud), Second (negligent misrepresentation), Third (fraud in the inducement) and Fourth (Business and Professions Code § 17200 *et seq.*) causes of action.

NetSuite purportedly seeks to dismiss Count IV, but its motion does not address Count IV or mention Business and Professions Code § 17200 *et seq.* or its pleading requirements. On that

ground alone, its effort to dismiss Count IV should be denied. *Medimmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590JF(HRL), 2010 WL 2925390, at *3 (N.D. Cal. July 26, 2010) ("issue was not properly briefed, much less argued"). (Although claims brought under § 17200 are subject to Rule 9(b) if they are "grounded in fraud," as are Grouse River's, *Marcus v. Apple Inc*, No. C 14-03824 WHA, 2015 WL 151489, at *3 (N.D. Cal. Jan. 8, 2015), as explained above, Grouse River's Complaint satisfies Rule 9(b).)

### III. The Complaint Sufficiently Pleads Negligent Misrepresentation.

NetSuite argues [at 9:6 - 10:3] that a cause of action for negligent misrepresentation must also satisfy Rule 9(b)'s pleading requirements. For the reasons discussed above, assuming this argument is correct (which, as demonstrated below, it is not), the complaint's allegations do so.

Because NetSuite has again inexplicably failed to advise the Court of it, NetSuite would have the Court ignore the ruling in *Kentwool Co. v. NetSuite Inc.* that Rule 9(b) does not apply to a claim for negligent misrepresentation:

> For reasons discussed more fully in *Howard v. First Horizon Home Loan Corporation,* No. 12–cv–05735–JST, 2013 WL 6174920 (N.D.Cal. Nov. 25, 2013), the Court concludes that Rule 9(b) does not apply to claims for negligent misrepresentation. In *Howard,* the Court explained that "the language and underlying policy of Rule 9(b) do not support applying that rule to claims for negligent misrepresentation.... '[B]ecause an allegation of negligent misrepresentation suggests only that the defendant failed to use reasonable care—an objective standard—it does not result in the kind of harm that Rule 9(b) was designed to prevent.' " *Id.* at *5 (quoting *Petersen v. Allstate Indem. Co.,* 281 F.R.D. 413, 418 (C.D.Cal.2012)). Accordingly, NetSuite's motion to dismiss Kentwool's negligent misrepresentation claim for failure to satisfy the Rule 9(b) pleading requirements is denied.

2015 WL 693552, at *6; see also *Bernstein v. Vocus, Inc.,* No. 14-CV-01561-TEH, 2014 WL 3673307, at *5 (N.D. Cal. July 23, 2014) ("The Court . . . joins in the[] holdings that negligent misrepresentation claims are not subject to the heightened pleading standards of Rule 9(b)"); but see *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014) (discussing divergent N.D. Cal. cases and holding that "negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b)").

To use the Court's language in *Apex Directional Drilling, LLC v. SHN Consulting Engineers & Geologists, Inc.,* 119 F. Supp. 3d 1117, 1128 (N.D. Cal. 2015) (citation omitted), "[r]egardless of whether [Grouse River's] averments are evaluated under Rule 9(b) or the more

Opposition to Motion to Dismiss 4 CASE NO. 16-CV-02954 LB

lenient requirements of Rule (8)(a), they are sufficient to state a claim. The complaint sets forth with considerable specificity the 'who, what, where, when, and how' of SHN's alleged misrepresentations."

## IV. The Economic Loss Rule Does Not Apply to NetSuite's Frauds.

NetSuite's argument that Grouse River's claims for damages are barred by the economic loss rule is equally meritless.

Ironically, NetSuite finally does cite, buried in a footnote [at 10 n. 8], the *Kentwool* decision for the proposition that NetSuite does not sell a product, but a "technology solution" or, as the Court ruled, "the provision of services." 2015 WL 693552, at *4.

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.,* No. C-13-1803 EMC, 2013 WL 4530470, at *9 (N.D. Cal. Aug. 26, 2013), on which NetSuite relies [at 10:6] for its argument that the economic loss rule bars Grouse River's claims for damages, involved a defective product ("defective TOUGHCable"), not the fraudulent provision of services, as here.

As noted in *Tasion,* a clear line of California decisions holds that where, as here, the contract was induced by fraud, the plaintiff can recover all its damages:

> [I]n [*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004)], the Court found that the plaintiff's fraud and intentional misrepresentation claims were not barred by the economic loss rule because they were based on allegations that the defendant had not just delivered defective helicopter parts, but had also falsely certified those parts to comply with certain safety standards and failed to provide information that would have allowed the plaintiff to sooner discover and replace the defective parts. *Id.* at 990–91. The court thus found that the defendant's "tortious conduct was separate from the breach itself, which involved [the defendant's] provision of the nonconforming clutches," and thus the economic loss rule did not bar the claims based on the conduct that went beyond mere breach of contract. *Id.* The court noted the policy rationale for this exception to the economic loss rule: While parties, perhaps because of their technical expertise and sophistication, can be presumed to understand and allocate the risks relating to negligent product design or manufacture, those same parties cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction. *Id.* at 993 (internal citation omitted).

2013 WL 4530470, at *10.

In *Robinson Helicopter*, the California Supreme Court reinstated an award of "$1,555,924, which represented the cost of (1) replacement parts, and (2) substantial employee time spent investigating the cause of the malfunctioning parts and the identification and replacement of parts on helicopters that had already been sold to customers" as well as a $6 million punitive damages

award. 34 Cal. 4th at 987. The Complaint (in ¶¶ 157-164) sets forth all the similar damages Grouse River has incurred.

### V. The Parol Evidence Rule Does Not Apply to Grouse River's Fraud Claims.

NetSuite raises [at 10:14 -13:11] another unmeritorious argument – that the parol evidence rule bars Grouse River's claims. NetSuite argues [at 12:9] that it "expects Grouse River may suggest that a 2013 California Supreme Court opinion gives it carte blanche to ignore the parties' integrated agreement simply by forwarding [*sic*] fraud causes of action. *Riversland, supra* at 1169."

Grouse River would have "expected" NetSuite to alert the Court to its own decision in *Kentwool* rejecting NetSuite's identical argument:

> While the parol evidence rule precludes reliance on extrinsic evidence to vary the terms of a fully integrated contract, it does permit the use of extrinsic evidence to prove fraud. Cal. Code Civ. Proc. § 1856(g). In *Riverisland*, the California Supreme Court recently reaffirmed "the venerable maxim[:] ... [I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud." 55 Cal.4th at 1182 (internal quotation marks omitted). This exception has been interpreted to permit both fraud and negligent misrepresentation claims to go forward, even in the face of an integration clause. See *Thrifty Payless, Inc. v. Americana at Brand, LLC,* 218 Cal.App. 4th 1230, 1241 (2013) ("[U]nder *Riverisland*, extrinsic evidence is admissible to establish fraud or negligent misrepresentation in the face of the lease's integration clause.").

*Kentwool*, 2015 WL 693552, at *5.

As in *Kentwool*, Grouse River's "claims involve misrepresentations concerning the functionality of the ERP software NetSuite agreed to provide and NetSuite's ability to implement the software and correct problems as they arose – statements that are consistent with the agreements contained in the contract." 2015 WL 693552, at *6. See Complaint *passim*.

### VI. Grouse River Can Plead and Has Pleaded Justifiable Reliance.

NetSuite contends [at 13:12 - 14:21, citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996), and *Rosenthal v. Great W. Fin. Sec. Corp.,* 14 Cal. 4th 394, 419 (1996), that Grouse River "Cannot Plead Its Reliance Was Not [*sic*] Justified." This assertion has no merit – none.

The complaint alleges:

> 186. NetSuite through its authorized agents represented to Grouse River that NetSuite had the capability to design, implement and deliver a fully integrated ERP, e-commerce, and POS software solution with the specific capability and functionality to

Opposition to Motion to Dismiss      6      CASE NO. 16-CV-02954 LB

meet Grouse River's defined needs and to do so within four months of the start of the project.

187. At the time these agents of NetSuite made these representations, they knew they were false.

188. NetSuite and its authorized agents made these representations with the specific intent that Grouse River would rely on them to cause and induce Grouse River to purchase products and services from NetSuite.

189. Based on NetSuite's superior knowledge of its software and its ability to customize, configure, and implement the software for Grouse River's specific needs and uses, Grouse River, which had no actual knowledge of the software's capabilities, justifiably relied on NetSuite's representations by entering into its agreements with NetSuite and continuing the relationship with NetSuite.

190. Grouse River's reliance was reasonable in light of NetSuite's professed knowledge of NetSuite's capabilities and Grouse River's requirements.

Again, this Court has already rejected this exact same argument pressed by NetSuite:

> One necessary element of a fraud claim is justifiable reliance on the alleged misrepresentation. *Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996). NetSuite contends that Kentwool has failed to plead justifiable reliance because its claim that it relied on NetSuite's pre-contract and post-contract statements, despite the existence of a fully integrated contract signed by two sophisticated parties, is precluded by the California Supreme Court's decision in *Rosenthal*. ECF No. 34 at 12–13 (citing *Rosenthal,* 14 Cal.4th at 419). As discussed above, the court's analysis in *Rosentha*l concerning whether parties may justifiably rely on misrepresentations when they do not read their contracts does not apply here.
>
> In the complaint, Kentwool states:
>
>> Based on NetSuite's superior knowledge of its Software and its ability to customize, configure, and implement the Software for Kentwool's specific needs and uses, Kentwool, who had no actual knowledge of the Software's capabilities, justifiably relied upon NetSuite's representations by entering into the Agreement and continuing the relationship with NetSuite.
>
> Compl. ¶ 51; see also ¶¶ 65, 82. The Court concludes that these statements are sufficient to plead justifiable reliance at this stage.

2015 WL 693552, at *6. If the Court substitutes "Grouse River" for "Kentwool," it will see that Grouse River's Complaint ¶ 189 contains the identical allegations as found in Kentwool's complaint ¶ 51, quoted by the Court above.

**VII. Grouse River Has Properly Pleaded Breach of Contract.**

NetSuite's assertion that Grouse River has not properly pleaded a breach of contract is also foreclosed by the Court's *Kentwool* decision:

Opposition to Motion to Dismiss        7        CASE NO. 16-CV-02954 LB

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Washington Mut., Inc.,* 142 Cal.App. 4th 1457, 1489 (2006). "[I]t is unnecessary for a plaintiff to allege the terms of the alleged contract with precision," but "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Langan v. United Servs. Auto. Ass'n,* No. 13–cv–04994–JST, 2014 WL 4744790, at *7 (N.D.Cal. Sept. 23, 2014).

NetSuite argues that Kentwool's claim for breach of contract must be dismissed because plaintiff has failed to (1) allege that it performed its obligations under the contract and (2) point to the terms of the contract that it claims were breached. ECF No. 34 at 13–14. The Court concludes that Kentwool has adequately pleaded its breach of contract claim. In the complaint, Kentwool states that "Kentwool paid NetSuite $317,851.26, satisfying its obligations under the Agreement." Compl. ¶ 28. NetSuite correctly points out the agreement between the parties allocates other responsibilities to Kentwool in addition to payment. See, e.g., ECF No. 44 at 17 (describing "Customer Roles"). Pleading that Kentwool paid is therefore not necessarily tantamount to pleading that Kentwool performed. However, the complaint includes the phrase, "satisfying its obligations under the Agreement." Compl. ¶ 28. Construing the pleadings in the light most favorable to Kentwool, the Court therefore finds that the complaint adequately alleges that Kentwool satisfied all of its obligations under the contract.

The Court also finds that Kentwool's complaint, which described "a valid and existing contract for the purchase, customization, configuration, and implementation of NetSuite's ERP software for Kentwool's specific needs and uses," adequately alleged that NetSuite breached the contract "by supplying defective and non-functional Software, and/or failing to properly configure and implement functional software." Compl. ¶¶ 27, 29; see *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, No. 14–cv–04058–JST, 2015 WL 179560, at *5 (N.D.Cal. Jan. 14, 2015) (finding that plaintiff adequately alleged that defendant failed to perform under the contract where plaintiff alleged that defendant "failed to deliver functioning software;" that defendant was required "to deliver functional software as promised in the license agreement, to configure the software and/or deliver software that is configurable by either party;" and that defendant "failed to meet any of its obligations under the license agreement").

For the foregoing reasons, NetSuite's motion to dismiss the breach of contract term is denied.

*Kentwool Co. v. NetSuite In.c,* 2015 WL 693552, at *7–8. Compare the allegations in Grouse River's Complaint ¶¶ 113 (wiring $41,000 in payment of all outstanding invoices), 120 (payment of "all consulting fees"), and *passim* (alleging how NetSuite breached the contract). See also ECF Doc. 18 (further payment of $33,329.95).

**VIII. Grouse River Has Properly Pleaded a Violation of Penal Code § 496**

The complaint alleges:

235. Penal Code § 496(a) makes receiving or buying property "that has been obtained in any manner constituting theft" a criminal offense punishable by imprisonment. Penal Code § 496(c) provides that any person "who has been injured by a violation of [§ 496(a)] ... may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

236. Section 496(a) extends to property "that has been obtained in any manner constituting theft."

237. Penal Code § 484 describes acts constituting theft. The first sentence of § 484(a) states in relevant part: "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, . . . and thereby fraudulently gets or obtains possession of money, . . . is guilty of theft."

238. Section 484 thus defines theft to include theft by false pretense. Penal Code § 532 also defines criminal fraud in terms nearly identical to § 484(a) and provides that these acts are punishable "'in the same manner and to the same extent' as larceny."

239. As a result of the false and fraudulent representations by NetSuite and its agents and representatives set out above, NetSuite knowingly and designedly, by false or fraudulent representation or pretense, defrauded Grouse River of the money and funds it paid to NetSuite and thereby fraudulently got or obtained possession of money from Grouse River.

240. Grouse River has been injured by a violation of Penal Code § 496(a) and is therefore entitled pursuant to Penal Code § 496(c) to three times the amount of its actual damages, together with its costs of suit and reasonable attorney's fees.

Contrary to NetSuite's argument [at 15:21 *et seq.*], the statute's reach is not simply to "stolen property." As a sister California court recently stated in *Worldwide Travel, Incorporated v. Travelmate US, Inc.* (S.D. Cal., Mar. 30, 2016, No. 14-CV-00155-BAS(DHB)) 2016 WL 1241026, at *8:

> Here, Plaintiffs allege theft by false pretense and fraudulent misrepresentation. The statute applies to every person who receives, conceals, or withholds any property that "has been obtained in any manner constituting theft." Cal. Penal Code § 496. In construing the phrase "obtained in any manner constituting theft," the *Bell* [*v. Feibush* 212 Cal. App. 4th 1041 (2013)] court, in the context of a civil action, refers to California Penal Code section 484, which describes acts constituting theft. *See Bell*, 212 Cal. App. 4th at 1048. Under section 484, the following constitutes theft: "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[ing] any other person of money." Cal. Penal Code § 484(a). Theft by false pretenses has three elements: "(1) a false pretense or representation, (2) the intent to defraud the owner of his or her property, and (3) the false pretense or representation materially influenced the owner to part with the property." *Carrillo-Jaime v. Holder*, 572 F.3d 747, 752 (9th Cir. 2009) (citation omitted), abrogated on other grounds by *Descamps v. United States*, 133 S. Ct. 2276 (2013). "[T]heft by false pretenses may be accomplished *with* the owners' consent." *Id*.
>
> This Court previously held that Plaintiffs had sufficiently alleged a cause of action for fraud under Federal Rule of Civil Procedure 9(b), which has substantially similar elements. (*See* ECF No. 47 at p. 15.) Plaintiffs re-allege these same facts to establish theft by false pretense and fraudulent misrepresentation in its Section 496 claim. (*See* SAC at ¶¶ 43-44.) Under Section 496, a plaintiff must also allege that the defendant had knowledge the property was stolen or obtained in any manner constituting theft. *See* Cal. Penal Code § 496(a). In the SAC, Plaintiffs do allege that Defendants had knowledge the property was obtained in a manner constituting theft. (*See* SAC at ¶ 44.) Based on the foregoing, because Plaintiffs allege Defendants knowingly received, concealed, and withheld their

property, which had been obtained by means of false or fraudulent representations or pretense, the Court finds they have sufficiently alleged a claim under Section 496.

For the same reasons, the cross-complaint here likewise sufficiently alleges a claim under that section.

The same reasoning applies here. The Complaint properly alleges fraud. It alleges that the defendant received the proceeds of that fraud and that NetSuite knew that it had obtained Grouse River's funds based on false and fraudulent representations. Complaint ¶ 39 (quoted above). That is sufficient. *Id.*

### IX. Grouse River Has Properly Pleaded Punitive Damages.

On this one technical point, NetSuite may have a plausible, but essentially irrelevant argument. See *Lopez v. GMAC Mortgage Corp.,* No. C 07-3911 CW, 2007 WL 3232448, at *5 (N.D. Cal. Nov. 1, 2007) ("Defendants contend and Plaintiff agrees that a request for punitive damages is not a cause of action, but a prayer for relief. Plaintiff may pursue it as such if he chooses to re-allege his cause of action for fraud. See Cal. Civ. Code § 3294."); but see *Lion Raisins, Inc. v. Connecticut Indem. Co.,* No. 1:03CV6744O WWDLB, 2006 WL 509536, at *17 (E.D. Cal. Mar. 2, 2006) (referring to "a punitive damages cause of action").

Grouse River therefore respectfully requests that the Court strike the words "Count VII" on page 41 at line 4 of its Complaint, which will rectify this minor technical issue.

### *Conclusion*

NetSuite's motion to dismiss should be denied *in toto*.

Dated: August 2, 2016　　　　　　　　　KIEVE LAW OFFICES

By /s/ Loren Kieve

Loren Kieve (Bar No. 56280)

Counsel for plaintiff Grouse River Outfitters, Ltd