1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

GROUSE RIVER OUTFITTERS LTD,

Plaintiff,

v.

NETSUITE, INC.,

Defendant.

Case No. 16-cv-02954-LB

**ORDER ON MOTION TO DISMISS**

Re: ECF No. 25

## INTRODUCTION

This is a commercial contract dispute. Plaintiff Grouse River Outfitters, Ltd. is an outdoor-equipment retailer; defendant NetSuite, Inc. provides commercial software systems that integrate various aspects of retailers' businesses. The parties entered a series of written agreements under which NetSuite would install a comprehensive software system to coordinate Grouse River's business. This system would, for example, run transactions at the point of sale, track inventory, and maintain customer records. Grouse River alleges that NetSuite breached its contractual commitments. According to Grouse River, the software was not installed on time, costs overran substantially, and the system never became fully capable of performing even the "core" functions described in the contracts. Finding more in this than a breach of contract, Grouse River also alleges that, in advertisements and pre-contract discussions, NetSuite misrepresented the

capabilities of its software, its experience in installing such a system, and ultimately its ability to provide a system that could perform as promised.

For these failings, Grouse River brings seven claims: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) fraud in the inducement; (4) violation of California's Unfair Competition Law (Cal. Bus. & Profs. Code § 17200); (5) breach of contract; (6) violation of California Penal Code § 496; and (7) punitive damages.

The defendant moves to dismiss all claims under Rule 12(b)(6) and to dismiss the fraud claims for failing to plead fraud sufficiently under Rule 9(b).[1] This court has jurisdiction of this diversity suit under 28 U.S.C. § 1332. The parties have consented to magistrate jurisdiction. (ECF Nos. 7, 20.) The court previously found that this motion can be decided without oral argument. (ECF No. 38); *see* Civil L.R. 7-1(b). The court dismisses the fraud claims with leave to amend because Grouse River did not plead fraud with particularity. It dismisses the claim under California Penal Code § 496 with prejudice. The court denies NetSuite's motion to dismiss the non-fraud claims.

## STATEMENT[2]

### 1.  Pre-Contract Representations

In 2012, Grouse River began searching for an "integrated software system" that would help its (apparently thriving) retail operations grow.[3] It was then using separate systems (such as for inventory, sales transactions, and accounting); these systems "were hitting limitations in order-processing efficiency, website presentation and speed, . . . lacked an integrated shipping and warehousing component, as well as lacking a single view of each customer's transactions and preferences between various sales channels . . . ."[4]

---

[1] Motion — ECF No. 25. Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] The following fact statement reflects the allegations of the operative First Amended Complaint ("FAC"). ECF No. 9; *see e.g., LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000) (Rule 12(b)(6) analysis takes as true complaint's factual allegations and reasonable inferences therefrom).

[3] *See* FAC – ECF No. 9 at 2 (¶¶ 8-9).

[4] *Id.* at 2-3 (¶ 10).

United States District Court
Northern District of California

Grouse River began looking into NetSuite's offerings. According to Grouse River, it read (and later relied upon) statements made in NetSuite's advertising material. This material stated, for example, that NetSuite's software "enables multi-channel retail companies like Grouse River to manage all key business operations in a single hosted system, including customer relationship management . . . , order fulfillment, inventory, procurement, accounting and finance, point-of-sale . . . , e-commerce, and web site management."[5] And, more broadly, "that NetSuite had the capability to meet Grouse River's requirements."[6] Grouse River further alleges, in sum, that NetSuite later confirmed or repeated such representations in in-person meetings.[7] Finally, NetSuite also represented that "average implementation time" for the system that Grouse River wanted was 120 days.[8]

These are not all the representations that Grouse River claims that NetSuite made, but they are among the central ones. The alleged representations are further discussed in the Rule 9(b) analysis, below.

## 2. The Contracts and Installing the System

The parties' discussions culminated in a pair of written contracts in March 2014.[9] According to the complaint — and, again, taking only what appear to be some principal examples — the contracts committed NetSuite to the following promises:

- "To deliver an updated website for GrouseRiver.com that improved search, speed, and presentation of the company's [inventory] . . . . This included extending this functionality to a 'responsive' mobile website to meet the growing demand among Grouse River customers to shop on phones and other mobile devices."

---

[5] *Id.* at 3 (¶ 13).

[6] *Id.* at 3 (¶ 14).

[7] *Id.* at 10 (¶¶ 49, 51).

[8] *Id.* at 10 (¶ 49).

[9] *See* ECF No. 25-1 at 5-55. The parties' relationship comprised a handful of agreements related to the retail software system. After the initial contracts of March 2014, these seem to have consisted of project extensions and refinements. *See id.* at 20-65. Because this analysis does not require parsing the individual agreements, throughout this discussion the court mostly refers to a single "contract" between the parties.

United States District Court
Northern District of California

- "To deliver an integrated point-of-sale system that interacted with the company's inventory in real-time and provided the ability to fulfill in-store pickup, . . . integrate promotions, and provide full-visibility of customer purchase history at the retail level."

- "To . . . provid[e] a single unified view of each customer's interactions and purchases while tailoring promotions and a website shopping experience to preferences identified through their interactions with the company."

- "To . . . track[] core inventory on a serialized item basis, enhance the accuracy of receiving and shipping functions, and allow for the segregation of inventory into multiple stores and warehouses providing a unified overview of inventory for purchasing and business management decisions."[10]

The contracts contained integration clauses. The integration clause in the contract of March 30, 2014 is typical:

> This Agreement . . . shall constitute the entire understanding between Customer and NetSuite and is intended to be the final and entire expression of their agreement. The parties expressly disclaim reliance on any and all prior discussions, emails, RFP's and/or agreements between the parties. There are no other verbal agreements, representations, warranties[,] undertakings or other agreements between the parties.[11]

Other contracts in issue had nearly identical integration clauses.[12]

The project faltered from the start. The NetSuite system was not installed and operational by its original deadline of September 12, 2014.[13] The system appears never to have met some or most of its promised capabilities.[14]

### 3. This Lawsuit

Grouse River eventually filed this lawsuit. It alleges that it has been damaged by the failure of NetSuite's software to live up both to the company's representations, and to the promises of the

---

[10] ECF No. 9 at 8 (¶¶ 32-36); *see also id.* at 9 (¶¶ 37-40) (additional promised capabilities).

[11] ECF No. 25-1 at 12 (¶ 13).

[12] *See id.* at 22 (¶ 11), 5 (¶ 6).

[13] *Id.* at 13 (¶ 73).

[14] *See, e.g.,* (ECF No. 9 at 13 [¶ 77]) ("As of April 2016, . . . NetSuite has still not provided the promised level of performance and integration, and the [point-of-sale] errors . . . continue to saddle Grouse River with significant costs and lost business opportunities."); *id.* at 23-27 (¶¶ 129-51) (enumerating system's functional failures).

ORDER — No. 16-cv-02954-LB          4

United States District Court
Northern District of California

contract.[15] It brings the seven claims listed at the outset of this order: three for fraud; one under California's Unfair Competition Law (Cal. Bus. & Profs. Code § 17200); one for breach of contract; one under California Penal Code § 496; and one for punitive damages.[16]

### ANALYSIS

## 1.   Rules 12(b)(6) and 9(b)

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

Fraud allegations elicit a more demanding standard. Rule 9(b) provides: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . . Malice, intent,

---

[15] *Id.* at 29-30 (¶¶ 157-65).

[16] *Id.* at 34-41 (¶¶ 185-244).

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, a driving concern of Rule 9(b) is that defendants be given fair notice of the charges against them. *See, e.g., In re Lui*, 2016 WL 1212113, *1 (9th Cir. Mar. 29, 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

### 2.   Request for Judicial Notice

NetSuite asks the court to judicially notice the several written contracts that constitute the parties' agreement.[17] The court can consider them on a Rule 12(b)(6) motion because they are referenced throughout, and are integral to, the challenged complaint, and because Grouse River has not disputed their authenticity. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

### 3.   The Parol Evidence Rule and the Fraud Exception

#### 3.1 Section 1856 and *Riverisland*

NetSuite argues that the contracts are integrated agreements and that the parol-evidence rule thus bars Grouse River's fraud claims.[18] The parol-evidence rule does not bar the fraud claims. This is conclusively established by the Supreme Court of California's decision in *Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013). The *Riverisland* court restored California's commitment to the "longstanding," and traditionally "broad," "fraud

---

[17] ECF No. 25-1.

[18] Motion — ECF No. 25 at 15-18.

exception" to the parol-evidence rule. *Id.* at 1171. Grouse River's fraud claims come within that exception. The parol-evidence rule thus does not bar them.

The parol-evidence rule in California appears primarily in § 1856 of the California Code of Civil Procedure. Section 1856(a) states the basic rule: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. P. § 1856(a). Section 1856(f) then "establishes a broad exception to . . . the parol evidence rule." *Riverisland*, 55 Cal. 4th at 1174. That subsection provides: "Where the validity of the agreement is the fact in dispute, this section [§ 1856] does not exclude evidence relevant to that issue." Cal. Code Civ. P. § 1856(f). This exception "rests on the principle that the parol evidence rule, intended to protect the *terms* of a valid written contract, should not bar evidence challenging the *validity* of the agreement itself." *Riverisland*, 55 Cal. 4th at 1174 (emphases in original). The principle extends to validity challenges that allege fraud: "Evidence to prove that the instrument is void or voidable for . . . fraud . . . is admissible. This evidence does not contradict the terms of an effective integration, because it shows that the purported instrument has no legal effect." *Id.* at 1174-75 (quoting 2 B. Witkin, *California Evidence* § 97 at 242 (5th ed. 2012)). Section 1856(g) "expressly state[s]" this "fraud exception" to the parol-evidence rule: "This section [§ 1856] does not exclude other evidence . . . to establish . . . fraud." Cal. Code Civ. P. § 1856(g) (quoted in *Riverisland*, 55 Cal. 4th at 1175). It is therefore permissible — it does not infract the parol-evidence rule — to charge that a fully integrated contract is invalid because it was "procured by means of oral promises fraudulent" in the way alleged, "however variant" the alleged representations may be "from the terms of the written engagement." *Riverisland*, 55 Cal. 4th at 1181 (quoting *Langley v. Rodriguez*, 122 Cal. 580, 581-82 (1898)).[19]

---

[19] The basic parol-evidence rule also appears in § 1625 of the California Civil Code, which states: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." This civil-code version does not elaborate on the core rule as does § 1856 in the procedural code.

Though "broad," this fraud exception allows only claims that challenge a contract's validity. Claims that merely restate broken promises (read: contractual breaches) as fraud are not within the exception; these remain barred by the parol-evidence rule. As the *Riverisland* court wrote: "The [parol-evidence] rule cannot be avoided by showing that the promise outside the writing has been broken; such breach in itself does not constitute fraud." *Riverisland*, 55 Cal. 4th at 1181 (quotation omitted).

Grouse River's three fraud claims all come within the fraud exception of § 1856(g). The claim for "fraud in the inducement" may be the paradigmatic "fraud exception" claim. *See Riverisland*, 55 Cal. 4th at 1173 n. 3 ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract[.]") (quoting *Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (1996)); *id.* at 1181 ("Historically, this unconditional rule [*i.e.*, the fraud exception] was applied in cases of promissory fraud."). With that claim, Grouse River alleges that NetSuite "intended to deceive Grouse River in order to induce [it] to enter into its agreements with NetSuite."[20] The remaining two fraud claims, one for fraudulent and one for negligent misrepresentation, similarly allege that NetSuite knew that the challenged statements were false and intended to induce Grouse River to rely upon them — meaning, to enter the contract.[21]

Read most favorably to the plaintiff, *e.g., Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007), these claims all charge that the contracts were "procured by means of [fraudulent] oral promises." *See Riverisland*, 55 Cal. 4th at 1181. They do not merely recast broken promises, which is to say contractual breaches, as fraud. The parol-evidence rule thus does not bar Grouse River's fraud claims.

### 3.2 Analogy — *Thrifty Payless*

The decisions in *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230 (2013), and *Kentwool Co. v. NetSuite, Inc.*, 2015 WL 693552 (N.D. Cal. Feb. 18, 2015), confirm

---

[20] FAC — ECF No. 9 at 38 (¶ 218).

[21] *See id.* at 34, 36 (¶¶ 188, 201).

this conclusion. Those decisions both followed *Riverisland* to hold that contract-related fraud claims were viable, and that extrinsic evidence could be admitted to prove those claims, even in the face of fully integrated agreements. In other words, the parol-evidence rule did not bar the fraud claims.

In *Thrifty Payless*, the California Court of Appeal reversed a demurrer (equivalent to a granted Rule 12(b)(6) motion) on fraud claims arising out of a commercial real-estate lease. *See Thrifty Payless*, 218 Cal. App. 4th at 1233-34. The parties' dispute was over the tenant Thrifty's share of taxes and other costs. *See id.* at 1234. Pre-lease negotiations between Thrifty and the defendant landlord "contained . . . [the landlord's] estimates" of "Thrifty's probable *pro rata* share of" such costs. *Id.* "The final lease stated that Thrifty would pay its *pro rata* share of such expenses [but] did not contain any formulas, figures or percentages regarding Thrifty's share of such expenses." *Id.* "After Thrifty moved into the shopping center, its share of these expenses substantially exceeded [the landlord's] estimates . . . ." *Id.* Thrifty sued for (among other things) fraud and breach of contract. *See id.* The landlord demurred to (moved to dismiss) the fraud claims under the parol-evidence rule. The fraud claims were barred, the landlord argued, because, under the contract's integration clause, "prior negotiations and discussions . . . were no more than 'estimates,' [that] were merged into the lease." *Id.* at 1237.

The California Court of Appeal disagreed, holding that the parol-evidence rule did not bar the fraud claims. The court wrote: "[U]nder *Riverisland,* . . . extrinsic evidence is admissible to establish fraud or negligent misrepresentation in the face of the lease's integration clause. Thus, Thrifty can allege both intentional and negligent misrepresentations based upon [the defendant's] grossly inaccurate estimates." *Id.* at 1241-42. (And, in an observation that resonates with the allegations here, the *Thrifty Payless* court added: "[T]he huge disparity between the estimates and the ultimate costs supports an inference of misrepresentation." *Id.* at 1242 n. 7.) The appeals court reversed the demurrer and revived the fraud claims. *Id.* at 1243.

### 3.3 Analogy — *Kentwool*

Last year's decision in *Kentwool*, from this district, is to the same effect. The district court there held that California's parol-evidence rule did not bar fraud claims almost identical to those

United States District Court
Northern District of California

involved here. For purposes of this Rule 12(b)(6) analysis, in fact, on operative points *Kentwool* cannot be distinguished from this case. This court agrees with *Kentwool's* reasoning and reaches the same conclusion.

In *Kentwool*, a NetSuite customer sued over the functioning of NetSuite's Enterprise Resource Planning ("ERP") system. *Kentwool*, 2015 WL 693552 at *1. In addition to contract claims, the *Kentwool* plaintiff sued for "fraud by misrepresentation, negligent misrepresentation, and fraud in the inducement." *Id.* at *1, *5. These claims "involve[d] statements [allegedly] made by NetSuite, both before and after the" relevant contract "was signed, concerning NetSuite's experience and the capabilities of its software." *Id.* at *5. The *Kentwool* contract had an integration clause identical to those involved here. *Compare id. with* ECF No. 25-1 at 12 (¶ 13). As in this case, NetSuite moved in *Kentwool* to dismiss the fraud claims under the parol-evidence rule, arguing that "fraud cannot consist of promises contrary to those contained in the parties' integrated written contract." *Kentwool*, 2015 WL 693552 at *5.

The district court disagreed. It first noted that *Riverisland* had "reaffirmed" the "venerable" fraud exception to the parol-evidence rule. *See id.* "This exception," the court continued, "has been interpreted to permit both fraud and negligent misrepresentation claims to go forward, even in the face of an integration clause." *Id.* (citing *Thrifty Payless*, 218 Cal. App. 4th at 1241). The court then confirmed that the *Kentwool* plaintiff's challenge was to the "validity of the [ERP] contract" and held that the parol-evidence rule did not bar the fraud claims. *Id.* at *5-6.

This court agrees with *Kentwool's* analysis. The *Kentwool* court's correct parol-evidence ruling applies with equal force to Grouse River's nearly identical fraud claims. The court highlights two additional points from *Kentwool*. NetSuite makes in this case the same arguments that it made in *Kentwool*; the responses here are the same as the ones that *Kentwool* correctly gave; so it is worth pointing these out.

First, NetSuite repeatedly insists that Grouse River's fraud claims contradict the terms of the parties' contracts.[22] This seems true mainly in the sense that, by alleging fraud at all, Grouse River

---

[22] *E.g.*, Motion — ECF No. 25 at 7, 15.

has transgressed its averment, embodied in the contracts' respective integration terms, that *there were no representations* outside those reduced to contract, and has reneged on its promise to "disclaim reliance" on any such representations.[23] But invoking that particular contradiction to raise a parol-evidence bar smacks of circularity. Beyond that, to a crucial degree, NetSuite's contention is inaccurate: At least conceptually, the alleged representations that underlie Grouse River's fraud claims — NetSuite's substantive assurances about how the ERP system would function, how much it would cost, the date by which it would be operational — do not contradict but *parallel* commitments made in the parties' contracts. The same issue arose in *Kentwool*. There, too, NetSuite argued that the fraud claims were barred because they alleged promises "contrary to those contained in the parties' integrated written contract." *Kentwool*, 2015 WL 693552 at *5. But, as the *Kentwool* court rightly observed,

> [The plaintiff] does not seek to enforce promises that run counter to the terms of the written contract . . . . Rather, [the plaintiff's] claims involve misrepresentations concerning the functionality of the ERP software NetSuite agreed to provide and NetSuite's ability to implement the software and correct problems as they arose — statements that are consistent with the agreements contained in the contract.

*Id.* at *6. The same is true here. Moreover, even if the alleged representations contradicted the terms of the contract — and to the extent that they do — under the fraud exception, it would not matter. Again, that exception permits fraud claims challenging a contract's validity, "however variant" the alleged representations may be "from the terms of the written engagement." *Riverisland*, 55 Cal. 4th at 1181.

Second, NetSuite cites "two key cases" — *Groth–Hill Land Co. v. Gen. Motors LLC*, 2013 WL 3853160 (N.D. Cal. July 23, 2013), and *Crane v. Wells Fargo*, 2014 WL 1285177 (N.D. Cal. Mar. 24, 2014) — to support the argument that the parol-evidence rule bars Grouse River's fraud claims even after *Riverisland*.[24] But the plaintiff in *Groth–Hill* did "not attack the validity of the written agreement." *Groth–Hill*, 2013 WL 3853160 at *15. For that reason, the parol-evidence rule barred the plaintiff's fraud claims. *Id.* (This, incidentally, is the same reading of *Groth–Hill* that *Kentwool*

---

[23] *See id.* at 7-12.

[24] Motion — ECF No. 25 at 17-18; Reply — ECF No. 31 at 7.

reached. *See Kentwool*, 2015 WL 693552 at *5-6.) In *Crane*, in working through a *pro se* plaintiff's fraud claims, the district court offered this one sentence on the relevant doctrine: "Moreover, a fraud claim may not consist of promises that run counter to the written contract." *Crane*, 2014 WL at 1285177 at *6. The *Crane* court cited *Groth–Hill* and a California state case decided before *Riverisland. Crane*, 2014 WL at 1285177 at *6. The court does not read *Crane* as misstating California's fraud exception to the parol-evidence rule. At this point in its analysis, *Crane* was moving through almost a laundry list of the failings that beset the subject fraud claims. *See id.* Moreover, in the sentence just quoted, *Crane* merely left out the significant degree to which, under § 1856(g) and *Riverisland*, fraud claims can rest on promises that are "variant" from a contract's terms. To the extent that *Crane* does state a rule, or reach a conclusion, that contradicts *Riverisland*, however, this court must follow *Riverisland.*

Finally in this area, NetSuite has expressed concern that *Kentwool* is being invoked as if it had some sort of *res judicata* effect.[25] This is not so. The court does not suggest that *Kentwool* operates in this way. Nor does Grouse River seem to believe that it does. The role that *Kentwool* plays here is the usual one of precedential analogy: It is a case that involves similar claims, arising from similar facts, that in consequence evokes the same legal rules operating to the same effect. The court does not see *Kentwool* as compelling any particular conclusion going forward.

### 4. The Plaintiff Has Adequately Pleaded Justifiable Reliance

Justifiable reliance on the challenged representations is a necessary element of the plaintiff's fraud claims. *E.g., Lazar v. Superior Court,* 12 Cal. 4th 631, 638 (1996) (fraud; fraudulent inducement); *Cadlo v. Owens–Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (negligent misrepresentation). Grouse River has adequately pleaded such reliance. In this vein Grouse River alleges:

> NetSuite . . . represented to Grouse River that NetSuite had the capability to design, implement and deliver a fully integrated ERP, e-commerce, and POS software solution with the specific capability and functionality to meet Grouse River's defined needs and to do so within four months of the start of the project.

---

[25] Reply — ECF No. 31 at 2, 8.

United States District Court
Northern District of California

. . . .

> Based on NetSuite's superior knowledge of its software and its ability to customize, configure, and implement the software for Grouse River's specific needs and uses, Grouse River, which had no actual knowledge of the software's capabilities, justifiably relied on NetSuite's representations by entering into its agreements with NetSuite and continuing the relationship with NetSuite.[26]

Grouse River repeats the "superior knowledge" and reliance allegations throughout its fraud claims.[27]

This adequately pleads justifiable reliance for purposes of Rule 12(b)(6). Because NetSuite (allegedly) had superior knowledge about its products and services — what they could achieve and by when they could be installed and functioning — Grouse River has adequately pleaded that it was justified in relying upon the defendant's representations on those topics. *See Thrifty Payless*, 218 Cal. App. 4th at 1242; *Kentwool*, 2015 WL 693552 at *6. The pertinent information in this case was even less available to Grouse River than was the relevant information to the plaintiff in *Thrifty Payless*, so that if reliance was adequately pleaded there, then even more so is it sufficiently alleged here.

There remains, however, the question of the contractual reliance disclaimers. In its reliance argument, NetSuite points to the "fully integrated contract"[28] and, in reproducing the operative contract terms, emphasizes that in that contract NetSuite "expressly disclaim[ed] any reliance" on prior representations.[29] This raises a more nuanced problem. The reliance disclaimers may defeat one or more of the fraud claims, or they may not. There are limits, under California law, on the ability to contractually insulate oneself from liability for one's own fraud — including, specifically, by using reliance disclaimers. *Compare, e.g., Manderville v. PCG & S Grp., Inc.,* 146 Cal. App. 4th 1486, 1489, 1499-1502 (2007) (reversing summary judgment for defendant; "[E]xculpatory clauses [which included a reliance disclaimer] do not preclude, as a matter of law, the [plaintiffs'] . . . justifiable reliance, and thus . . . do not bar the . . . claim for intentional

---

[26] FAC – ECF No. 9 at 34-35 (¶¶ 186, 189).

[27] *See id.* at 36-38 (¶¶ 202, 215-16, 218).

[28] Motion — ECF No. 25 at 19.

[29] *See id.* at 7-8.

1    misrepresentation . . . .") *with Hinesley v. Oakshade Town Ctr.,* 135 Cal. App. 4th 289, 303-04

2    (2005) (affirming summary judgment against fraudulent-inducement claim; plaintiff could not

3    justifiably rely on pre-contract representations in face of reliance disclaimer) ("[A] *per se* rule that

4    an integration . . . clause establishes, as a matter of law, that a party claiming fraud did not

5    reasonably rely on representations not contained in the contract is inconsistent with California law.

6    . . . However, . . . this . . . does not mean [that] the contract provision [*i.e.,* the reliance disclaimer]

7    is in every case irrelevant."). The question may also be more appropriately raised under Rules 50

8    or 56. *See id.* at 297-303 (discussing effect of reliance disclaimer on fraudulent-inducement

9    theory).

10       The parties have not explored this issue, but it jumped out from the contract, and from

11   NetSuite's insistence on the effect of the integration terms. Definitively resolving this point may

12   require fuller factual development, and certainly will need the parties' fuller analyses. As matters

13   stand, on this Rule 12(b)(6) motion, the court holds that Grouse River has sufficiently alleged

14   justifiable reliance.

15       The court finds inapposite three cases that NetSuite cites in this area: *Rosenthal v. Great W.*

16   *Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996); *Sterling Sav. Bank v. Poulsen*, 2013 WL 3945989 (N.D.

17   Cal. July 29, 2013); and *Crane v. Wells Fargo*, 2014 WL 1285177 (N.D. Cal. Mar. 24, 2014). None

18   of these cases speaks usefully to the present reliance issue. The decisions in *Rosenthal* and

19   *Poulsen* ask whether a plaintiff can justifiably rely on representations outside the contract when he

20   has not read the contract. *See Rosenthal*, 14 Cal. 4th at 419-23; *Poulsen*, 2013 WL 3945989 at *5,

21   *10-13. (Though, strictly speaking, *Poulsen* is discussing not fraud but contract formation; it asks

22   whether failing to read a contract precludes mutual assent. *Poulsen*, 2013 WL 3945989 at *10-13.)

23   This case presents no similar fact: NetSuite itself suggests that Grouse River *did* read the subject

24   contracts: "[Grouse River's] CEO concedes [that] he read and understood" the contracts.[30] Nor

25   does anything in the loan-modification case of *Crane* suggest that Grouse River's reliance

26   allegations are deficient. *See Crane*, 2014 WL 1285177 at *5-6. These cases discuss reliance, but

27

28   ───────────────
     [30] *See* Reply — ECF No. 31 at 8-9.

United States District Court
Northern District of California

they are factually and legally different from this case, and offer nothing that is particularly helpful in addressing the situation or Rule 12(b)(6) question that is before this court. Grouse River has sufficiently pleaded justifiable reliance.

### 5. The Fraud Claims Are Not Pleaded With Sufficient Particularity

NetSuite argues that Grouse River has not pleaded its three fraud claims with the particularity that Rule 9(b) requires.[31] While acknowledging the fullness of Grouse River's 41-page, 244-paragraph complaint, NetSuite contends that the plaintiff has nonetheless mostly failed to specify the "who, what, when, where, and how" of the alleged misrepresentations and has similarly failed to say, with particularity, how those representations proved to be false.

The court agrees. The court recognizes that Grouse River has put in a large effort to state in detail the parties' experience in trying to bring off this project. Though long in detail, the complaint nonetheless fails to describe with useful specificity the required aspects of the alleged representations, and does not ultimately give NetSuite fair notice of how it supposed to have defrauded Grouse River, specifically, so that the defendant can usefully prepare a defense to these claims. *See Lui,* 2016 WL1212113 at *1 (9th Cir. Mar. 29, 2016) (notice); *Odom,* 486 F.3d at 553 (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

The complaint is prolix, and the court does not undertake an article-length dissection of the pleading to show the failure to plead fraud particularly. Three examples show the problem and are Rule 9(b) failings in their own right.

First, paragraphs 11 to 27 of the complaint lay out a small host of "NetSuite's representations to Grouse River."[32] Paragraph 28 then states: "*[M]ost if not all* of these representations were and are false and fraudulent."[33] This key allegation does not specify which of the preceding representations were false; and nothing in the complaint returns to do so (as paragraph 28 suggests

---

[31] Motion —ECF No. 25 at 13-15; Reply — ECF No. 31 at 3-6.

[32] FAC —ECF No. 9 (¶¶ 11-27).

[33] *Id.* at 7 (¶ 28) (emphasis added).

1    that it might). To wave at "most if not all of" a raft of statements is almost the exact opposite of

2    what Rule 9(b) demands.

3        Second, Grouse River points to "NetSuite's promises that its platform was 'world-class'and

4    '[enabling] companies of all sizes to deliver . . . rich, touch-point agnostic experience to their

5    customers,"[34] and it then identifies the many deficiencies in Grouse River's NetSuite system and

6    the GrouseRiver.com website that show NetSuite's failure to deliver on its promises.[35] But it does

7    not point to any misrepresentations and identifies only examples of how the product does not

8    work.

9        Third, the fraudulent-misrepresentation claim first "incorporates" into itself the preceding 184

10   paragraphs of the complaint.[36] It then alleges: "NetSuite . . . represented . . . that [it] had the

11   capability to design, implement and deliver a fully integrated . . . software solution with the

12   specific capability and functionality to meet Grouse River's defined needs and to do so within four

13   months of the start of the project. . . . At the time [that] . . . NetSuite made these representations,

14   they knew they were false."[37] Nowhere does the fraudulent-misrepresentation claim either lay out

15   the specific representations on which it is based, or cite these by paragraph number back to the

16   preceding segments of the complaint. The court went through each allegation in the complaint.

17   The fact allegations are about deficiencies in the product. The global representation that can be

18   discerned is only "the product did not work as promised."[38] This is not pleading fraud with

19   particularity.

20       An aspect of Rule 8 is instructive here. Rule 8, the basic notice-pleading rule, demands that

21   every claim for relief be embodied in "a short and plain statement." Fed. R. Civ. P. 8(a)(2). The

22   same rule requires that, "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d).

23   It is possible to violate Rule 8, not only by saying too little — by insufficiently alleging one's

24

25   [34] *Id.* at 12 (¶ 129) (alteration in FAC).

26   [35] *Id.* at 12-27 (¶¶ 129-52).

     [36] *Id.* at 34 (¶ 185).

27   [37] *Id.* at 34 (¶¶ 185-86).

28   [38] *See, e.g.,* FAC — ECF No. 9 at 23-27 (¶¶ 129-52).

claim, which is surely the more common defect — but also by saying too much. *See, e.g., Pickard v. WMC Mortgage Corp.,* 2009 WL 3416134, *3 (E.D. Cal. Oct. 21, 2009) (quoting *McHenry v. Renne,* 84 F.3d 1172, 1179-80 (9th Cir. 1996)) ("Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."). In a similar way, under Rule 9(b), it is possible to recount so much "evidentiary detail," and to arrange it in such a way, that you *fail* to describe with particularity the specific misrepresentations you are suing over. This is not too surprising a possibility when we recall, again, that the purpose of Rule 9(b) is to promote rather than defeat the clear statement of fraud claims. An avalanche of detail, though "particular" in a sense, can nevertheless overwhelm clarity and so fail to be "particular" in the way that Rule 9(b) contemplates.

The court dismisses the fraud claims with leave to amend. The plaintiff is free to allege as many actionable representations as it think exists. But, for each one alleged, the plaintiff must simply and clearly state the ""who, what, when, where, and how" of the misconduct charged in the manner contemplated by Rule 9(b).

## 6.  Punitive Damages

A request for punitive damages is not a claim in its own right, as NetSuite correctly writes, but is instead a request for relief. *See Gold v. Los Angeles Democratic League*, 49 Cal. App. 3d 365, 379 n. 3 (1975) (in partial concurrence). Grouse River acknowledges this and responds that it is willing to convert its punitive-damages request from a claim into a demand for relief.[39] The court thus deems Count Seven converted from a standalone claim into a request for punitive damages. But Grouse River's request for punitive damages is predicated on fraud under California Civil Code § 3294 and so falls with the court's dismissal of the fraud claims.[40]

---

[39] Opposition — ECF No. 29 at 10.

[40] FAC — ECF No. 9 at 41 (¶¶ 242, 244).

### 7. Economic Loss Rule & Negligent Misrepresentation

NetSuite argues that the "economic loss rule" bars Grouse River's negligent-misrepresentation claim.[41] It does not. The economic-loss rule bars tort claims for losses arising out of a contract, where a failed product has caused only economic loss, but has not injured anyone or damaged other property. As the Supreme Court of California has stated it: "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 988 (2004) (quoted in *Frye v. Wine Library, Inc.,* 2006 WL 3500605, *2 (N.D. Cal. Dec. 4, 2006)). Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits — without any claim of personal injury or damages to other property." *Robinson Helicopter,* 34 Cal. 4th at 988 (quoting *Jimenez v. Superior Court,* 29 Cal. 4th 473, 482 2002)).

Excepted from this rule are (among other things) claims that a "contract was fraudulently induced." *Robinson Helicopter,* 34 Cal. 4th at 989-90*; Frye,* 2006 WL 3500605 at *2 (citing *Erlich v. Menezes,* 21 Cal. 4th 543, 552 (1999)); *see Las Palmas Assocs. v. Las Palmas Ctr. Assocs.,* 235 Cal. App. 3d 1220, 1238-39 (1991); *Krzyzanowski v. Orkin Exterminating Co.,* 2009 WL 481267, *11-12 (N.D. Cal. Feb. 24, 2009). This includes inducement claims stated in negligent misrepresentation. *See Frye,* 2006 WL 3500605 at *3 ("As Plaintiff's negligent misrepresentation claim can be characterized as relating to Defendant's inducement of Plaintiff to contract, there is also no question of it being barred by the economic loss rule.") (citing *Robinson Helicopter,* 34 Cal. 4th at 989).

All three of Grouse River's fraud claims allege that NetSuite's misrepresentations induced it to enter the subject contracts.[42] (NetSuite recognizes this, writing, "[T]he allegations Plaintiff seeks to advance are related to 'Defendant's inducement of Plaintiff to enter the contract.'"[43]) The court

---

[41] Motion — ECF No. 25 at 15; Reply —ECF No. 31 at 6.

[42] FAC — ECF No. 9 at 34-38 (¶¶ 188, 201, 213, 218-19).

[43] Reply — ECF No. 31 at 6.

United States District Court
Northern District of California

has already decided, moreover, in the context of the parol-evidence rule, that Grouse River's fraud claims are critically "independent of" the contract claim; they assert something "above and beyond" just a failure to keep promises; they do not merely recast a claimed breach of contract as fraud. The economic-loss rule thus does not bar Grouse River's negligent-misrepresentation claim. *See Robinson Helicopter*, 34 Cal. 4th at 988-89 ("independent"; "above and beyond").[44]

## 8.  Breach of Contract

NetSuite next argues that Grouse River has not adequately pleaded its breach-of-contract claim. Specifically, NetSuite argues that Grouse River has not alleged its own performance under the contract, and has not sufficiently identified the contract terms that NetSuite supposedly breached.[45] The court thinks that Grouse River has done enough in this respect to satisfy Rules 8 and 12(b)(6).

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1457, 1489 (2006). "A written contract may be pleaded either by its terms — set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference — or by its legal effect." *Haskins v. Symantec Corp.*, 2013 WL 6234610, *10 (N.D. Cal. Dec. 2, 2013). "[T]o plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms." *Id.* (quotation omitted). A plaintiff need not plead the contract terms with unusual specificity. Allegations that meet the notice-pleading standards of Rule 8 will suffice. *See, e.g., James River Ins. Co. v. DCMI, Inc.,* 2012 WL 2873763, *3 (N.D. Cal. July 12, 2012). Put differently, "it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision," but "the Court must be able generally to

---

[44] To support its argument that the economic-loss rule bars the negligent-misrepresentation claim, NetSuite cites *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 5430470 (N.D. Cal. Aug. 26, 2013). (Motion — ECF No. 25 at 15; Reply — ECF No. 31 at 6.) In that case, however, "the complaint [did] not adequately allege fraud in the inducement." *Tasion Communications*, 2013 WL 4530470 at *11 n. 6. The Ninth Circuit's unpublished decision in *Astrium S.A.S. v. TRW, Inc.*, 197 F. App'x 575 (9th Cir. 2006) — which NetSuite cites (ECF No. 31 at 6) — is "not precedent" and cannot be cited to or by this court. *See* Fed. R. App. P. 32.1(a); 9th Cir. R. 36-3(a), (c) ("not precedent").

[45] Motion — ECF No. 25 at 20.

discern at least what material obligation of the contract the defendant allegedly breached." *Langan v. United Servs. Auto. Ass'n,* 2014 WL 4744790, *7 (N.D. Cal. Sept. 23, 2014); *see Sierra View Local Health Care Dist. v. Influence Health, Inc.,* 2016 WL 2346799, *5 (E.D. Cal. May 4, 2016) (holding that fairly rudimentary contract allegations satisfied Rule 8); *Kentwool*, 2015 WL 693552 at *7-8 (rejecting NetSuite's similar argument).

The plaintiff has done enough to meet this demand. The operative complaint alleges that NetSuite "promised to meet" a number of Grouse River's "core objectives for the new system."[46] For example, according to the complaint, NetSuite promised:

- "To deliver an updated website . . . that improved search, speed, and presentation of the company's [inventory] . . . . This included . . . a 'responsive' mobile website . . . ."[47]

- "To deliver an integrated point-of-sale system that interacted with the company's inventory in real-time and provided the ability to fulfill in-store pickup, handle serialized items, integrate promotions, and provide full-visibility of customer purchase history at the retail level."[48]

- "To improve the efficiency of the company's inventory functions by tracking core inventory on a serialized item basis, enhance the accuracy of receiving and shipping functions, and allow for the segregation of inventory into multiple stores and warehouses providing a unified overview of inventory for purchasing and business management decisions." [49]

- "[To] [p]rovide integration of all core data into a single system so that a 'single view of the truth' existed for customer records, sales, accounting and any related transactions." [50]

But, Grouse River alleges, NetSuite "failed to deliver the functional software it promised."[51] More exactly, the plaintiff alleges, "NetSuite did not deliver a functional system by the Fall of 2014 as it committed to do, and did not provide a system for production use until March 2015, nearly a full year after the initial contract."[52] Furthermore, "NetSuite did not perform the system

---

[46] FAC – ECF No. 9 at 8 (¶¶ 31-32).

[47] *Id.* at 8 (¶ 33).

[48] *Id.* at 8 (¶ 34).

[49] *Id.* at 8 (¶ 36).

[50] *Id.* at 9 (¶ 40).

[51] *Id.* at 22 (¶ 117).

[52] *Id.* at 22 (¶ 120).

refinement services it contractually promised it would deliver . . . ."[53] A further example: "Contrary to its promises, NetSuite did not provision the GrouseRiver.com website to offer sub-second page load times, instead taking on average more than five seconds to load content and checkout pages."[54] And, most broadly, "None of NetSuite's promised functions has worked properly in the software solution NetSuite designed."[55]

Grouse River alleges that it paid NetSuite.[56] And it alleges that it was damaged by NetSuite's failure to meet its contractual commitments.[57] (NetSuite does not appear to contest that Grouse River has pleaded damage from the alleged contractual breach.) All this taken together sufficiently pleads breach of contract. Requiring more than this would be to demand of contract allegations a specificity like that imposed on fraud claims by Rule 9(b).

NetSuite points to *Haskins*, *supra*, as a case in which the court dismissed a contract claim that did "not clearly allege the substance of the relevant [contract] terms," and so did not put the defendant "reasonably on notice of the claims against it."[58] *See Haskins*, 2013 WL 6234610 at *10.

This case does not present the same situation as *Haskins*. The plaintiff there tried to "cobble together the terms of an implied contract" from the defendant's "advertising campaign," language from the defendant's website describing its corporate "goals," and "even [from] the name of the [challenged] product itself." *Id.* The *Haskins* defendant submitted the license agreement that accompanied the product, but the plaintiff did "not point to any terms" of that agreement that the defendant had supposedly breached. *Id.* It was not even clear to the court that a contract could in principle be built from this hodgepodge. *See id.* "Putting aside" that more conceptual question, though, the plaintiff had still "fail[ed] to paint a clear picture of the alleged contract's terms." *Id.*

---

[53] *Id.* at 23 (¶ 122).

[54] *Id.* at 23 (¶ 125).

[55] *Id.* at 39 (¶ 228).

[56] *See id.* at 21-22 (¶¶ 113, 120).

[57] *Id.* at 29-30, 39-40 (¶¶ 158-60, 163-65, 240-42).

[58] Motion — ECF No. 25 at 20.

This case is different. There is no dispute here over the express contracts in question or their terms. The plaintiff has identified the "substance of [the] relevant terms, " and the "material obligation[s]" that it believes were breached. *See id.* ("substance"); *Langan*, 2014 WL 4744790 at *7 ("material obligation"). These have to do with the timeliness of the NetSuite software installation and (at least) its chief capabilities. For purposes of Rules 8 and 12(b)(6), the complaint gives the defendant reasonable notice of the nature of the contract claim against it.

Grouse River could have done more, in responding to NetSuite's motion, to show how specific items in its complaint indeed suffice to establish the elements of its *prima facie* contract claim. The plaintiff offers a block quote to *Kentwool*, cites two paragraphs from the complaint to show that it paid NetSuite, and then waves a "*passim*" cite toward the whole 41-page, 244-paragraph complaint, which it says "alleg[es] how NetSuite breached the contract."[59] That is not tremendously helpful. The complaint is sprawling. The several contracts, too, are complicated.[60] Reading the whole complaint in the light most favorable to Grouse River, and under the contract law set out above, Grouse River has done enough to get by Rules 8 and 12(b)(6). Needless to say, however, the contract claim cannot ultimately succeed on alleged "representations" or "promises" that did not get reduced to contract terms. Though it does not warrant dismissal under Rule 12(b)(6), NetSuite is accurate in saying that the complaint does not precisely name the contract terms that were allegedly breached. That specificity will at some point be necessary. The contract claim cannot remain forever untethered to the actual terms of the parties' agreements. For present purposes, though, under Rules 8 and 12(b)(6), Grouse River has adequately pleaded breach of contract.

## 9.  California Penal Code § 496

Grouse River's final claim is for treble damages under California Penal Code § 496. Or, more exactly, under § 496(a) and (c). This claim fails as a matter of law and will be dismissed with prejudice.

---

[59] Opposition — ECF No. 29 at 8.

[60] *See* ECF No. 251 at 5-65.

United States District Court
Northern District of California

Section 496 outlaws the receiving of stolen property and provides for triple damages to anyone injured by a statutory violation. *See* Cal. Penal Code § 496(a)-(c).[61] The statute (in part) provides:

> (a) Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, . . . shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.
>
> . . . .
>
> (c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

§ 496(a), (c).

Grouse River begins by noticing that § 496(a) outlaws receiving property that has been "stolen" or obtained "in any manner constituting theft."[62] The crime of theft by false pretense under § 484(a), Grouse River then notes, includes "defraud[ing] any other person of money" by "any false or fraudulent representation or pretense."[63] The elements of theft by false pretense under § 484(a), and those of civil fraud, are in fact "substantially similar."[64] Thus, in Grouse River's view, by civilly defrauding Grouse River, NetSuite committed theft by false pretense, thereby receiving stolen property within the meaning of § 496(a), and can thus be liable under § 496(c) for triple damages.[65]

This claim fails. Four points can be made here.

First, as with the other fraud claims, Grouse River did not identify false representations or plead fraud with particularity.

Second, the property in question (Grouse River's money) was not "stolen" when NetSuite allegedly defrauded Grouse River of it. Section 496(a) aims at the receipt of stolen goods: "The Legislature's goal in enacting Section 496 was to 'eliminat[e] markets for stolen property.'"

---

[61] Statutory citations in this Part 9 are to the California Penal Code.

[62] Opposition — ECF No. 29 at 8-9.

[63] *Id.* at 9 (quoting § 484(a)).

[64] *Id.* (quoting *Worldwide Travel, Inc. v. Travelmate US, Inc.*, 2016 WL 1241026, *8 (S.D. Cal. Mar. 30, 2016)).

[65] *See id.* at *9-10.

1   *Worldwide Travel*, 2016 WL 1241026 at *6 (quoting *Citizens of Humanity, LLC v. Costco*

2   *Wholesale Corp.*, 171 Cal. App. 4th 1, 18 (2009)). Which is to say, when the property in question

3   comes into the defendant's hands, *it must already have the character of having been stolen*. *See*

4   *Worldwide Travel*, 2016 WL 1241026 at *6 ("Proving a Section 496 violation generally requires

5   establishing that (a) *the property was stolen*, and (b) the defendant was in possession of it, (c)

6   *knowing it was stolen*.") (emphases added). The first sentence of § 496 thus refers to "property that

7   *has been stolen* or that *has been obtained* in any manner constituting theft." § 496(a) (emphases

8   added).

9        The problem is thus plain enough. The property in question is Grouse River's money. NetSuite

10   allegedly defrauded Grouse River of that money. By extension, maybe it can be said that NetSuite

11   committed theft by false pretense. But it cannot be said that NetSuite thereby received stolen

12   goods in violation of § 496(a).

13        This raises and overlaps with the more complicated third point. We may call this the question

14   of dual liability. Can a person be guilty both of stealing property and, by that same act of theft, of

15   receiving (from himself) the now stolen goods? In language that was added to the statute in 1992,

16   § 496(a) provides an answer: "A principal in the actual theft of the property may be convicted

17   pursuant to this section. However, *no person may be convicted both pursuant to this section and of*

18   *the theft of the same property*." § 496(a) (emphasis added). The second sentence here reflects the

19   longstanding and "fundamental" common-law "principle" (which California has observed) "that

20   one may not be convicted of stealing and of receiving the same property." *People v. Allen*, 21 Cal.

21   4th 846, 851 (1999) (quoting *People v. Jaramillo*, 16 Cal. 3d 752, 757 (1976)). The Supreme

22   Court of California has given this dual-liability bar a "narrow" scope. *See Allen*, 21 Cal. 4th at

23   853, 857. According to the state's high court:

24        The [second] sentence [quoted above] thus prohibits, as the "narrow" common law
        rule also prohibited, dual *convictions* of any person of both an offense "pursuant to
25        this section [§ 496]" — viz., buying, receiving, concealing, withholding, or selling
        stolen property — and the offense of stealing the same property.
26

27        The first sentence . . . authorizes a conviction for receiving stolen property *even*
        *though the defendant also stole the property*, provided he has not actually been
28        convicted of the theft. After the 1992 amendment, "the fact that the defendant stole

1

the property no longer bars a conviction for receiving, concealing or withholding the same property." [*People v. Strong*, 30 Cal. App. 4th 366, 373 (1994).]

2

*Allen*, 21 Cal. 4th at 857 (emphases in original). The bar, then, is against dual criminal *convictions*.

3

*See id.* at 851-57.

4

In the civil context (and in the criminal) one can plead theories of liability in the alternative.

5

But here, the facts alleged are fraud in the taking of money and cannot amount to receipt of stolen

6

property. As more than one California court has observed: "If this principle [*i.e.,* the § 496(a) dual-

7

liability bar] were applied to the defendant's civil liability under section 496(c), . . . the defendant

8

'would not be liable for damages under the . . . fraud causes of action *and* treble damages under

9

[Section 496].'" *Worldwide Travel*, 2016 WL 1241026 at *7 (quoting *Bell v. Feibush*, 212 Cal.

10

App. 4th 1041, 1049 (2013) (citing in turn *Allen*, 21 Cal. 4th at 857-61)) (emphasis in *Worldwide*

11

*Travel*).

12

On the other hand, as Grouse River points out, in *Worldwide Travel* the federal district court

13

allowed a § 496(c) claim premised solely on civil fraud.  *See*  (ECF No. 29 at 9-10) (citing

14

*Worldwide Travel*, 2016 WL 1241026 at *8).[66] The *Worldwide Travel* court thus approved what we

15

have been calling dual (civil) liability. *See Worldwide Travel*, 2016 WL 1241026 at *6-8. The

16

*Worldwide Travel* court relied in crucial part on *Bell*, *supra*. *See Worldwide Travel*, 2016 WL

17

1241026 at *7-8. But, in *Bell*, the defendant had engaged in additional conduct beyond the

18

underlying theft. *See Bell*, 212 Cal. App. 4th at 1049. The apparently decisive ground for

19

permitting a § 496(c) claim in *Bell* was that the defendant "had violated section 496(a) not only by

20

receiving property from Bell by false pretense, but also by withholding that property when she

21

asked for it back." *Id.* That small additional conduct was enough, in *Bell's* view, to avoid

22

§ 496(a)'s dual-liability bar. *See id.* For purposes of this case, it is enough to notice that there is no

23

similar "extra conduct" here. Grouse River does not allege that it asked for its property back but

24

that NetSuite refused. Grouse River alleges only that NetSuite is guilty of the primary, underlying

25

fraud. The plain language of § 496(a) prevents Grouse River from leveraging that alleged fraud

26

_____

27

[66] The plaintiff "quotes" a sentence from *Worldwide Travel* that does not appear in that opinion. *See*

28

Opposition — ECF No. 29 at 10 ("For the same reasons . . . under that section.") The sentence is not critical to the analysis, and the court is confident that the mistake is inadvertent.

into a damages-trebling § 496(a) violation. *See Worldwide Travel*, 2016 WL 1241026 at *7 (citing *Allen*, 21 Cal. 4th at 857-61).

The fourth point to be made here is dispositive of Grouse River's treble-damages claim. The fourth point is that Grouse River has failed to allege an essential element of a § 496 violation. One element of a § 496(a) violation is the defendant's knowledge that the goods were stolen. (ECF No. 31 at 9 n. 7); *see Worldwide Travel*, 2016 WL 1241026 at *6 (citing cases). But Grouse River has not alleged that NetSuite knew that the property in question was stolen.[67] Given that the property is Grouse River's money, moreover, Grouse River *could not* make that allegation. (This also marks out a substantive difference between this case and *Worldwide Travel*. In the latter case, the plaintiff did allege that the defendant knew that the property was stolen. *Worldwide Travel*, 2016 WL 1241026 at *8.) For this specific reason, too, the § 496(c) claim fails.

Because the funds of which NetSuite allegedly defrauded Grouse River were not stolen property and because Grouse River cannot allege that NetSuite knew that the property was stolen, the § 496(c) claim fails as a matter of law and will be dismissed with prejudice.

## CONCLUSION

The court dismisses the claim under California Penal Code § 496 with prejudice, dismisses the fraud claims with leave to amend (and the UCL claim to the extent that it is predicated on fraud), and otherwise denies the motion to dismiss. The plaintiff must file and amended complaint within three weeks from the date of this order.

This disposes of ECF No. 25.

**IT IS SO ORDERED.**

Dated: October 12, 2016

_____
LAUREL BEELER
United States Magistrate Judge

[67] *See* FAC — ECF No. 9 at 40-41 (¶¶ 234-40).