UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GROUSE RIVER OUTFITTERS LTD, <br><br> Plaintiff, <br><br> v. <br><br> NETSUITE, INC., <br><br> Defendant. | Case No. 16-cv-02954-LB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Re: ECF No. 76 |

## INTRODUCTION

This case is a commercial contract dispute.[1] Plaintiff Grouse River Outfitters, Ltd. is an outdoor-equipment retailer; defendant NetSuite, Inc. provides commercial software systems that integrate various aspects of retailers' businesses. The parties entered a series of written agreements under which NetSuite would install the software system.[2] Grouse River alleges that NetSuite breached its contractual commitments and also misrepresented the capabilities of its software, its experience in installing such a system, and ultimately its ability to provide a system that could work as promised.[3]

---

[1] Second Amend. Compl. ("SAC") – ECF No. 43. Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 46 (¶ 257).

[3] *Id.* at 41–45 (¶¶ 216–265).

NetSuite moves for judgment on the pleadings to strike certain allegations in the complaint on the ground that they are not actionable fraud.[4] The court grants the motion in part.

**STATEMENT**

The court assumes familiarity with its prior orders, which recount Grouse River's claims that the integrated software system it purchased from NetSuite was installed late and never worked as promised.[5] The basic allegations are as follows. In 2012, Grouse River began searching for an "integrated software system" that would help its retail operations grow.[6] Grouse River read (and later relied upon) false statements made in NetSuite's advertising material about its capabilities to implement software solutions.[7] Grouse River later relied on express statements that NetSuite made that it could deliver a software system that would have the capability to meet Grouse River's requirements.[8] The parties entered into a pair of written contracts in March 2014.[9] The NetSuite system was not installed and operational by its original deadline of September 12, 2014.[10] The system never met its promised capabilities.[11]

Grouse River eventually filed this lawsuit. NetSuite moved to dismiss the fraud claims, and the court dismissed them with leave to amend.[12] The court found — among other things — that Grouse River had adequately pleaded justifiable reliance but had not pleaded fraud with sufficient

---

[4] Mot. – ECF No. 76 at 2 (the challenged allegations are SAC ¶¶ 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41–51, 53, 55, 57, 63–65, 67, 68−71, 73, 75–86, 89−93, 102, 114, 124, 130, 135, 139 and 147).

[5] Orders – ECF No. 41, 54.

[6] SAC – ECF No. 43 at 2 (¶¶ 8−9).

[7] *Id.* at 3–9 (¶¶ 15−40).

[8] *See id.* at 3 (¶ 14), 9–17 (¶¶ 41−92), 41 (¶¶ 219−21), 43 (¶¶ 231–35), 44–45 (¶¶ 241, 245, 248).

[9] *See* ECF No. 25-1 at 5–55. The parties' relationship comprised a handful of agreements related to the retail software system. After the initial contracts of March 2014, these seem to have consisted of project extensions and refinements. *See id.* at 20–65.

[10] SAC – ECF No. 43 at 18 (¶ 100).

[11] SAC – ECF No. 43 at 28–33 (¶¶ 148–182).

[12] Order – ECF No. 41 at 12−17.

ORDER – No. 16-cv-02954-LB       2

particularity.[13] Grouse River filed a second amended complaint with five claims: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) fraud in the inducement; (4) violation of California's Unfair Competition Law (Cal. Bus. & Profs. Code § 17200); and (5) breach of contract.[14] NetSuite moved again to dismiss the fraud claims for failing to plead fraud sufficiently under Rule 9(b).[15] The court denied the motion, primarily because the statements were at least identified particularly.[16] Reading Rule 9(b)'s pleading requirement in harmony with Rule 8(a)'s requirement of a "short and plain" statement of the facts, the court's view was that the lawsuit survived the pleadings stage.[17]

NetSuite now moves to strike some of the allegations.[18] The court held a hearing on December 14, 2017.[19]

**GOVERNING LAW**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c) motion may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [defendant]

---

[13] *Id.*

[14] *See generally* SAC – ECF No. 43.

[15] Motion – ECF No. 46.

[16] Order – ECF No. 54 at 4–5.

[17] *Id.*

[18] Motion – ECF No. 76.

[19] Minute Order – ECF No. 82.

is entitled to judgment as a matter of law." *Compton Unified Sch. Dist. v. Addison*, 598 F.3d 1181, 1185 (9th Cir. 2010).

## ANALYSIS

The motion is procedurally appropriate and valid at least in part. A chart with the court's conclusions about each challenged statement is set forth at the end of the order.

### 1. The Rule 12(c) Motion Is Procedurally Appropriate

Grouse River argues that the court should deny NetSuite's motion for judgment on the pleadings because "it is nothing more than a disguised motion to have the Court rehear NetSuite's prior Rule 12(b)(6) motion the Court carefully considered, and carefully denied. . ."[20] The precise argument — whether the statements in the complaint are not fraud because they are mere puffery — was not raised in the earlier motions or addressed in the court's two prior orders.

As the court said at the hearing, its prior order denying the motion to dismiss was aimed at moving the case forward through discovery. Moreover, there are so many allegations that might or might not — depending on context — sound in fraud that the court essentially kicked the fraud can down the road. The court anticipated that the defense was better raised later[21] and (perhaps naively) thought that the parties might resolve their contract dispute with some discovery.

In any event, it was not the court's intent to foreclose the issue. It is procedurally appropriate. Fed. R. Civ. P. 12(h)(2); *In re Apple iPhone Antitrust Litig.*, 846 F.3d 314, 320 (9th Cir.) *cert. docketed*, 2017 WL 3393652 (Aug. 8, 2017).

### 2. Statements That Are Actionable Fraud

Under California law, the elements of fraud and deceit are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages.

---

[20] Opp. – ECF No. 77 at 1.

[21] Order – ECF No. 54 at 5.

ORDER – No. 16-cv-02954-LB    4

*Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004). "In both causes of action, the plaintiff must plead that he or she actually relied on the misrepresentation." *Id*.

NetSuite argues that certain allegations in the Second Amended Complaint ("SAC") are not fraud because they are either (1) "mere puffery," (2) statements about future events; or (3) not alleged to be false.

### 2.1 Statements That Are "Mere Puffery"

NetSuite argues that the advertisements and communications described in the second amended complaint are "mere puffery."[22] Some are "mere puffery," but others are actionable because they refer to specific aspects of NetSuite's product and services.

Statements constituting mere "puffery" cannot support liability under a claim for fraud or negligent misrepresentation. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). "Puffery" has been described "as making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (citing *Cook, Perkiss & Liehe, Inc. v. Nor. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990)). "[U]ltimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Office Sols.*, 513 F.3d 1038, 1053 (9th Cir. 2008). "[A]dvertising which merely states in general terms that one product is superior is not actionable." *Cook, Perkiss & Liehe*, 911 F.2d at 246 (quoting *Smith–Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308 (N.D. Ill.1965)). "However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id.* (quoting *Stiffel Co. v. Westwood Lighting Grp.*, 658 F. Supp. 1103, 1115 (D. N.J. 1987)). Whether an alleged misrepresentation is a non-actionable statement of puffery is a question of law. *Id*.

---

[22] The challenged allegations are SAC ¶¶ 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41–51, 53, 55, 57, 63–65, 67–71, 73, 75–86, 89–93, 102, 114, 115, 124, 130, 135, 139, and 147.

The following advertisements and communications are not actionable because they are general, exaggerated assertions about characteristics of NetSuite's product: SAC ¶¶ 15, 21, 27, 31, 33, 63, 64, 67, 69, 70, 71, 75, 83, 85, 86, 89, 90. Examples of these statements include:

- "Every company wants to deliver the commerce experience that Apple delivers to customers—an experience that recognizes the customer regardless of channel or device, and efficiently delivers goods and services in world-class fashion, projecting a powerful brand message. NetSuite SuiteCommerce is architected to enable companies of all sizes to deliver this type of rich, touch-point agnostic experience to their customers." (¶ 15)

- "As the No. 1 cloud business management suite, NetSuite meets the in-store retailing needs of multi-channel and multi-location retailers with a modern POS solution that enables retailers to streamline and accelerate the transaction process, while also delivering personalized customer service…" (¶ 29)

- "NetSuite further represented at the meeting that the SuiteCommerce software could and would provide Grouse River with an Ecommerce solution that makes is "fast & easy to find products", and allow Grouse River's customers to shop efficiently through any touchpoint including social media and mobile devices." (¶ 71)

A reasonable consumer would not interpret these statements as a factual claim upon which he or she could rely. To the extent that Grouse River brings claims for fraud and misrepresentation based on these paragraphs, the court dismisses the claims.

The remaining advertisements (SAC ¶¶ 17, 19, 23, 25, 31, 35, 37) and communications (SAC ¶¶ 53, 55, 57, 65, 68, 73, 76, 77, 78, 79–82) are actionable because they make specific assertions about how NetSuite's product functions. They all state absolute characteristics of the product, such as (1) the ability to see customer "purchase history and communications with your company and whether they interacted with your brand online, at a brick-and-mortar store location or with a sales representative," and (2) the ability for shoppers to "create and manage lists of favorite or frequently purchased items." These specific statements are distinguishable from generalized "puffery" about the superiority of a product.

In addition, NetSuite's representation that it could deliver a software system that would have the capability to meet Grouse River's requirements is not puffery. Grouse River provided NetSuite with a specific list of requirements. NetSuite said it could meet those requirements. In a different context, a statement that a product could meet a customer's needs might be generalized "puffery." But in the case here, given that Grouse River asked if NetSuite could meet specific requirements,

it was plausibly reasonable for Grouse River to rely on the representation that NetSuite would deliver a product that met those specifications. NetSuite's representation that it could meet the requirements outlined by Grouse River therefore is not mere "puffery."

**2.2 Statements About Future Events**

NetSuite contends that the allegations in SAC ¶ 84 regarding NetSuite's communications with Grouse River are non-actionable because they were statements about future events. Grouse River alleges that NetSuite falsely and fraudulently "committed to have a four month implementation cycle, a top tier team of consultants on the project, 30 minute status calls every two weeks, had the clout to get things done and intended to keep the project on track."[23] The court agrees with NetSuite that the statements are not actionable fraud.

Statements that are predictions of future events or commitments to take some action in the future generally are not actionable fraud. *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991). "Certain broken promises of future conduct may, however, be actionable." *Id.* "To maintain an action for deceit based on a false promise, one must specifically allege and prove . . . that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promise to do or not do a particular thing." *Id.* at 159.

There are no allegations in the complaint that NetSuite did not intend to carry out a four-month implementation cycle or provide other follow-up to keep the project on track. The statements in SAC ¶ 84 are not actionable fraud. For this paragraph only, Grouse River may amend to cure this deficiency if it can.

**2.3 Statements Not Alleged To Be False**

NetSuite contends that "throughout the SAC, Grouse River often suggests that various statements may form the basis of fraud claims without actually pleading them as such."[24] More succinctly, the argument is that the SAC does not allege that these statements are false. The complaint, however, is very clear about what statements it alleges to be false and fraudulent, as it

---

[23] Motion – ECF No. 76 at 11 (quoting SAC – ECF No. 43 at 16 (¶ 84), 19 (¶ 91)).
[24] *Id.* at 10 n. 4.

ORDER – No. 16-cv-02954-LB                7

states "this representation was false and fraudulent" after many (but not all) of the allegations regarding NetSuite's statements.

The court concludes that the following statements are not actionable fraud because they are not alleged to be false: SAC ¶¶ 41–51, 91–93, 102, 114, 115, 124, 130, 135, 139, 147.

### 2.4 Chart Summarizing the Court's Conclusions

The chart below summarizes the court's conclusions with respect to each statement NetSuite challenges in its motion. Some of the statements are actionable in part as fraud, and the chart specifies which part of the statement is specific enough to be distinguished from mere "puffery."

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 15 | Every company wants to deliver the commerce experience that Apple delivers to customers—an experience that recognizes the customer regardless of channel or device, and efficiently delivers goods and services in world-class fashion, projecting a powerful brand message. NetSuite SuiteCommerce is architected to enable companies of all sizes to deliver this type of rich, touch-point agnostic experience to their customers. The secret sauce behind the Apple and NetSuite approach is an integrated back-end system that combines core business processing capabilities with rich customer profiles, to deliver the brand promise of a personalized experience, anytime from anywhere. | **Non-actionable**<br><br>"World-class fashion," "powerful brand messages," "rich, touch-point agnostic experience," "rich customer profiles," "personalized experience, anytime from anywhere" are general, exaggerated assertions about characteristics of NetSuite's product which a reasonable consumer would not interpret as a factual claim upon which he or she could rely. |
| 17 | SuiteCommerce exposes native NetSuite commerce capabilities—including merchandising, pricing, promotions, payment processing, support management, and customer management—as services that can be leveraged by any presentation layer, while providing an integrated back-end business management system | **Actionable**<br><br>The statement is actionable in so far as it specifies capabilities of the program, including "merchandising, pricing, payment processing, support management, and customer management."<br><br>**The remaining parts of the paragraph are non-actionable puffery.** |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 19 | Whereas the industry standard is sub 2-second page load time, SuiteCommerce Experience offers sub-second page times by avoiding the redundant rendering and downloading associated with traditional presentation frameworks… For example, promotions can be implemented once and enabled across online, telephone and in-store transactions to augment the core transactional capabilities, and customize the system to their exact requirements…<br>Multi-Channel Business Logic: Since SuiteCommerce offers a single back-end system for processing orders, managing inventory and generating offers, a business rule such as a maximum number of purchases on a sale item, can be implemented once and enforced across the website, in-store and via telesales. | **Actionable**<br><br>"Sub-second page times" is not puffery because it is a quantified assertion of the page-load time. *See Cook, Perkiss & Liehe*, 911 F.2d at 246 (discussing *Smith-Victor*, 242 F. Supp. at 308–309). The rest of the statement primarily describes specific aspects of the product: the ability to implement promotions across online, telephone and in-store transactions; a system to process orders, manage inventory, and generate offers; the ability to set a maximum number of purchases on a sale item. |
| 21 | NetSuite is the only cloud business software suite that brings together every step of a multi-channel, multi-location retail business—POS, ecommerce, CRM, marketing, inventory and order management, and financials. Only NetSuite gives you real-time visibility into your entire retail operation, accessible from anywhere at any time. With NetSuite, you get a single view of the business across all channels, ensuring that your customer, order, inventory and financial information is always up to date and that you deliver the personalized experience your customers expect across every touchpoint. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 23 | NetSuite for Retail Provides:<br>• A single, integrated solution to manage your entire retail business.<br>• Complete 360-degree view of the customer across all channels and touchpoints.<br>• Support multiple locations, channels and brands from a single platform.<br>• A full featured and mobile ready POS.<br>• Powerful ecommerce capabilities on any device.<br>• Central management of all pricing and promotions.<br>• Real-time inventory visibility across all channels.<br>• Cross-channel order management and fulfillment.<br>• Marketing tools to target and segment offers.<br>• Easy customization for your specific retail requirements.<br>• A lower cost and less hassle than on-premise retail systems | **Actionable:**<br><br>The following statements are about specific aspects of the product: "mobile ready POS"; "Marketing tools to target and segment offers"; "Real-time inventory visibility across all channels"; "Support multiple locations, channels and brands from a single platform"<br><br>**The remaining parts of the paragraph are non-actionable puffery.** |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 25 | With NetSuite, you get a 360-degree view of each customer so that you can deliver personalized service, build customer loyalty and provide a relevant, engaging shopping experience with your brand. See their purchase history and communications with your company and whether they interacted with your brand online, at a brick-and mortar store location or with a sales representative. Provide personalized marketing to your customers based on their purchase history or demographics. Offer customers self-service options to view their online purchase history, reorder and find answers to their questions 24/7. | **Actionable:**<br><br>The following statements are specific aspects of the product: "See their purchase history and communications with your company and whether they interacted with your brand online, at a brick-and mortar store location or with a sales representative"; "Provide personalized marketing to your customers based on their purchase history or demographics;" "Offer customers self-service options to view their online purchase history and reorder."<br><br>**The remaining parts of the paragraph are non-actionable puffery.** |
| 27 | With NetSuite, integration is inherent in the product. All enterprise functions are wrapped up in a single database, application and version of code. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 29 | As the No. 1 cloud business management suite, NetSuite meets the in-store retailing needs of multi-channel and multi-location retailers with a modern POS solution that enables retailers to streamline and accelerate the transaction process, while also delivering personalized customer service… | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 31 | Speed of deployment in months not years. | **Non-actionable**<br><br>This statement is too general to be actionable fraud. |
| 33 | NetSuite delivers a cloud-based, multi-channel retail management software system that brings together POS, ecommerce, CRM and marketing, merchandising and order management, financials, and warehouse management into a single, centrally-managed solution. Our retail software solution is an end-to-end suite designed especially for multi-channel retailers that will enable enhanced customer service across channels while driving growth and increased revenue. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 35 | Site search. Solr provides capabilities like type ahead recommendations and customized search criteria settings to optimize results. Generate SEO-friendly URL links.<br>"Dynamic merchandising. Present upsells, cross-sells and related products based on merchant-driven rules such as location, browsing behavior, items in cart, best sellers or higher margins.<br>"Mobile. Responsive design enables sites to display elegantly across all devices including desktops, mobile phones and tablets.<br>"Searchandising. Promote products in search results based on search keywords and phrases or leverage product attributes such as top sellers, top rated and new arrivals.<br>"Inventory visibility. Show real-time product availability on your web store. Automatically removed out-of-stock items from your site.<br>"Sign in/sign up/forgot password. Enable account creation, returning customer sign-in and password reset.<br>"Returns. Enable self-service returns management that allows shoppers to initiate an online return authorization.<br>"Product/wish lists. Shoppers can create and manage lists of favorite or frequently purchased items." | **Actionable**<br><br>These statements represent that the product has the specific functions listed. While the statements mix in some "puffery" (e.g. "dynamic merchandising," "responsive design") the majority of these statements refer to very specific features. |
| 37 | NetSuite enhances inventory visibility with tracking and control capabilities to manage every stage of the lifecycle and control costs. …. Serialized inventory to track purchases and sales by assigning a serial number to each item. Periodic inventory counts that automatically calculate on-hand items. Pick, pack and ship management for high-volume order processing environments. | **Actionable**<br><br>The following statements describe specific aspects of the product: "Serialized inventory to track purchases and sales by assigning a serial number to each item"; "Periodic inventory counts that automatically calculate on-hand items"; "Pick, pack and ship management for high-volume order processing."<br><br>**The remaining parts of the paragraph are non-actionable puffery.** |
| 39 | NetSuite advertised and promised Grouse River that its internet platform would be "world-class" – "[enabling] companies of all sizes to deliver…rich, touch-point agnostic experience to their customers. | **Non-actionable**<br><br>These statements are too general to be actionable for fraud. |
| 42 | As we discussed previously, I have used your requirements documents to call our natively delivered functionality as well as customizations and partner solutions. | **Non-actionable**<br><br>The complaint does not allege that this is false. These are allegations about what Grouse River expressed it needed in its software system. |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 41–51 | General statements made by Grouse River as to what it hoped NetSuite might be able to deliver. The statements are not specific functionality but instead broad and general categories of information. | **Non-actionable**<br><br>The complaint does not allege that this is false. These are allegations about what Grouse River said it needed in its software system. |
| 53 | In an e-mail immediately following [a phone call with G. Fallis] Mr. Waldron provided documentation representing that NetSuite could meet the vast majority of Grouse River's requirements and stating "based on our conversation the stage of growth you are at now with Grouse River is typically when we see companies coming to NetSuite in hopes of gaining a platform that is more unified and able to scale to future growth aspirations and this is just what we provide." | **Actionable**<br><br>The statement that NetSuite "could meet the vast majority of Grouse River's requirements" is a specific representation about the functionality of the product because it was made in the context of knowing what specific requirements Grouse River had asked for (*see* SAC ¶¶ 41–51). |
| 55 | In the same April 4 e-mail Mr. Waldron gave Mr. Fallis an estimate of rough project costs and represented that "recurring cost thereafter is extremely predictable (vs. the On Premise model) as NetSuite handles the upgrades for you with our enhancement updates (twice a year) that are included with your subscription." | **Actionable**<br><br>These are specific characteristics of the product, to the extent that the statement asserts that NetSuite handles upgrades with enhancement updates (twice a year) that are included with the subscription.<br><br>**Non-Actionable**<br><br>The statement that "recurring costs thereafter is extremely predictable (vs. the On Premise model)" is puffery because it is a general statement about the superiority of the product. |
| 57 | Following Mr. Waldron's e-mail on April 4, Grouse River was repeatedly told that version upgrades would be seamless and automatically occur twice a year. This is substantiated in the sales presentation review Mr. Waldron presented to Mr. Fallis on December 3, 2013 that claimed that "customizations migrate automatically" and that Netsuite upgrades are "[Netsuite's] job". | **Actionable**<br><br>These are specific characteristics of the product, to the extent that the statement asserts that customizations migrate automatically and that Netsuite handles upgrades. |
| 63 | On September 25, 2013, Grouse River and NetSuite teams met for a review of purchasing and accounting modules. This meeting was attended by participants from Grouse River . . . . The NetSuite team represented that NetSuite could and would meet Grouse River's purchasing and accounting needs. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 64 | "As Owen mentioned on the phone today, your ecommerce requirements are a very strong fit for NetSuite ecommerce." | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 65 | On November 26, 2013, the NetSuite sales team . . . . visited Grouse River . . . and demonstrated mobile point-of-sale, responsive web design, advanced inventory reporting, and advanced marketing (tailored E-commerce user experience based on previous shopping history) and represented to Grouse River that NetSuite could and would provide this functionality to Grouse River. | **Actionable**<br><br>These statements are about specific characteristics of the product. |
| 67 | At the November 26, 2013 meeting, Mr. Waldron showed the Grouse River team a presentation indicating that the average system implementation time is five months and described implementation as "rapid" and "predictable" – necessarily representing that this could and would be the case with NetSuite's implantation for Grouse River. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 68 | The presentation further represented that NetSuite's software provides unique benefits including a "single version of the truth across all areas of the business" and a "single, unified solution to manage your retail business" with a POS system that supports "real-time inventory visibility, advanced store reporting/end of day processing, and, shop online - pick up in store." | **Actionable**<br><br>These are specific characteristics of the product, to the extent that the statement asserts that the software allowed "real-time inventory visibility" and "shop online – pick up in store." |
| 69 | The NetSuite presentation went on to show that the software only requires a subscription and eliminates the need to back-up, upgrade, migrate, tune, or replace software. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 70 | NetSuite also stated at this meeting that 0% of Grouse River's resources are needed to attend to the software's infrastructure upgrades and the migration of any customizations. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 71 | NetSuite further represented at the meeting that the SuiteCommerce software could and would provide Grouse River with an Ecommerce solution that makes is "fast & easy to find products", and allow Grouse River's customers to shop efficiently through any touchpoint including social media and mobile devices. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 73 | NetSuite's November 26, 2013 onsite presentation to Grouse River reinforced this information stating that it provided "blazing fast websites" with an average response time of 0.45 seconds and "faster than any site in the Internet Retailer 500." | **Actionable**<br><br>The statement that NetSuite provided an average response time of .45 seconds is not puffery because it is a quantified assertion of the page-load time.<br><br>**The remaining parts of the paragraph are non-actionable puffery.** |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 75 | On December 11, 2013, more initial meetings took place [with OZlink and Pacejet]. The necessary predicate for these meetings was the representation that, working with NetSuite's on-line partners, NetSuite could meet Grouse River's stated business needs and objectives. | **Non-actionable**<br><br>These predicate "representations" are too general to be actionable for fraud. There is no specific assertion in this paragraph about a false or misleading statement or representation. |
| 76 | On January 6, 2014, Messrs. Fallis, Wronski, and Hill from Grouse River met with Mr. Waldron and Branden Jenkins (in charge of NetSuite point of sale) to dive deeper into POS functionality as it relates to Grouse River's requirements. NetSuite's representatives represented that NetSuite could and would meet Grouse River's POS functionality requirements. | **Actionable**<br><br>The allegation that individuals at the meeting represented that NetSuite could meet Grouse River's POS functionality requirements is a specific representation about NetSuite's functionality. |
| 77 | On January 8, 2014, Grouse River's team . . . viewed a demonstration of integrated shipping via Pacejet, which Mr. Waldron had represented to Grouse River would work with NetSuite's system to meet Grouse River's requirements for integrated Canadian shipping from its website and ERP system. | **Actionable**<br><br>The representation that Pacejet would work with NetSuite's system and allow Canadian shipping from Grouse River's website and ERP system is a specific representation about NetSuite's functionality. |
| 78 | That presentation necessarily represented that the system NetSuite was proposing to provide to Grouse River could and would meet Grouse River's stated requirements. | **Actionable**<br><br>These are specific characteristics of the product, to the extent that NetSuite represented that it could meet specific POS functionality requirements outlined by Grouse River. |
| 79–82 | At each of [the meetings on Feb. 7, Mar. 13&17, 2014], and at all times leading up to the signing of the sales contract, NetSuite's sales team repeatedly expressed full confidence that NetSuite could and would provide a system that would meet Grouse River's detailed stated business requirements. | **Actionable**<br><br>These are specific characteristics of the product, to the extent that NetSuite represented that it could meet specific requirements outlined by Grouse River. |
| 84 | During the same March 27, 2014 call, NetSuite's Gary Specter and Michael Weiss committed that NetSuite will have a four-month implementation cycle and that they had a top tier team of consultants on this project. Mr. Fallis asked about the ability of the NetSuite team to execute against the project, emphasizing both the importance of the timeframe and expense and the need to begin seeing positive results before year-end. Mr. Specter assured Mr. Fallis that this will be the case and that the project will have continuous senior-level oversight, including Mr. Specter's own involvement, through "go-live" via twice-monthly governance calls. Summarized in an e-mail from Mr. Waldron to Mr. Fallis later that afternoon "As we discussed this afternoon we will hold a project status alignment call for 30 minutes every two weeks to check in and discuss the status of the project until go-live." | **Non-actionable**<br><br>The statements that NetSuite will have a four-month implementation cycle, have senior-level oversight, have twice-monthly governance calls, and other assurances are promises about the future and there is no allegation that NetSuite did not intend to fulfill those promises. |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 85–86 | Mr. Waldron and Mr. Weiss also represented to Grouse River that they were sales executives who had the authority, experience, and the clout to get things done. In fact, NetSuite's entire retail sales team started between March and October of 2013 and were brand new hires. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 83 | On March 27, 2014 in a final call to review the proposal, Mr. Fallis asked NetSuite's sales leader, Gary Specter, if he had confidence that the professional services and project management teams that were going to support implementation were both capable and experienced and is assured this is the case. Mr. Specter answered affirmatively . . . . | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 89–90 | Prior to signing the contracts with NetSuite Mr. Fallis communicated . . . that it was critical that the project implementation proceed on par with NetSuite's stated average implementation time frame of four months as presented in on-site presentations in November 2013 . . . .<br>Mr. Specter assured . . . that the team and resources that would be assigned to the project were capable of meeting the objectives and time frame for implementation. | **Non-actionable**<br><br>These statements are too general to be actionable fraud. |
| 91 | On March 28, 2014, Mr. Specter e-mailed Mr. Fallis stating that he intended to keep the project on track through the formation of a twice-monthly "Project Governance Call" and that he had "never had an unsuccessful deployment when this has been instituted with both partners actively participating." Mr. Specter went on to say that he "will ensure all of the key stake holders and project leaders from NetSuite will attend." | **Non-actionable**<br><br>These statements are not alleged to be false. |
| 92 | Despite Mr. Specter's earlier assurances, when the system implementation started falling behind schedule there was not only a lack of resources but then, over a dinner meeting on October 22, 2014, Mr. Specter indicated that he needed to have approval from others to escalate the situation as a "lighthouse" account but that Grouse River's account size would not warrant it to be among the company's top priorities. | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 93 | On May 1, 2014, David Mason-Jocksch, the NetSuite project manager, provided a "go-live" schedule to Grouse River indicating a project kick-off date of May 5 (for initial training) and May 20 for Business Process Mapping, with a "go-live" date of September 12, 2014. | **Non-Actionable**<br><br>This statement is not alleged to be false. |

| SAC – Paragraph Number | Non-Actionable Statement * Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 102 | On October 22, 2014, Mr. Fallis met with NetSuite. . . . The NetSuite representatives acknowledge that the project is nowhere near on track. Mr. Specter tells Mr. Fallis that he is fighting to have the Grouse River account classified as a "lighthouse" account to get the necessary expertise and resources in order to get it back on track – thereby admitting that, up until that point, NetSuite had not devoted the necessary expertise and resources to the Grouse River contract. | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 114 | On June 5, 2015, Mr. Fallis connected with Mr. Dinesh Chaurasia, the head of NetSuite's Retail and eCommerce Professional Services, who commits to a rapid resolution of the outstanding deliverables and issues stemming from NetSuite's repeated mis-handling of the project | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 115 | Mr. Fallis signs a document allegedly based on statements made on a phone call with an employee of NetSuite. Included in the e-mail from Mr. Fallis are suggestions that NetSuite said it was "committed to resolving all outstanding issues." | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 124 | Mr. Swan disclosed for the first time the extent of NetSuite's frauds, admitting that NetSuite ventured into pioneering territory with Grouse River being one of the very first customers to attempt to use the combination of technology that it did, and that Grouse River was also one of, if not the, first NetSuite Point-of-Sale customer in Canada. | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 130 | During their December 7, 2015 phone conversation Mr. Swan agreed with Mr. Fallis that it was obvious that NetSuite did not have the ability to provide the functionality it committed to and reiterated an offer to have Grouse River walk away from the platform without paying its outstanding invoices or future invoices. | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 135 | On December 17, 2015, Mr. Fallis received a reply from Mr. Swan indicating that he did "relay [Mr. Fallis'] position to the team here. And I agree there have been challenges with the implementation, which is why we're proposing the below" (referring to the proposal for Grouse River to abandon the platform without paying further licensing fees). | **Non-actionable**<br><br>This statement is not alleged to be false. |
| 139 | Mr. Nelson replied at 3:56 p m.: "Honestly, from your emails I just assumed nothing was working. Was just on your website as well. Looks awesome and screams. Performing well above the industry norms looking at our performance data." | **Non-actionable**<br><br>This statement is not alleged to be false. |

| SAC – Paragraph Number | Non-Actionable Statement<br>* Statement summarized to reduce size of table | Analysis |
|---|---|---|
| 147 | As timelines started to slip on the project due to NetSuite's inability to provide the functionality it had promised, NetSuite project managers Paul Clarke and David Mason-Jocksch and members of its services team expressed their frustration about the commitments to functionality and to meeting the time frame the NetSuite sales people had promised, indicating that they were overzealous and unrealistic, and that this was creating significant internal strife among the NetSuite teams that were struggling to allocate sufficient resources to the project. | **Non-actionable**<br><br>This statement is not alleged to be false. |

## CONCLUSION

The court grants in part NetSuite's motion. For paragraph 84 only, Grouse River may amend to cure the deficiency. The court will discuss the timing of any amended complaint at the January case-management conference.

This disposes of ECF No. 76.

**IT IS SO ORDERED.**

Dated: December 21, 2017

LAUREL BEELER
United States Magistrate Judge