July 8, 2018

Hon. Laurel Beeler
United States District Court

*Grouse River v. NetSuite, No. 16-cv-2954 LB – Discovery Dispute*

Dear Judge Beeler:

The parties have conferred by telephone (as Your Honor has allowed us to do in a prior order) and have not been able to resolve this dispute.

1. Statement of Unresolved Issue:

    Grouse River: Whether NetSuite ("NS") should be required to promptly comply with Grouse River's ("GR") Fourth Request for the Production of Documents, Exh. 1, as modified by GR's compromise below, because (1) the documents are probative of the issues in dispute and (2) contrary to the Court's directive, NS has continued its prior stonewalling and refused to discuss any compromise.

    NetSuite: Whether Grouse River's motion should be denied because it seeks to compel NetSuite to produce documents aimed at an entirely different company not involved in the current litigation between the parties?

2. Summary of the Parties' Positions:

    Grouse River

    Grouse River assumes that Court is familiar with the prior iteration of this dispute set forth in the parties' April 25, 2018 joint dispute letter (ECF Doc. 101).

    After entreating NS to provide its promised "compromise," as directed by the Court, and providing further caselaw support for why GR's document requests are appropriate, see Exh. 4, finally, on May 25, NS produced, not a compromise, but a screed refusing to produce or compromise on anything. That letter is attached as Exh. 5.

    At no point prior to the prior dispute letter did NS offer to compromise but, as demonstrated by its current position, has steadfastly refused to produce any responsive documents. The requests seek documents that will show whether, at the same time NS was defrauding GR, it was doing the same to Billabong with the exact same defective NS "SuiteCommerce" platform, and the same fundamental defects, causing Billabong, like NetSuite, to incur millions of dollars in damages.

    As set forth in GR's letter to NS, Exh. 4, the second amended complaint alleges:

    217. In the numerous advertisements, website postings, press releases, meetings, e-mails and phone calls detailed above in paragraphs 13-92, NetSuite, through its authorized agents represented to Grouse River that NetSuite had the capability to design, implement and deliver a fully integrated ERP, e-commerce, and POS software solution with the specific capability and functionality to meet Grouse River's defined needs and to do so within four months of the start of the project.

Hon. Laurel Beeler                                         2                                         July 8, 2018

According to the May 5, 2015 joint NetSuite/Billabong press release, attached to GR's fourth document requests [Exh. 1 at 9], NetSuite promised Billabong the same functional system to Billabong:

> SuiteCommerce will provide a unified, real-time technology platform enabling Billabong International to:
>
> ☐ Ensure a constant real-time flow of customer, order and inventory information across all of its sales channels, dramatically improving engagement with online shoppers, retail operations and wholesale partners.

As with its promises to GR, NS promised Billabong [Exh. 1 at 9] that:

NetSuite SuiteCommerce provides Billabong with a scalable order management solution that will allow it to utilize its inventory more effectively and be quickly updated to keep pace with the rapidly evolving retail industry and consumer expectations.

Key benefits of SuiteCommerce for Billabong: The consolidation onto a NetSuite's single, unified cloud commerce platform will allow Billabong to achieve the following benefits:

These promises were made in the same time frame as NS's virtually identical promises to GR.

Billabong experienced, in the same time frame, the same problems with the NS system that GR experienced. According to the February 24, 2017 Billabong press release:

> "We are in ongoing discussions with that vendor to get their technical issues resolved, improve the resourcing and oversight of their project team, and deliver against their promises and contractual obligations," CEO Neil Fiske told investors. [See Exh. 1 at 8]

On August 30, 2017, Billabong announced [Exh. 1 at 5] that:

> Billabong has broken up the core components of its omni-channel overhaul and handed the pieces to separate software providers after ditching its first attempt with NetSuite.
>
> Late last month the retailer revealed it had decided to ditch its deal with NetSuite for the SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools following technical implementation issues.
>
> The contract termination saw Billabong book an $11.7 million impairment charge.

Attached as Exh. 6 is a chart showing the indisputable similarities of what NetSuite fraudulently promised to deliver to both GR and to Billabong and the equally similar failings. NS's misrepresentations to Billabong bear striking similarities to those it made to GR. GR is entitled to see the relevant documents related to the virtually identical Billabong-NetSuite "SuiteCommerce" debacle.

The burden rests on NS to show that the documents are not discoverable. "The party opposing discovery has the burden of proving that the requested discovery should be

disallowed." Peterson v. Wright Med. Tech., Inc., No. 11-1330, 2013 WL 655527, at *2 (C.D. Ill. Feb. 21, 2013).

In that case the court ordered the defendant to produce documents involving other parties that would shed light on what the defendant "knew and when [it] learned what it knew about the defect alleged in the complaint and the failure that allegedly resulted from that defect." 2013 WL 655527, at *6. See also Fields v. Wright Med. Tech., Inc., No. 4:15-CV-110-RL-JEM, 2017 WL 3048867, at *3 (N.D. Ind. July 19, 2017) ("Plaintiff has demonstrated that her request for documents relating to failure of PROFEMUR products due to fretting, corrosion, and fracture is relevant and reasonably targeted, and Defendants have not borne their burden of showing that the requests are improper or unduly burdensome.").

Contrary to NS's argument below, NS sold the same product – SuiteCommerce – to both GR and Billabong. It made the same promises of what SuiteCommerce would do. See Exh. 6. With both customers, NS failed to deliver and knew it could not deliver. *Id.*

It should be required to produce these documents. *Id.*; see also Waters v. Earthlink, Inc., No. CIV.A. 01-11887-REK, 2004 WL 6000237, at *2 (D. Mass. Dec. 1, 2004) ("Since an allegation of the plaintiff's complaint is that the defendants promised a certain level of service when it was aware that it could not provide that service, the plaintiff's request for documents relating to service problems that the defendants were aware of "prior to and simultaneous with the integration of Cape Internet and New England Access into OneMain" easily meets the low "relevance" standard of Rule 26(b)(1)." By the same token, if NetSuite could not deliver to Billabong what it promised in the 2015-2017 time frame, that will *a fortiori* be compelling evidence that it knew it could not deliver the same functionalities it promised to Grouse River in the earlier but overlapping 2014-2016 time frame.

As it did with the previous iteration of this dispute, GR has offered and continues to offer to modify its requests' formulation from "Each document related to or reflecting . . . " to "Documents sufficient to show . . . ." the pertinent designated information (without prejudice to seeking additional documents if necessary). GR requests its reasonable attorney fees. Fed. R. Civ. P. 37(a)(5). (NS's gratuitous footnote 2 has no relevance to this dispute.)

NetSuite

Grouse River's Request for Production Documents, Set 4, Nos. 127-134 collectively request all internal and external communications regarding: (1) all promises and contractual obligations between NetSuite and Billabong International Limited ("Billabong") and (2) any contract termination between those parties. As drafted and for all practical purposes, the requests seek all documents related in any way to the Billabong project. NetSuite objected on the grounds that the requests lack proportionality to the needs of the case under FRCP, Rule 26(b)(1) and are irrelevant to the issues in the litigation between Grouse River and NetSuite because the Grouse River project took place before Billabong and because the projects were inherently different.

Grouse River suggests that the production of documents concerning an entirely different company and transaction is more than marginally relevant and overcomes the proportionality requirement in Rule 26. Grouse River is wrong on both underlying assumptions. The relevancy of discovery is limited under FRCP 26 to its proportionality to the needs of the case measured by, among other things, "the importance of the discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1). Courts "must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope of Rule 26(b)(1)." FRCP 26(b)(2)(C)(iii).

Hon. Laurel Beeler                                        4                                        July 8, 2018

       Grouse River's assertion that NetSuite promised the same functionality to Billabong as it did to Grouse River is implausible. Grouse River's and Billabong's business are drastically different and necessarily require different solutions. Grouse River's primary business is selling firearms and rifle scopes in a heavily regulated Canadian marketplace. Its business requires specialized modifications to its technology solutions to permit the tracking and shipping of firearms and ammunition. Billabong sells boardshorts and bikinis. The contrast in businesses and potential solutions needed for each could not be starker and thus renders the requested discovery irrelevant.

       Functionality depends on a number of varying factors that differ depending on the needs of the client. As a result, every project is markedly different. For example, undoubtedly Grouse River's and Billabong's legacy systems were different making it impossible to compare their respective implementations. Further, the differing business needs of selling firearms verses bikinis led Grouse River to request customizations for the NetSuite out-of-the box solutions that Billabong would never had requested, which also makes any attempt to compare the projects impossible.

       Next, Grouse River asserts it needs the Billabong discovery to demonstrate that *before* NetSuite made promises to Grouse River it had learned that it could not fulfill those promises based on its experience implementing a solution for Billabong. However, the Billabong project came about *after* Grouse River's negotiations with NetSuite. Grouse River alleges it relied on NetSuite ad and website representations in 2012 and 2013 culminating in signed contracts with NetSuite in March 2014. Grouse River went live with NetSuite in March 2015. (See SAC ¶¶ 14-42.) Only *after Grouse River had already gone live did* NetSuite contract with Billabong (which occurred in May 2015). Grouse River filed this lawsuit in June 2016. Billabong first announced a delayed implementation in February 2017. Billabong switched providers (something Grouse River never did) in December 2017 -- over 18 months after the present case began.[1] Because the Billabong project post-dated Grouse River's in every respect, the temporal relationship Grouse River espouses to suggest relevancy does not exist.

       The cases cited by Grouse River suggesting the appropriateness of broad discovery into an entirely different company are unpersuasive. Grouse River misconstrues *Peterson* v. *Wright Med. Tech.,* No. 11-1330, 2013 WL 655527, at *2 (C.D. Ill. Feb. 21, 2013). The Court in *Peterson* did not order defendants to produce documents involving other parties as Grouse River suggests. There, the Court permitted discovery of prior expert reports in different defective product cases involving the same product, but limited the production to defendant's experts only, not any other parties' experts. *Id* at *7. Thus, *Peterson* is of no help to Grouse River's argument that NetSuite must produce documents about an unrelated project with a non-party.

       Grouse River's reliance on *Fields v. Wright Med. Tech.* Inc., No. 4:15-CV-110-RL-JEM, 2017 WL 3048867, at *3 (N.D. Ind. July 19, 2017) is likewise misplaced. *Fields* is inapplicable because it involved a defective product, which is governed by different discovery standards than this breach of contract/fraud dispute. Further, as much as Grouse River would like to characterize software and services solutions as cookie cutter, they are instead customized and modified to meet the individualized needs of clients that arise out of lengthy negotiations between the parties. There is no comparison between a static product and an evolving and customized software solution.

---

[1] Grouse River's Exhibit 6, which purports to show similar "promises" NetSuite made to Billabong compared to those allegedly made to Grouse River, is of no consequence because Grouse River filed its complaint against NetSuite long before Billabong announced any delays.

Grouse River's reliance on *Waters v. Earthlink, Inc.* No. 01-11887-REK, 2004 WL 6000237 is similarly unavailing because the facts are wholly inapposite. There, plaintiffs alleged Earthlink provided substandard internet service and that Earthlink must have known the service would be inadequate based on previous complaints. Here, the Billabong project pre-dated the Grouse River project -- meaning that any potential complaints by Billabong would be irrelevant. Thus, *Waters* is of no help to Grouse River.

The present case is far more analogous to *Capital Ventures International v. J.P Morgan Mortgage Acquisition Corp.*, No. 12-10085-RWZ, 2014 WL 1431124, at *2 (C.D. MA April 14, 2014). There, the Court denied plaintiff's request that the Defendant produce documents in another dispute because it was not able to establish how its case and the others were "related or even similar". *Id.* Other than general descriptions of the solution purchased by Billabong from press releases that post-dated the Grouse River project, Grouse River has not demonstrated (and cannot demonstrate) that the Billabong and Grouse River projects were related in any material way. Thus, *Capital Ventures* is far more instructive based on the issues at hand.

Finally, the sheer breadth of Grouse River's requests to produce all internal and external communications about the Billabong project would open the floodgates for a case-within-a-case litigation related to NetSuite's performance of a different contract with a different company. The scope of production could easily dwarf the number of documents already produced because the Billabong project was roughly ten (10) times larger than was the case with Grouse River. Add the volume to the complete irrelevant nature of the Billabong project and it is clear the burden and expense of the Grouse River's document requests outweighs any possible benefit it could provide to the current case. [2]

3. Final Proposed Compromise

Grouse River

GR is prepared to mollify NS's unsubstantiated burdensomeness claim by modifying its requests' formulation from "Each document related to or reflecting . . . " to "Documents sufficient to show . . . ." the pertinent designated information (without prejudice to seeking additional documents if necessary).

NetSuite

Grouse River has not shown that discovery into a completely separate company and different transaction that occurred after the Grouse River project was negotiated and commenced meets the proportionality standard under FRCP, Rule 26(b)(1) or is relevant to the issues in this case. Hence, NetSuite stands by its objections.

Sincerely,

/s/ Loren Kieve       /s/ Scott D. Gattey
Loren Kieve           Scott D. Gattey

---

[2] The Court should note that Plaintiff has taken no depositions and that discovery remains ongoing, albeit slowly. Plaintiff has yet to answer Defendant's first set of special interrogatories. Thus, NetSuite submits the current trial date of September 17, 2018 will need to be continued along with associated case deadlines.