Exhibit 1

KIEVE LAW OFFICES
  Loren Kieve (Bar No. 56280)
  2655 Steiner Street
San Francisco, California  94115-1141
Telephone:      (415) 364-0060
Facsimile:      (435) 304-0060
lk@kievelaw.com

Counsel for Plaintiff
Grouse River Outfitters, Ltd.

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GROUSE RIVER OUTFITTERS, LTD, <br><br> Plaintiff, <br><br> vs. <br><br> NETSUITE, INC., <br><br> Defendant. | **CASE NO.  16-CV-02954 LB** <br><br> **PLAINTIFF GROUSE RIVER OUTFITTERS, LTD.'S FOURTH DOCUMENT REQUESTS TO DEFENDANT NETSUITE, INC.** |

Plaintiff Grouse River Outfitters, Ltd ("Grouse River") requests that defendant NetSuite, Inc. ("NetSuite") produce the following documents for inspection and copying at a time and place to be agreed on by counsel.

The definitions and instructions set forth in NetSuite's November 28, 2016 first request for the production of documents to Grouse River apply to these requests.

**REQUEST NO. 127:**

Each document relating to or reflecting the discussions between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") about the "implementation setbacks" and "technical issues" and "ongoing discussions regarding NetSuite's delivery against its "promises and contractual obligations" and requested "comprehensive corrective action plans" described in the transcript of remarks made by Billabong's CEO, Neil Fiske, in his investor presentation of February 24, 2017 as referenced in the attached articles.

**REQUEST NO. 128:**

Each document relating to or reflecting communications between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") about the "implementation setbacks" and "technical issues" and "ongoing discussions regarding NetSuite's delivery against its "promises and contractual obligations" and requested "comprehensive corrective action plans" described in the transcript of remarks made by Billabong's CEO, Neil Fiske, in his investor presentation of February 24, 2017 as referenced in the attached articles.

**REQUEST NO. 129:**

Each internal NetSuite document relating to the "implementation setbacks" and "technical issues" and "ongoing discussions regarding NetSuite's delivery against its "promises and contractual obligations" and requested "comprehensive corrective action plans" described in the transcript of remarks made by Neil Fiske, CEO of Billabong International, in his investor presentation of February 24, 2017 as referenced in the attached articles.

**REQUEST NO. 130:**

Each document relating to or reflecting the termination by Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") of its contract with NetSuite for for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**REQUEST NO. 131:**

Each document relating to or reflecting communications between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") relating to the termination of Billabong's contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**REQUEST NO. 132:**

Each document relating to or reflecting the reason or reasons for the termination by Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") of its contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**REQUEST NO. 133:**

Each document relating to or reflecting communications between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") regarding the reason or reasons for the termination by Billabong of its contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**REQUEST NO. 134:**

Each internal NetSuite communication relating to the reason or reasons for the termination by Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") of its contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

Dated: February 21, 2018

KIEVE LAW OFFICES

By _Loren Kieve_

Loren Kieve (Bar No. 56280)

Counsel for plaintiff Grouse River Outfitters, Ltd

# Billabong restructures e-commerce overhaul after NetSuite misstep – Aug 30, 2017



## Awards chunks to Salesforce, Aptos.

Billabong has broken up the core components of its omni-channel overhaul and handed the pieces to separate software providers after ditching its first attempt with NetSuite.

Late last month the retailer revealed it had decided to ditch its deal with NetSuite for the SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools following technical implementation issues.

The contract termination saw Billabong book an $11.7 million impairment charge.

At its full-year 2017 results, Billabong revealed it had restructured its omni-channel overhaul into pieces that would be served by "multiple out of the box best in breed global platforms".

It has appointed Salesforce as the provider of its e-commerce and digital marketing platforms, and Aptos for point-of-sale and order management and loyalty.

"Proven" systems integrators will be used to "bring these building blocks together", it said. It did not name its chosen integrators.

"The selection of the new partners was based on one overriding principle – delivering the best possible omni channel experience for customers with certainty and speed," Billabong said in financial filings.

"[We] emphasised that omni was not just e-commerce, but the ability for customers to shop the way they wanted to shop – in stores and online, retail and wholesale, across all channels with richness of content and a personalised experience.

"Each of the major partners is a leader in their field, but importantly they have worked together extensively on similar implementations."

CEO Neil Fiske said it was "not appropriate at this time" to provide detail of the circumstances that led to the NetSuite contract cancellation.

He said the experience of its new partners, as well as the work already done - such as middleware integration and website redesigns - meant it expected to move quickly into deployment.

It is using Australia as the test case for the first deployment of the new global platforms; the first of the new e-commerce websites, Surf Dive 'n' Ski, is scheduled to launch before the end of this year.

"The new solution is expected to lower implementation risk and improve certainty of delivery for the balance of the project," Billabong said.

"The group believes the omni program can be completed materially close to its original range of budget expectations."

# 'Technical issues' delay Billabong's ecommerce rollout – Feb 24, 2017



## Roadblock greets new NetSuite platform.

Retailer Billabong has been forced to delay the launch of its critical NetSuite ecommerce platform due to issues with its implementation.

Billabong announced it had signed up to use the NetSuite cloud-based SuiteCommerce financial, ERP, and commerce platform in mid-2015.

The platform will replace a disparate and regionally-based global technology ecosystem with one platform in order to give the retailer a single view of the customer.

NetSuite offers a real-time flow of customer, order, and inventory information across all sales channels, as well as better utilisation of inventory.

At the time Billabong said the platform would be introduced incrementally across its global operations, with the rollout expected to be complete in mid-2016.

However, in its half-year results today, Billabong revealed the launch of the new ecommerce and point-of-sales systems had been delayed as a result of problems with their implementation.

It said the user acceptance testing phase had identified unspecified "technical issues".

"We are in ongoing discussions with that vendor to get their technical issues resolved, improve the resourcing and oversight of their project team, and deliver against their promises and contractual obligations," CEO Neil Fiske told investors.

"We have requested that they provide us a comprehensive corrective action plan.

"Although we are clearly disappointed at the delay, actions are underway to address the issues."

The NetSuite PoS solution, once implemented, will give retail staff insights into a customer's purchase history, and allow them to order products that are unavailable in store online.

It will also let Billabong staff access real-time stock numbers. Retail outlets are currently siloed from online operations and the call centre.

Billabong's turnaround strategy, announced in late 2013, pinned the company's hopes on digital to increase sales by more than 30 percent by 2018.

Its IT operations as of last month are being led by new global chief information officer Chris Conrad, who came to the company from fellow retailer Lululemon.

# Billabong Selects NetSuite To Transform Customer Experience Globally

SuiteCommerce to Power Billabong's Omnichannel Strategy

May 05, 2015, 12:45 ET from NetSuite Inc.

SAN JOSE, Calif., May 5, 2015 /PRNewswire/ -- **NETSUITE SUITEWORLD 2015 --** NetSuite Inc. (NYSE: N), the industry's leading provider of cloud-based financials / ERP and omnichannel commerce software suites, today announced that Billabong International Ltd (ASX: BBG) has selected NetSuite SuiteCommerce to help transform customer interaction with its brands through the implementation of a new global omnichannel platform.

NetSuite's SuiteCommerce platform will be progressively rolled out across the action sports company to provide a true omnichannel experience across its wholesale, retail and ecommerce operations.

SuiteCommerce will provide a unified, real-time technology platform enabling Billabong International to:

- Ensure a constant real-time flow of customer, order and inventory  information across all of its sales channels, dramatically improving engagement with online shoppers, retail operations and wholesale partners.
- Provide wholesale partners, both large and small, with their own password protected site to efficiently make purchases, review order history and account details, speed repeat purchasing and manage payments and credits. They will also be able to access and download key content, assets, videos and marketing collateral.
- Monitor and manage each of its branded global websites from one single platform that can support up to 190 currencies, 19 languages, and multi-country tax compliance.

Billabong CEO Neil Fiske said, "Creating a true omnichannel experience is one of the seven strategic pillars in our transformation strategy. We have high expectations of potential strategic partners in line with our approach of undertaking major structural changes once and doing them right. We look forward to working with NetSuite to build an industry leading global platform that creates a seamless customer experience across all of our channels, including wholesale."

NetSuite SuiteCommerce provides Billabong with a scalable order management solution that will allow it to utilize its inventory more effectively and be quickly updated to keep pace with the rapidly evolving retail industry and consumer expectations.

NetSuite CEO Zach Nelson said SuiteCommerce will enable Billabong to rapidly adapt to emerging retail models and strengthen its suite of brands.

"Global retailers are repeatedly held back by siloed systems that result in a fractured journey as customers transition across disparate systems," said Mr. Nelson. "Billabong's move to SuiteCommerce's single unified cloud-based platform will give the company the agility to deliver the seamless omnichannel customer experiences shoppers demand."

**Key benefits of SuiteCommerce for Billabong** The consolidation onto a NetSuite's single, unified cloud commerce platform will allow Billabong to achieve the following benefits:

**In-Store Omnichannel Experiences.**   Leveraging NetSuite SuiteCommerce InStore, sales associates can deliver a more personalized shopping experience with a comprehensive view of the customer history and the ability to order products from a tablet or mobile device if it's not available in the store.

**Automated Global B2B Commerce.** Billabong can streamline processes associated with phone, fax and email orders for its diverse B2B partners ranging from smaller, boutique surf and sports shops all the way to larger retail partners. Billabong's partners will all have access to a flexible, self-service B2B commerce system which will help to free up Billabong's resources to focus on providing a more personalized service.

**Real-Time Inventory Visibility.** With NetSuite SuiteCommerce, Billabong's brick-and-mortar stores, previously siloed from its online and call center organizations, can have real-time visibility into all inventory held across the company, enabling omnichannel features such as buy online and ship-from-store, turning the company's stores into individual fulfillment centers, helping Billabong to utilize inventory more efficiently and get product to customers faster and more cost effectively.

**Multi-Brand and Global-Ready.** Billabong plans to leverage NetSuite OneWorld in conjunction with SuiteCommerce to support transactions in up to 190 currencies and 19 languages around the world. NetSuite will help the company to efficiently manage its websites in every country, resulting in streamlined engagement with all members of its B2B partner community.

**True Omnichannel Customer Relationship Management.** Building on NetSuite's omnichannel CRM capabilities, NetSuite unifies all customer information into a single customer profile. This means that any employee, whether they are a store associate or customer service representative in Billabong's call center can have an immediate understanding of any customer, in real time, regardless of the channel, which facilitates better service, more sales and improved customer loyalty.

Exhibit 2

Scott D. Gattey (CSB # 180875)
Gattey Law Office
1001 Laurel Street, Suite C
San Carlos, California 94070
Telephone:  (650) 596-7123
Facsimile:   (866) 371-3491

Attorneys for NetSuite Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GROUSE RIVER OUTFITTERS, LTD.,

          Plaintiff,

     v.

NETSUITE INC.,

          Defendant.

CASE NO.  16-CV-02954 LB

DEFENDANT NETSUITE INC.'S
RESPONSES TO PLAINTIFF GROUSE
RIVER OUTFITTERS, LTD'S FOURTH
SET OF DOCUMENT REQUESTS

        In accordance with Federal Rules of Civil Procedure Rule 34, Defendant
NetSuite Inc. ("NetSuite" or "Defendant") hereby responds to Plaintiff Grouse River
Outfitters, Ltd.'s ("Grouse River" or "Plaintiff") Fourth Set of Document Requests.
These discovery requests did not require a response or production by any certain date,
but instead envisioned that the parties would meet and confer regarding a response and
production.  NetSuite's counsel is prepared to meet and confer with Plaintiff's counsel
in good faith regarding these requests, objections and other discovery issues.

1

**PRELIMINARY STATEMENT**

NetSuite has not completed its investigation of the facts related to this case, nor has it completed discovery or preparation for trial.  The following responses are based on the information now available to NetSuite.  Further, discovery, independent investigation, legal research and analysis may supply additional documents, all of which may lead to discovery of additional information, resulting in additions to, changes in and variations from these responses.  NetSuite therefore reserves the right to supplement these responses based on its receipt and analysis of additional documents from NetSuite or other sources.

Additionally, Grouse River's document requests seek irrelevant material related to a non-party.  Grouse River has done nothing to demonstrate that Billabong's business and technical requirements are analogous to Grouse River's.  Nor has Grouse River shown that Billabong used the same combination of NetSuite and other third-party solutions as Grouse River.  Accordingly, the documents sought in Grouse River's Fourth Document Requests will not tend to prove or disprove Grouse River's claims against NetSuite.

**GENERAL OBJECTIONS**

NetSuite objects to each Request: (1) insofar as it calls for the production of documents not in NetSuite's possession, custody, or control; (2) insofar as it calls for the production of documents that were prepared for or in anticipation of litigation, constitute attorney work product, contain attorney-client communications, or are

otherwise privileged; (3) insofar as it calls for the production of documents which are publicly available or otherwise equally available and/or uniquely available and/or equally available from third parties; (4) insofar as it calls for the production of documents that do not specifically refer to the events which are the subject matter of this litigation; and (5) insofar as it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence.

The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed to be a waiver of any applicable privilege with respect to such document or information (or the contents or subject matter thereof) or with respect to any other such document or discovery now or hereafter requested or provided.  NetSuite reserves the right not to produce documents that are in part protected by privilege, except on a redacted basis, and to require the return of any document (and all copies thereof) inadvertently produced. NetSuite likewise does not waive the right to object, on any and all grounds, to (1) the evidentiary use of documents produced in response to these requests; and (2) discovery requests relating to those documents.

NetSuite submits these responses and objections without conceding the relevancy or materiality of the subject matter of any request or of any document, or that any responsive materials exist.  NetSuite's responses and objections are not intended to be, and shall not be construed as, agreement with Grouse River's

characterization of any facts, circumstances, or legal obligations.  NetSuite reserves the right to contest any such characterization as inaccurate.  NetSuite also objects to the Requests to the extent they contain any express or implied assumptions of fact or law concerning matters at issue in this litigation.

The responses and objections contained herein are made on the basis of information now known to NetSuite and are made without waiving any further objections to or admitting the relevancy or materiality of any of the information requested. NetSuite's investigation, discovery and preparation for proceedings are continuing and all answers are given without prejudice to NetSuite's right to introduce or object to the discovery of any documents, facts or information discovered after the date hereof.

NetSuite will provide its responses based on terms as they are commonly understood, and consistent with the Federal Rules of Civil Procedure.  NetSuite objects to and will refrain from extending or modifying any words employed in the requests to comport with expanded definitions or instructions.

**REQUEST NO. 127:**

Each document relating to or reflecting the discussions between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") about the "implementation setbacks" and "technical issues" and "ongoing discussions regarding NetSuite's delivery against its "promises and contractual obligations" and requested "comprehensive corrective action plans" described in the

transcript of remarks made by Billabong's CEO, Neil Fiske, in his investor presentation of February 24, 2017 as referenced in the attached articles.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "implementation setbacks" and "technical issues").   NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence.  Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

**REQUEST NO. 128:**

Each document relating to or reflecting communications between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") about the "implementation setbacks" and "technical issues" and "ongoing discussions regarding NetSuite's delivery against its "promises and contractual obligations" and requested "comprehensive corrective action plans" described in the

transcript of remarks made by Billabong's CEO, Neil Fiske, in his investor presentation of February 24, 2017 as referenced in the attached articles.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "implementation setbacks" and "technical issues").  NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence.  Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

**REQUEST NO. 129:**

Each internal NetSuite document relating to the "implementation setbacks" and "technical issues" and "ongoing discussions regarding NetSuite's delivery against its "promises and contractual obligations" and requested "comprehensive corrective action plans" described in the transcript of remarks made by Neil Fiske, CEO of Billabong

International, in his investor presentation of February 24, 2017 as referenced in the attached articles.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "implementation setbacks" and "technical issues"). NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence. Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

**REQUEST NO. 130:**

Each document relating to or reflecting the termination by Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") of its contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "cloud-based" and "ecommerce and retail point-of-sale tools").  NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence.  Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

**REQUEST NO. 131:**

Each document relating to or reflecting communications between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") relating to the termination of Billabong's contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "cloud-based" and

"ecommerce and retail point-of-sale tools").   NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence.   Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

**REQUEST NO. 132:**

Each document relating to or reflecting the reason or reasons for the termination by Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") of its contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "cloud-based" and "ecommerce and retail point-of-sale tools").   NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is

"proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence. Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

**REQUEST NO. 133:**

Each document relating to or reflecting communications between NetSuite and Billabong International Limited or any subsidiary, division or affiliate (collectively, "Billabong") regarding the reason or reasons for the termination by Billabong of its contract with NetSuite for SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools.

**RESPONSE**

NetSuite objects to this Request to the extent that it seeks documents related to vague undefined terms used by non-party Billabong (e.g. "cloud-based" and "ecommerce and retail point-of-sale tools"). NetSuite further objects to this Request as violating Rule 26(b)(1), which limits the scope of discovery to material that is "proportional to the needs of the case, considering the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  NetSuite further objects to this Request because it calls for the production of documents which are neither relevant to the subject matter of this litigation not calculated to lead to the discovery of admissible evidence.  Grouse River's Request constitutes a fishing expedition to find information with no likelihood of resolving any issues in the case.

Dated: April 6, 2018                    _____/s/_____

                                        Scott D. Gattey
                                        Gattey Law Office
                                        Attorneys for NetSuite Inc.

Exhibit 3



Scott Gattey <scott@gatteylaw.com>

---

## FW: Activity in Case 3:16-cv-02954-LB Grouse River Outfitters Ltd v. NetSuite, Inc. Order on Discovery Letter Brief

**Scott Gattey** <scott@gatteylaw.com>                                Thu, May 17, 2018 at 11:19 AM
To: Loren Kieve <lk@kievelaw.com>
Cc: Paul Byrne <pbyrne@cornerlaw.com>
Bcc: Holly Baudler <holly.baudler@oracle.com>

Loren:

We asserted various objections in responding to your Request for Production.  Over your objections, the Court has now ruled that those objections were properly asserted.

At this point we consider it Grouse River's burden to meet and confer with us if it contends the objections were not appropriate.

We will await any such communication from you.  Unless we hear otherwise, we will assume that you will choose to drop your request for the documents sought.

As noted in our objections -- as well as our discovery letter to Judge Beeler -- we contend that the documents you are seeking are in no way relevant to a dispute between NetSuite and Grouse River.  Should you wish to meet and confer on our objections, please do provide case law that your client would suggest establishes that third party documents such as the one requested would be relevant in some way to the issues before the Court.  It appears to us that you are simply seeking to have a trial within a trial regarding irrelevant issues.

Thank you for your attention to this matter.

Regards,

Scott D. Gattey

Gattey Law Office
1001 Laurel Street, Suite C
San Carlos, CA 94070
650.596.7123 (direct)
www.gatteylaw.com

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, be advised that you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited.  Please notify this office immediately if you have received this in error and destroy all copies of this message and any attachments.

[Quoted text hidden]

Exhibit 4

# Kieve | Law Offices

2655 Steiner Street
San Francisco, California 94115-1141
www.kievelaw.com

Telephone: 415.364.0060
Facsimile: 435.304.0060
Conference: 866.384.2318

Loren Kieve
lk@kievelaw.com
Cell: 415.425.2655

May 17, 2018

***By e-mail***

Scott D. Gattey
Gattey Law Office
1001 Laurel Street
San Carlos, CA 94070

***Grouse River v. NetSuite***

***Civil Action No. 16-cv-2954 LB***

Dear Scott:

This will respond to your e-mail of today.

The court's minute order stated that "The parties must confer (as NetSuite suggests) to address the objections to try to reach compromise."

Your e-mail essentially tells Grouse River to pound sand.

That is not in compliance with the court's directive.

The second amended complaint alleges:

217.  In the numerous advertisements, website postings, press releases, meetings, e-mails and phone calls detailed above in paragraphs 13-92, NetSuite, through its authorized agents represented to Grouse River that NetSuite had the capability to design, implement and deliver a fully integrated ERP, e-commerce, and POS software solution with the specific capability and functionality to meet Grouse River's defined needs and to do so within four months of the start of the project.

According to the May 5, 2015 joint NetSuite/Billabong press release, attached to GR's fourth document requests, NetSuite promised Billabong the same functional system to Billabong:

SuiteCommerce will provide a unified, real-time technology platform enabling Billabong International to:

☐ Ensure a constant real-time flow of customer, order and inventory information across all of its sales channels, dramatically improving engagement with online shoppers, retail operations and wholesale partners.

As with its promises to GR, NS promised Billabong that:

NetSuite SuiteCommerce provides Billabong with a scalable order management solution that will allow it to utilize its inventory more effectively and be quickly updated to keep pace with the rapidly evolving retail industry and consumer expectations.

Key benefits of SuiteCommerce for Billabong The consolidation onto a NetSuite's single, unified cloud commerce platform will allow Billabong to achieve the following benefits:

In-Store Omnichannel Experiences. Leveraging NetSuite SuiteCommerce InStore, sales associates can deliver a more personalized shopping experience with a comprehensive view of the customer history and the ability to order products from a tablet or mobile device if it's not available in the store.

Real-Time Inventory Visibility. With NetSuite SuiteCommerce, Billabong's brick-and-mortar stores, previously siloed from its online and call center organizations, can have real-time visibility into all inventory held across the company, enabling omnichannel features such as buy online and ship-from-store, turning the company's stores into individual fulfillment centers, helping Billabong to utilize inventory more efficiently and get product to customers faster and more cost effectively.

These promises were made in the same time frame as NS's virtually identical promises to GR.

Billabong experienced, in the same time frame, the same problems with the NS system that GR experienced. According to the February 24, 2017 Billabong press release:

"We are in ongoing discussions with that vendor to get their technical issues resolved, improve the resourcing and oversight of their project team, and deliver against their promises and contractual obligations," CEO Neil Fiske told investors.

"We have requested that they provide us a comprehensive corrective action plan.

"Although we are clearly disappointed at the delay, actions are underway to address the issues."

The NetSuite PoS solution, once implemented, will give retail staff insights into a customer's purchase history, and allow them to order products that are unavailable in store online.

It will also let Billabong staff access real-time stock numbers. Retail outlets are currently siloed from online operations and the call centre.

On August 30, 2017, Billabong announced that:

Billabong has broken up the core components of its omni-channel overhaul and handed the pieces to separate software providers after ditching its first attempt with NetSuite.

Late last month the retailer revealed it had decided to ditch its deal with NetSuite for the SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools following technical implementation issues.

The contract termination saw Billabong book an $11.7 million impairment charge.

NS's treatment of Billabong appears to bear striking similarities to its treatment of GR.

GR is entitled to see the relevant documents related to the Billabong-NetSuite disaster.

Your e-mail has it all wrong. The burden rests on NS to show that the documents are not discoverable. "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." <u>Peterson v. Wright Med. Tech., Inc.</u>, No. 11-1330, 2013 WL 655527, at *2 (C.D. Ill. Feb. 21, 2013).

If the basis for an objection is lack of relevance, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

Similarly, if the objection is undue burden, the party must substantiate the objection with affidavits or other evidence revealing the nature and extent of the burden.

*Id.*

In that case the court ordered the defendant to produce documents involving other parties that would shed light on what the defendant "knew and when [it] learned what it knew about the defect alleged in the complaint and the failure that allegedly resulted from that defect." 2013 WL 655527, at *6. See also <u>Fields v. Wright Med. Tech., Inc.</u>, No. 4:15-CV-110-RL-JEM, 2017 WL 3048867, at *3 (N.D. Ind. July 19, 2017) ("Plaintiff has

demonstrated that her request for documents relating to failure of PROFEMUR products due to fretting, corrosion, and fracture is relevant and reasonably targeted, and Defendants have not borne their burden of showing that the requests are improper or unduly burdensome.").

NS sold the same product – SuiteCommerce – to both GR and Billabong. It made the same promises of what SuiteCommerce would do. With both customers, NS failed to deliver and knew it could not deliver. It should be required to produce these documents. *Id.*; see also Waters v. Earthlink, Inc., No. CIV.A. 01-11887-REK, 2004 WL 6000237, at *2 (D. Mass. Dec. 1, 2004) ("Since an allegation of the plaintiff's complaint is that the defendants promised a certain level of service when it was aware that it could not provide that service, the plaintiff's request for documents relating to service problems that the defendants were aware of "prior to and simultaneous with the integration of Cape Internet and New England Access into OneMain" easily meets the low "relevance" standard of Rule 26(b)(1)."

I again ask you to please provide me with what NetSuite proposes by way of a compromise as directed by the court's order.

Sincerely,

Loren Kieve
Loren Kieve

Exhibit 5



PAUL J. BYRNE
direct: 415.357.2094
pbyrne@cornerlaw.com

May 25, 2018

***VIA ELECTRONIC MAIL AND US MAIL***

Loren Kieve, Esq.
Kieve Law Office
2655 Steiner Street
San Francisco, CA 94115

<blockquote>
Re:     *Grouse River Outfitters v. NetSuite INC*
        Case No. 16-cv-2954 LB (US District Court ND CA)
        <u>**Meet and Confer re: Grouse River Outfitters' Request**</u>
        <u>**for Production of Documents, Set 4 (Billabong**</u>
        <u>**International Limited))**</u>
</blockquote>

Dear Loren:

We have reviewed your May 17, 2018 correspondence concerning the above-referenced Grouse River Outfitters' ("Grouse River") discovery and respond to the same.  Grouse River's Request for Production Documents, Set 4, Nos. 127-134 collectively request all internal and external communications regarding: (1) all promises and contractual obligations between NetSuite and Billabong International Limited ("Billabong") and (2) any contract termination between those parties.  As drafted and for all practical purposes, the requests seek all documents related in anyway to the Billabong project.  NetSuite objected on multiple grounds to these requests, including that the requests lack proportionality to the needs of the case under FRCP, Rule 26(b)(1) and are irrelevant to the issues in the litigation between Grouse River and NetSuite.  For the reasons set forth herein, among others, NetSuite stands by its objections.

Grouse River suggests that the production of documents concerning an entirely different company and transaction is more than marginally relevant and overcomes the proportionality requirement  in Rule 26 -- this because it contends NetSuite supposedly promised Billabong the same functional system during the same timeframe as it did to Grouse River.  Grouse River is wrong on both underlying assumptions.

The relevancy of discovery is limited under FRCP 26 to its proportionality to the needs of the case measured by, among other things, "the importance of the discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  FRCP 26(b)(1).  Courts "must limit the frequency or extent of discovery . . . if it determines that . . . the proposed discovery is outside the scope of Rule 26(b)(1)."  FRCP 26(b)(2)(C)(iii).  Grouse

Loren Kieve, Esq.
May 25, 2018
Page 2

River's proposed discovery involving separate contracts with an entirely different party --
working in wholly dissimilar businesses long after NetSuite started work on the Grouse River
project -- renders any requested material useless to resolving issues in the present case.  Further,
the all-encompassing nature of the discovery creates a burden and expense that unquestionably
outweighs any potential benefit.

        To start, Grouse River's assertion that NetSuite promised the same functionality to
Billabong as it did to Grouse River is implausible.  Grouse River's and Billabong's business are
drastically different and thus necessarily require different solutions.  Grouse River's primary
business is selling firearms and scopes in a heavily regulated Canadian marketplace.  Its business
thus requires specialized modifications to its technology solutions to permit the tracking and
shipping of firearms and ammunition.  Billabong sells boardshorts and bikinis.  The contrast in
businesses and potential solutions needed for each could not be starker and thus makes the
requested discovery irrelevant.

        Additionally, functionality depends on a number of varying factors that differ depending
on the needs of the client.  As a result, every project is markedly different.  For example, there
can be no dispute that Grouse River's and Billabong's legacy systems were different -- meaning
it is simply impossible to compare their respective implementations.  Adding to this, the differing
business needs of selling firearms verses bikinis led Grouse River to request customizations for
the NetSuite out-of-the box solutions that Billabong would never had requested, which also
makes any attempt to compare the projects implausible.

        Next, Grouse River asserts it needs discovery into the Billabong project to attempt to
demonstrate that *before* NetSuite made promises to Grouse River it had learned that it could not
fulfill those promises based on its experience implementing (what Grouse River would
characterize as) a similar solutions for Billabong.  However, the Billabong project came about
*after* Grouse River's negotiations with NetSuite.   Here, Grouse River alleges it relied on
NetSuite ad and website representations in 2012 and 2013 culminating in signed contracts with
NetSuite in March 2014.  Grouse River went live with NetSuite in March 2015.  (See SAC ¶¶
14-42.)  Only *after Grouse River had already gone live did* NetSuite contract with Billabong
(which occurred in May 2015).  Grouse River filed this lawsuit in June 2016.  Billabong first
announced a delayed implementation in February 2017.  Billabong switched providers
(something Grouse River never did) in December 2017 -- over 18 months after the present case
began.  Because the Billabong project post-dated Grouse River's in every respect the temporal
relationship Grouse River espouses to suggest relevancy simply does not exist.

        The cases cited by Grouse River are unpersuasive.  Grouse River misconstrues *Peterson*
v. *Wright Med. Tech.,* No. 11-1330, 2013 WL 655527, at *2 (C.D. Ill. Feb. 21, 2013).  The Court
in *Peterson* did not order defendants to produce documents involving other parties to determine
what defendants knew about a hip device as Grouse River would suggest.  At issue in that case
was plaintiff's request for all expert reports from litigation involving the same device.  The Court

Loren Kieve, Esq.
May 25, 2018
Page 3

permitted discovery of prior expert reports, but limited the production to defendant's experts only, not any other parties' experts. *Id* at *7. Thus, *Peterson* is of no help to Grouse River's argument that NetSuite must produce documents about an unrelated project with a non-party.

Grouse River's reliance on *Fields v. Wright Med. Tech.* Inc., No. 4:15-CV-110-RL-JEM, 2017 WL 3048867, at *3 (N.D. Ind. July 19, 2017) is likewise misplaced. *Fields* is inapplicable because it involved a defective product, which is governed by different discovery standards than this breach of contract/fraud dispute. The *Fields* court based its discovery ruling permitting discovery into the failure of the same product on the general rule in defective product cases that discovery into similar products with similar components is permissible. Unlike *Fields*, the present case does not involve defective product allegations and thus the analytical framework of *Fields* simply does not apply. Further, as much as Grouse River would like to characterize software and services solutions as cookie cutter, they are instead customized and modified to meet the individualized needs of clients that arise out lengthy negotiations between the parties as evidenced by detailed Business Requirements Documents, Statements of Work, Change Orders, etc. There is simply no comparison between a static product and an evolving and customized software solution, which is another reason why the rationale and holding of *Fields* does not apply to the present case.

Grouse River's reliance on *Waters v. Earthlink, Inc.* No. 01-11887-REK, 2004 WL 6000237 is similarly unavailing because the facts are again wholly inapposite. There, plaintiffs alleged Earthlink provided substandard internet service and that Earthlink must have known the service would be inadequate based on previous complaints about the service provided to other customers. Here, the Billabong project pre-dated the Grouse River project -- meaning that any potential complaints by Billabong would be irrelevant. Moreover, unlike the one-size-fits-all internet service at issue in *Waters*, here the parties are dealing with an out-of-the-box solution customized per Grouse River's requests to meet its specific needs. The differences between selling firearms and bikinis necessarily require vastly different configurations of the standard NetSuite solutions making any complaints about the Billabong project irrelevant to the Grouse River's claims. Thus, because *Fields* dealt with a static product as compared to the customized software solutions at issue here, it is inapplicable.

The present case is far more analogous to *Capital Ventures International v. J.P Morgan Mortgage Acquisition Corp.*, No. 12-10085-RWZ, 2014 WL 1431124, at *2 (C.D. MA April 14, 2014). There, the Court denied plaintiff's request that the Defendant produce documents in another dispute because it was not able to establish how its case and the others were "related or even similar". *Id.* Other than general descriptions of the solution purchased by Billabong from press releases that post-dated the Grouse River project, Grouse River has not demonstrated (and cannot demonstrate) that the Billabong and Grouse River projects were related in any material way. Thus, more than any case cited by Grouse River, the Court's ruling in *Capital Ventures* is far more instructive based on the issues at hand.

Loren Kieve, Esq.
May 25, 2018
Page 4

Finally, the sheer breadth of Grouse River's requests to produce all internal and external communications about the Billabong project would open the floodgates for a case-within-a-case litigation related to NetSuite's performance of a different contract with a different company. The scope of production could easily dwarf the number of documents already produced because the Billabong project was roughly ten (10) times larger than was the case with Grouse River. Add the volume to the complete irrelevant nature of the Billabong project and we believe Judge Beeler will be able to conclude that the burden and expense of the Grouse River's document requests outweighs any possible benefit it could provide to the current case.

In sum, because Grouse River's document requests into NetSuite's work on the Billabong project have no temporal or factual nexus to the Grouse River project, the requests lack any proportionality to the needs of the case under FRCP Rule 26(b)(1) and are thus irrelevant to the issues in the present litigation.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

CORNERSTONE LAW GROUP

Paul J. Byrne

cc:     Scott D. Gattey (e-mail)

Exhibit 6

| NetSuite representations to Grouse River (From Press Release Exhibits to Grouse River's Fourth Request for Documents to NetSuite) | NetSuite representations to Billabong (From the allegations in the Second Amended Complaint) |
|---|---|
| NetSuite's SuiteCommerce platform will be progressively rolled out across the action sports company to provide a true omnichannel experience across its wholesale, retail and ecommerce operations. | ¶ 23. "NetSuite for Retail Provides: <br>• A single, integrated solution to manage your entire retail business. <br>• Complete 360-degree view of the customer across all channels and touchpoints. <br>• Support multiple locations, channels and brands from a single platform. <br>• A full featured and mobile ready POS. <br>• Central management of all pricing and promotions. <br>• Real-time inventory visibility across all channels. <br>• Cross-channel order management and fulfillment. |
| SuiteCommerce will provide a unified, real-time technology platform enabling Billabong International to: | ¶ 23. "NetSuite for Retail Provides: <br>• A single, integrated solution to manage your entire retail business. <br>• Complete 360-degree view of the customer across all channels and touchpoints. <br>• Support multiple locations, channels and brands from a single platform. <br>• A full featured and mobile ready POS. <br>• Central management of all pricing and promotions. <br>• Real-time inventory visibility across all channels. <br>• Cross-channel order management and fulfillment. |
| • Ensure a constant real-time flow of customer, order and inventory information across all of its sales channels, dramatically improving engagement with online shoppers, retail operations and wholesale partners. | ¶ 45. To deliver an integrated point-of-sale system that interacted with the company's inventory in real-time and provided the ability to fulfill in-store pickup, handle serialized items, integrate promotions and gift cards, and provide full-visibility of customer purchase history at the retail level. <br>¶ 46. To enhance Grouse River's ability to market to its customer base by providing a single unified view of each customer's interactions and purchases while tailoring promotions and a website shopping experience to preferences |

| | |
|---|---|
| | identified through their interactions with the company<br><br>¶ 47. To improve the efficiency of the company's inventory functions by tracking core inventory on a serialized item basis, enhance the accuracy of receiving and shipping functions, and allow for the segregation of inventory into multiple stores and warehouses providing a unified overview of inventory for purchasing and business management decisions.<br><br>¶ 49. To improve the company's ability to understand, segment, service, and market to its customer base in a unified manner across all sales channels, with a comprehensive overview of each customer's shopping habits and purchasing history. |
| Billabong CEO Neil Fiske said, "Creating a true omnichannel experience is one of the seven strategic pillars in our transformation strategy. . . . .  We look forward to working with NetSuite to build an industry leading global platform that creates a seamless customer experience across all of our channels, including wholesale." | ¶ 49. To improve the company's ability to understand, segment, service, and market to its customer base in a unified manner across all sales channels, with a comprehensive overview of each customer's shopping habits and purchasing history.<br><br>¶ 51.  Provide integration of all core data into a single system so that a "single view of the truth" existed for customer records, sales, accounting and any related transactions.<br><br>¶ 68.  The presentation further represented that NetSuite's software provides unique benefits including a "single version of the truth across all areas of the business" and a "single, unified solution to manage your retail business" with a POS system that supports "real-time inventory visibility, advanced store reporting/end of day processing, and, shop online - pick up in store." |
| NetSuite SuiteCommerce provides Billabong with a scalable order management solution that will allow it to utilize its inventory more effectively and be quickly updated to keep pace with the rapidly evolving retail industry and consumer expectations. | ¶ 50.  To integrate accounting and inventory functions alongside the company's POS, telephone, and e-commerce sales to add efficiency and accuracy to functions such as invoice-to- payment, sales reconciliation, and product purchasing.<br><br>¶ 53.  In an e-mail immediately following the call Mr. Waldron provided documentation representing that NetSuite could meet the vast majority of Grouse River's requirements and stating "based on our conversation the stage of growth you are at now with Grouse River is typically when we see companies coming to NetSuite in hopes of gaining a platform that is |

| | more unified and able to scale to future growth aspirations and this is just what we provide." |
|---|---|
| **Billabong's disastrous experience** | **Grouse River's disastrous experience** |
| Retailer Billabong has been forced to delay the launch of its critical NetSuite ecommerce platform due to issues with its implementation.<br><br>Billabong announced it had signed up to use the NetSuite cloud-based SuiteCommerce financial, ERP, and commerce platform in mid-2015.<br><br>The platform will replace a disparate and regionally-based global technology ecosystem with one platform in order to give the retailer a single view of the customer.<br><br>NetSuite offers a real-time flow of customer, order, and inventory information across all sales channels, as well as better utilisation of inventory.<br><br>At the time Billabong said the platform would be introduced incrementally across its global operations, with the rollout expected to be complete in mid-2016.<br><br>However, in its half-year results today, Billabong revealed the launch of the new ecommerce and point-of-sales systems had been delayed as a result of problems with their implementation. It said the user acceptance testing phase had identified unspecified "technical issues".<br><br>"We are in ongoing discussions with that vendor to get their technical issues resolved, improve the resourcing and oversight of their project team, and deliver against their promises and contractual obligations," CEO Neil Fiske told investors.<br><br>"We have requested that they provide us a comprehensive corrective action plan.<br><br>"Although we are clearly disappointed at the delay, actions are underway to address the issues." | ¶ 130.  During their December 7, 2015 phone conversation Mr. Swan agreed with Mr. Fallis that it was obvious that NetSuite did not have the ability to provide the functionality it committed to and reiterated an offer to have Grouse River walk away from the platform without paying its outstanding invoices or future invoices. |

| | |
|---|---|
| The NetSuite PoS solution, once implemented, will give retail staff insights into a customer's purchase history, and allow them to order products that are unavailable in store online.<br><br>It will also let Billabong staff access real-time stock numbers. Retail outlets are currently Siloed from online operations and the call centre. | |
| **NetSuite's failures with Billabong** | **NetSuite's failures with Grouse River** |
| Billabong has broken up the core components of its omni-channel overhaul and handed the pieces to separate software providers after ditching its first attempt with NetSuite.<br><br>Late last month the retailer revealed it had decided to ditch its deal with NetSuite for the SuiteCommerce cloud-based set of ecommerce and retail point-of-sale tools following technical implementation issues.<br><br>The contract termination saw Billabong book an $11.7 million impairment charge.<br><br>At its full-year 2017 results, Billabong revealed it had restructured its omni-channel overhaul into pieces that would be served by "multiple out of the box best in breed global platforms".<br><br>It has appointed Salesforce as the provider of its e-commerce and digital marketing platforms, and Aptos for point-of-sale and order management and loyalty.<br><br>"Proven" systems integrators will be used to "bring these building blocks together", it said. It Did not name its chosen integrators.<br><br>"The selection of the new partners was based on one overriding principle – delivering the best possible omni channel experience for customers with certainty and speed," Billabong said in financial filings.<br><br>"[We] emphasised that omni was not just e-commerce, but the ability for customers to shop the way they wanted to shop – in stores and online, retail and wholesale, across all channels | ¶ 188. NetSuite promised Grouse River it would provide a fully integrated ERP, e- commerce, and POS software solution that would provide data accuracy and visibility across the organization, creating efficiencies across the company's omni-channel environment, while serving e-commerce customers a world-class website built on cutting edge technology.<br>¶ 189. Instead it has created issues with Grouse River's ability to perform its most basic functions as a retailer. From e-commerce checkout failures to a point-of-sale system that loses inventory parts and neglects to report transactions back to the ERP, the entire system has caused a complete loss of transparency and trust into such essential data as sales reporting, inventory levels, and customer records.<br>¶ 190. These impacts touch every point in the organization creating mass inefficiency and severely interrupting Grouse River's ability to service its customers, make business decisions, and provide systems that support productivity. |

| | |
|---|---|
| with richness of content and a personalised experience.<br><br>"Each of the major partners is a leader in their field, but importantly they have worked together extensively on similar implementations."<br><br>CEO Neil Fiske said it was "not appropriate at this time" to provide detail of the circumstances that led to the NetSuite contract cancellation. | |

Exhibit 7



Scott Gattey <scott@gatteylaw.com>

## Grouse River v. NetSuite - Meet and Confer on Billabong Discovery

**Scott Gattey** <scott@gatteylaw.com>         Tue, May 29, 2018 at 9:14 AM
To: Loren Kieve <lk@kievelaw.com>, Paul Byrne <pbyrne@cornerlaw.com>
Bcc: Holly Baudler <holly.baudler@oracle.com>

Loren:

We strongly disagree with your suggestion that we have not worked in good faith to deal with these discovery issues. Instead, it is Grouse River that has wholly failed to explain how the voluminous information sought could potentially be relevant in the instant case. In particular, you haven't addressed or distinguished the authority we have provided and you also haven't explained the timing issue identified in Mr. Byrne's letter that would tend to demonstrate on its face that the information is not relevant.

We remain happy to meet and confer with you, as is required by Judge Beeler's rules. Your e-mail - sent on a Sunday - and demanding that we get on a call with you on Memorial Day at 9 am was not productive. We have families and are entitled to take a holiday. This is true regardless of the fact you apparently intend to leave on vacation for 2 1/2 weeks and expect us not to do anything during your absence.

Let us know when you would like to schedule a meet and confer call wherein you might explain Grouse River's position related to the issues raised in Mr. Byrne's letter of May 25th.

Regards,

Scott



1001 Laurel Street, Suite C
San Carlos, CA 94070
650.596.7123 (direct)
www.gatteylaw.com

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, be advised that you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify this office immediately if you have received this in error and destroy all copies of this message and any attachments.
[Quoted text hidden]