KIEVE LAW OFFICES
   Loren Kieve (Bar No. 56280)
   2655 Steiner Street
San Francisco, California 94115-1141
Telephone:     (415) 364-0060
Facsimile:     (435) 304-0060
lk@kievelaw.com

Counsel for Plaintiff
Grouse River Outfitters, Ltd.

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GROUSE RIVER OUTFITTERS, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> NETSUITE, INC., <br><br> Defendant. | **CASE NO. 16-CV-02954 LB** <br><br> **PLAINTIFF GROUSE RIVER'S NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS** <br><br> **November 1, 2018** <br><br> **9:30 a.m.** |

Please take notice that, on November 1, 2018 at 9:30 a.m. or as soon as counsel may be heard, plaintiff Grouse River Outfitters, Ltd. ("Grouse River" or "GR") will move (and hereby does move) to compel defendant NetSuite, Inc. ("NetSuite" or "NS") to produce *(a)* all communications and related documents between or among NS and NS's in-house or outside counsel from (i) the inception of discussions between GR and NS to provide NS's products or services to GR to and including (ii) June 2, 2016, the date this action was filed and *(b)* all communications between NS and Karen Messick at any time.

The grounds for this motion are four-fold.

First, GR served three document requests on NS on (a) December 12, 2016, (b) December 27, 2016 and (c) January 5, 2017. At no time since then has NS served a privilege log on GR. NS has therefore waived any objections to producing privileged or work-product materials. NS should be ordered to produce them now.

Second, recent document productions by NS demonstrate that it knowingly defrauded GR when it represented, contracted and promised GR that NS and its various NS "solutions" could provide GR with the key functionalities NS promised – including such basic retail functions as (a) being able to process firearms and other products with serial numbers in the NS "Point of Sale" or "POS" (*i.e.,* cash registers or tills) "solution," (b) processing credit and debit cards at the POS, (c) providing gift cards that worked both in E-commerce (*i.e.,* on the website NS provided to GR) and at the POS, (d) providing an omni-channel customer loyalty program and, perhaps most importantly, (e) being able to synchronize the POS, E-Commerce an other components of the NS "solution" so that they would work together in what NS promised was a "seamless" 'omni-channel" environment.

In NS's numerous e-mails, NS has admitted it defrauded GR by contracting to provide these basic commercial functionalities and "solutions," among others, it knew it did not have. All of NS's activities are infected and inflected with fraud, aided and abetted by its counsel. NS's communications with counsel therefore fall squarely under the crime/fraud/tort exception to the attorney-client privilege. This is another, separate reason for requiring NS to produce these materials.

Third, on July 17, 2018, GR served a subpoena duces tecum to produce documents on Karen Messick, through her counsel, the same counsel who are representing NS. At no time have Ms. Messick or her counsel objected to that subpoena, much less to producing communications between her and NS's counsel. She (and they) have therefore waived any objections to producing allegedly privileged or work-product materials, and should be ordered to do so immediately.

Fourth, the evidence shows that Messick committed perjury in her deposition testimony. NS has refused to produce highly relevant documents – communications (a) following the filing of the complaint between NS and Messick (and subsequently with their joint counsel) that are evidence of her perjury in denying that these communications occurred. Whether advertently or not, NS and Messick/NS counsel are themselves assisting in the perpetuation of her criminal conduct by refusing to produce this key, relevant evidence . None of the communications between

NS (or its counsel) and Ms. Messick is therefore subject to a legitimate claim of privilege and they all should be produced.

## *MEMORANDUM IN SUPPORT*

### I.     NetSuite Has Waived Privilege.

GR served document requests on NS on (a) December 12, 2016, (b) December 27, 2016 and (c) January 5, 2017. Declaration of Loren Kieve ("Kieve Decl.") ¶ 22, **Exhs. 9, 10, 11.** At no time has NS served a privilege log on GR. *Id.*

NS has therefore waived any objections to producing allegedly privileged or work-product materials. The Ninth Circuit's seminal decision, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,* 408 F.3d 1142, 1149 (9th Cir. 2005), is directly on point ("waiver where the log not only was not filed during the Rule 34 time limit, but was filed *five months* later. In the absence of mitigating considerations, this fact alone would immunize the district court's ruling from reversal under the standard just articulated. But additional circumstances support the district court's ruling. Burlington is a sophisticated corporate litigant and a repeat player in environmental lawsuits and regulatory action involving the site that is the subject of the underlying lawsuit."); see also *Woodard v. Labrada*, No. EDCV16189JGBSPX, 2017 WL 1018306, at *6 (C.D. Cal. Mar. 6, 2017) ("responses fail to satisfy Rule 26(b)(5)(A), which requires that parties withholding otherwise discoverable information on the ground of privilege must expressly claim the privilege. Fed. R. Civ. P. 26(b)(5)(A) (party claiming the privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed ... in a manner that ...will enable other parties to assess the claim"); see also *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court,* 408 F.3d 1142, 1148–49 (9th Cir. 2005). Further, Dr. Oz has not produced a privilege log. JS at 19."). These documents should be produced – now.

### II.    NetSuite's Own Documents – Without Any More Evidence – Conclusively Demonstrate Wholesale Fraud.

Outlined below are just some of the outright, knowing frauds that NetSuite's own internal documents spell out in stark admissions after admission.

*Credit Cards.* The most basic tools of modern commerce today are not cash, but credit and debit cards. Grouse River expected, and NetSuite promised, that its standard, out-of-the box "Point of Sale" (or "POS") products could process retail store transactions using credit and debit cards. That was knowingly false. NetSuite did not have the capability of processing cards that, as were required across Canada, used "EMV" (or "Europay, Mastercard, Visa") chip-pay technology. Kieve Decl. ¶¶ 12-15, **Exh. 20.**

*Omni-Channel Customer Loyalty Programs.* NetSuite told Grouse River that it could supply an out-of-the-box, tested omni-channel customer loyalty facility. That was another known lie. As internal NetSuite e-mails now tell us, and tell Grouse River for the first time only after this lawsuit was filed: "We sold this as though it already works to Grouse River and were going to use Grouse River to test" and "Grouse River will be the first customer to use this omni-channel program and it will be important to test it thoroughly prior to go-live."   Kieve Decl. ¶ 16, **Exh. 28.**

*Serialized Inventory.* Grouse River is, or rather was, a Canadian outdoor and sporting goods company. It sold firearms, scopes and similar items that have serial numbers so they can be tracked. For firearms, this was critical because of Canadian gun-licensing and -tracking requirements.

NetSuite never told Grouse River prior to signing the initial contract that NetSuite could not process serial numbers through the POS. The promised "functionality" never worked and crippled Grouse River's entire operations. As a candid internal NetSuite e-mail – sent some four months after the "Go Live" date when everything NetSuite had contracted to do should have worked – stated:

> **Sales really screwed us all, when they sold POS for firearms to have serial # controls when POS does NOT have that capability. We should have all walked away at that point. Ryan said so at the time.**

Kieve Decl. ¶¶ 19-21, **Exhs. 44, 45.**

*Gift Cards.* NetSuite promised Grouse River "omni-channel gift card" functionality as "in scope" and a standard part of its product. NetSuite told Grouse River just how to set them up, including using "authorization codes." This was another confirmed lie: "gift cards w/auth code

functionality doesn't work in current release (this is held up because Dev environment needs to be updated by Ops)." This key business function also never worked properly – again disrupting the company. Kieve Decl. ¶ 17, **Exhs. 2, 26, 27.**

*Basic Synchronization.* NetSuite promised Grouse River that its POS system would seamlessly synchronize with its cloud-based "Enterprise Resource Planning" or "ERP" system. It repeatedly referred to this as "A single version of the truth." It was scarcely a single version; and NetSuite knew it was not true.

In an e-mail entitled "RE: Grouse River S3 - Issue 310555: 3558148 Grouse River Outfitters, Ltd.> NSPOS > Downsync fails on item step," a NetSuite project manager stated that "We end up needing dev/qa to have access to almost all implementation servers so they can investigate software defects."  Kieve Decl. ¶ 18  **Exhs. 21, 22.**

In a follow-up e-mail, another project person asks in frustration, "how do we address the fact that dev needs access to almost all of our implementations prior to go live due to product stability issues?  We have another customer – Grouse River, issue 31055, where they plan to go live in two weeks and we can't even get their server working. And, it's a leading omni-channel Retail customer." Kieve Decl. ¶ 18  **Exhs. 21, 22.**

Referring to this issue, another project manager laments: "I look forward to the time when we have a product that is stable and doesn't require development to intervene during initial server staging and download from NS ERP."  Kieve Decl. ¶ 18  **Exhs. 21, 22.**

Ultimately the problem with "Downsync" not working meant that inventory was not being handled correctly; and inventory "infects" every aspect of the system.

*An E-Commerce "Nightmare" for Grouse River.*

These are just the tips of the iceberg of a true "nightmare," a knowing web of lie after lie after lie that destroyed Grouse River's ability to sell its products in both its retail store and in e-commerce, and ultimately ended up killing Grouse River after a long and painful ordeal.

**III.     This Is Fraud – Period.**

The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.

*Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 990 (2004) (citation omitted). Each of these elements is satisfied here.

### IV. All the Elements of the Crime/Fraud/Tort Exception Are Satisfied Here.

As the Court stated in *United States v. Lonich,* No. 14-CR-00139-SI-1, 2016 WL 1733633, at *8 (N.D. Cal. May 2, 2016), "[t]o invoke the crime-fraud exception successfully, the government has the burden of making a prima facie showing that the communications were in furtherance of an intended or present illegality and that there is some relationship between the communications and the illegality" (citations omitted)); *Dollar Tree Stores, Inc. v. Toyama Partners LLC*, No. CV 10-0325 SI NJV, 2011 WL 5117565, at *2 (N.D. Cal. Oct. 28, 2011) ("The standard for compelling *in camera* review of documents is 'relatively minimal,' and Plaintiff has adduced sufficient evidence of the presence of several badges of fraud").

As set out in one of the few, heavily redacted e-mails NS produced, its in-house counsel was an integral part of extorting GR to pay substantial sums, above and beyond what it had already outlaid, just to keep NS from "turning off the switch" and completely destroying GR. Kieve Decl. ¶ 24, **Exh. 15.**

There is therefore not only "some," but a demonstrable "relationship between the communications and the illegality." *Lonich,* 2016 WL 1733633, at *8; see also *In re Grand Jury Proceedings*, 802 F.3d 57, 66 (1st Cir. 2015) ("there was also sufficient evidence for the district court to conclude that at least some of the communications between appellant and appellant's attorneys with respect to the admiralty proceeding were intended by appellant to facilitate that fraudulent scheme").

NS's having failed to provide a privilege log, and therefore having waived any right to claim privilege, the Court should not have to go to the trouble of conducting an *in camera* review, but should simply order NS to produce these documents.

### V. Messick and Her Counsel Have Waived Privilege.

GR served a subpoena duces tecum to produce documents on Karen Messick, through her counsel, the same counsel who are representing NS, on July 17, 2016. At no time did Ms. Messick

or her counsel object to that subpoena, much less to producing communications between her and NS's counsel. Kieve Decl. ¶ 10, **Exh. 5.**

She has therefore waived any objections to producing allegedly privileged or work-product materials. *Moore v. Chase, Inc.,* No. 1:14-CV-01178-SKO, 2015 WL 4393031, at *5 (E.D. Cal. July 17, 2015) ("Under Rule 45, the nonparty served with the subpoena duces tecum must make any objections within 14 days after service or before the time for compliance, if the nonparty is served less than 14 days before time for compliance. Fed.R.Civ.P. 45(c)(2)(B). Failure to serve timely objections waives all grounds for objection, including privilege. *U.S. ex rel. Schwartz v. TRW, Inc.,* 211 F.R.D. 388, 392 (C.D.Cal.2002).").

Ms. Messick, and her NetSuite/Messick counsel, should therefore be ordered to produce all communications between them and NetSuite, on the one hand, and Ms. Messick, on the other.

**VI.    NetSuite Is Withholding Material Evidence of Messick's Perjury.**

*A.  There is prima facie evidence that Messick perjured herself.*

Grouse River asked to take Ms. Messick's deposition before August 16 because her (and NetSuite's) counsel advised Grouse River on August 10 that she was going to start a medical treatment then. Her counsel finally agreed to allow her to be deposed for a very short videoconference deposition limited to two and half hours on August 15, 2018. Grouse River has reason to believe that Ms. Messick perjured herself in her August 15 testimony.

She testified that:

(a) In June 2016, following the filing of the complaint in this action, she did not receive a communication from NetSuite or one or more persons affiliated with NetSuite that included a copy of the complaint.

(b) At no time did she communicate with counsel for Grouse River about the complaint or this action.

(c) At no time did she send copies of documents to counsel for Grouse River.

(d) At no time did she tell counsel for Grouse River that the allegations of fraud in the complaint were true.

(e) At no time did she tell counsel for Grouse River that specific allegations in the complaint about NetSuite's fraudulent representations to Grouse River about key specific functionalities NetSuite's e-commerce and point of sale products could supply to Grouse River – such as NetSuite's representations that it had an omni-channel gift card solution, NetSuite could not provide it, and knew it could not provide it – were in fact true, and that NetSuite knew it could not provide these basic functionalities when it entered into a contract with Grouse River.

(f) At no time did Ms. Messick tell counsel for Grouse River that she questioned other NetSuite personnel about why they were making these false representations and they told her that they would try to find a work-around to deal with it.

See attached rough deposition transcript, **Exh. 1**, at 16-17, 18-19, 20-23, 26-27, 30, 119-20.

Her counsel, who is also counsel for NetSuite, directed her not to answer any more questions to probe her testimony, precluding making a fuller record. *Id.* This will be the subject of another forthcoming motion.

There is concrete, undisputed evidence that each of the material statements set out above that Ms. Messick made under oath violated 18 U.S. Code § 1623(a) (False declarations before grand jury or court):

> Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.

See *United States v. Kross*, 14 F.3d 751 (2d Cir. 1993) (affirming conviction for perjury for providing false statements during a civil deposition); see also 18 U.S. Code § 1503(a) ("Whoever . . . corruptly . . . obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice"); *Roberts v. United States,* 239 F.2d 467 (9th Cir. 1956) (perjury and

obstruction of justice in a civil action); *United States v. Lundwall,* 1 F. Supp. 2d 249, 253 (S.D.N.Y. 1998) ("§ 1503 has been repeatedly applied in a wide variety of civil matters").[1]

**Exh. 2** is a copy of the e-mail, along with attachments, Ms. Messick sent to Grouse River's counsel on June 13, 2016 confirming (a) that she provided information and documents to Grouse River's counsel and (b) her desire to "provide some information to you, but only if I can do so legally."

**Exh. 3** are the notes of her conversation with Grouse River's counsel that directly contradict her testimony. Had her counsel not objected and precluded any further questioning on this topic, Grouse River would have developed a fuller record.

Ms. Messick testified in her August 15 deposition that the first time she received a copy of the complaint was when she received it from Paul Byrne, NetSuite's current counsel. **Exh. 1** at 20. He did not become counsel in this action until May 3, 2017, see ECF Doc. 66, almost a year after Ms. Messick told Grouse River's counsel that she had received a copy of the original complaint in June 2016 from NetSuite. Her testimony on this issue is therefore also perjured.

### B. *Grouse River is entitled to relevant evidence.*

Grouse River has served another subpoena on Ms. Messick's counsel – also counsel for NetSuite – to (a) produce for forensic inspection her computers, cellphones or other devices to determine whether she has relevant communications or may have attempted to delete or erase them and (b) produce her telephone bills for the relevant June 3 to 16, 2016 period. See **Exh. 4**.

Counsel for Messick/NetSuite have served an objection to this subpoena, refusing to produce any documents**. See Exh. 6.** They have not, however, served a privilege log. Kieve Decl. ¶ 9. They have therefore waived any claim of privilege. See Fed. R. Civ. P. 45(e)(2)(A):

> (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
> (i) expressly make the claim; and
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

---

1. The Court should also refer this matter to the United States Attorney for investigation of potential violations of 18 U.S. Code §§ § 1503(a) and 1623(a), set out above.

See *In re Grand Jury Subpoena,* 274 F.3d 563, 576 (1st Cir. 2001) (citations omitted) ('failing 'to provide a complete privilege log demonstrating sufficient grounds for taking the privilege' waives the privilege. . . .. Although most of the reported cases arise in the context of a claim of attorney-client privilege, the 'specify or waive' rule applies equally in the context of claims of work product privilege.").

Grouse River has also served a document request on NetSuite to produce all relevant communications with Ms. Messick or other former employees immediately following the filing of the complaint, **Exh. 7.** NetSuite has objected and refused to produce anything. See **Exh. 8.** Grouse River expects that these communications will show that, contrary to Messick's sworn testimony, NetSuite (and/or someone affiliated with NetSuite) sent her a copy of the complaint in June 2016 shortly after it was filed – resulting in her then promptly contacting Grouse River counsel to confirm that its allegations of fraud are true. See **Exhs. 2, 3.**

This evidence is in no way "collateral" or outside the realm of relevance, but necessary to provide key impeachment evidence. *Hausman v. Holland Am. Line-USA*, No. 13CV00937 BJR, 2015 WL 9839747, at *3 (W.D. Wash. Aug. 21, 2015) (false testimony "goes to his credibility and is proper impeachment evidence").

Again, NetSuite has not produced a privilege log, see Kieve Decl. ¶ 9, and has therefore waived any claim of privilege. *Id.*

There is strong reason to believe that, when – in whatever "capacity" or "hat" they are wearing, counsel for Messick/NetSuite produce these relevant communications – it will be incriminatory evidence that (a) Ms. Messick did receive a copy of the complaint from NS or someone associated with NS and (b) therefore committed perjury when she testified that she did not, and that she did not then contact GR's counsel to tell them that the allegations of fraud in the complaint are true.[2]

---

2. This issue will be one for a later day, but as GR's part of a prior Joint Discovery Letter, ECF Doc. 112, cautioned at n.4,

(footnote continued)

GR motion to compel attorney communications      10            Case No. 16-CV-02954 LB

Dated: September 21, 2018

*Loren Kieve*
Loren Kieve
Counsel for Grouse River Outfitters, Ltd.

---

NS's counsel "represent" these ex-employees at their peril. See *LeClair v. Napoli Grp., LLC,* No. 2:10-CV-28, 2011 WL 2517228, at *3 (D. Vt. June 23, 2011) ("if it is discovered that one of the former employees now represented by Defense Counsel possesses information adverse to Defendants' interests, the firm may be required to withdraw from this case altogether, leaving the Defendants, as well as the current and former employees, with the task of securing new representation").

Ms. Messick's and NetSuite's joint counsel therefore appear to have a fundamental, non-waivable conflict of interest that requires their disqualification and withdrawal from representing either party. Ms. Messick's perjury permanently taints both her representation by counsel for NetSuite and their representation of NetSuite itself. If she recants her false testimony, and confirms that NetSuite defrauded Grouse River, it will present an incurable dilemma for NetSuite and its counsel – because it will establish fraudulent falsehoods by NetSuite.  See *State Comp. Ins. Fund v. Drobot,* 192 F. Supp. 3d 1080 (C.D. Cal. 2016) (disqualifying law firm under virtually identical circumstances); see also *United States v. Shaffer Equip. Co.,* 11 F.3d 450, 460 (4th Cir. 1993) (lack of veracity of a material witness is fraud on the court, requiring counsel to bring it to the court's attention).