Scott D. Gattey (SBN 180875)
GATTEY LAW OFFICE
1001 Laurel Street, Suite C
San Carlos, CA 94070
Telephone: 650.596.7123
Facsimile: 866.371.3491

Paul J. Byrne (SBN 190860)
CORNERSTONE LAW GROUP
575 Market St Ste. 3050
San Francisco, CA 94105
Telephone:  415.357.2094
Facsimile:   415.655.8238

ATTORNEYS FOR DEFENDANT NETSUITE INC.

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GROUSE RIVER OUTFITTERS, LTD, <br><br> Plaintiff, <br><br> vs. <br><br> NETSUITE INC., <br><br> Defendant. | CASE NO.  16-CV-02954 LB <br><br> NETSUITE INC.'S OPPOSITION TO GROUSE RIVER OUTFITTERS, LTD'S MOTION NETSUITE INC.'S OPPOSITION TO GROUSE RIVER OUTFITTERS, LTD'S MOTION TO COMPEL THE PRODUCTION OF INSTANT MESSAGING, INTERNAL PROJECT LOGS AND OTHER DOCUMENTS AND SEEKING AN ADVERSE JURY INSTRUCTION <br><br> Date: November 1, 2018 <br> Time: 9:30 a.m. |

I.  INTRODUCTION

As has become unfortunately par for the course, Plaintiff Grouse River Outfitter Ltd.'s ("Grouse River") has filed yet another motion wholly lacking in both factual and legal basis. Literally days before a Settlement Conference with Judge Laporte– and facing a Motion for Summary Judgment that could result in the dismissal of Plaintiff's ever-evolving fraud claims – Plaintiff's counsel filed new fewer than four (4) muddled motions suggesting that NetSuite (along with its inside and outside counsel) have engaged bad faith conduct and violated numerous civil and criminal laws. Included among Plaintiff's myriad demands is that this Court refer a witness -- currently undergoing cancer treatment in Boston, and whose testimony didn't support Plaintiff's theory of the case -- for criminal perjury prosecution.

The instant motion was filed on Sunday September 23rd – literally hours before a Settlement Conference was scheduled to start. While lengthy, Plaintiff presents no evidence that he ever met and conferred with Defendant on the issues he seeks to raise in this motion.[1] Defendant would suggest that Plaintiff's counsel filed all of the four motions on calendar for November 1st not to address legitimate concerns but only in an attempt to create some leverage for Grouse River at the September 24, 2018 Settlement Conference. Such actions are an improper use of the judicial process.

As set forth herein, NetSuite has acted in good faith throughout the discovery process in this case – producing tens of thousands of documents in response to the Requests for Production that Plaintiff's counsel rolls out on a regular basis. In his moving papers, Plaintiff seeks to rely on "evidence" that simply doesn't exist, is not close to having been properly authenticated and misleads the Court by failing to point out testimony that directly contradicts what it suggests to the Court.

For the reasons set forth herein, Plaintiff's Motion to Compel and for an Adverse Jury Instruction [Motion No. 125] is entirely without merit and can - and should - be denied in its entirety.

---

[1] On this point, Defendant refers the Court to Docket Nos. 139 and 139-1, which set forth in great length Plaintiff's counsel's antics – and which demonstrate both a calculated decision to flaunt this Court's order of August 27, 2018. [See Docket 139-1 at ¶3] and a general lack of good faith.

II. ARGUMENT

As the Court will recall, and pursuant to both the Federal and Local Rules, the parties spent a significant amount of time crafting an Electronically Stored Information ("ESI") protocol. Various custodians were selected and search terms were used.[2] After the ground rules were agreed upon, the parties were to produce responsive documents. See Declaration of Scott D. Gattey in Support of Opposition to Motion Re: Instant Messages ("Gattey Decl.") at ¶7.

Grouse River attempts to make much of the fact that NetSuite produced some documents in August of this year. *See* Motion at p. 2:15. However, a cursory review demonstrates that Plaintiff's suggestion that this was sort of some orchestrated effort to "hide" documents is without merit. Grouse River has continued to routinely send out new Requests for Production. Gattey Decl. ¶2. Further, and because Plaintiff has sought to turn a garden-variety breach of contract matter into a fraud case, the number of potentially relevant documents has increased dramatically.[3] As the Court will recall, after initially producing only a few thousand documents, it was only in March of 2018 (16 months after NetSuite's Request for Production) that Grouse River – facing inquiries from NetSuite about the paucity of its initial production – dumped tens of thousands of documents on NetSuite without explanation. *Id.* at ¶3.

Grouse River's discovery-related gamesmanship extends well beyond a single document dump. For example, when NetSuite recently propounded only its Second Set of Requests for Production of Documents– timed to gather documents after depositions and before the discovery cut off – Plaintiff categorically refused to produce documents that are very clearly directly relevant to the issues in dispute. Grouse River's response to basically every one of NetSuite's requests – "**Overbroad and**

---

[2] Grouse River suggests there "must be" some malfeasance because it only has only reviewed "some" e-mails involving NetSuite's former CEO, Zach Nelson. Mr. Nelson was a part of the ESI search and Grouse River is forced to admit in its motion that e-mails he was on have in fact been produced. Gattey Decl. at ¶7. Of course, the fact that Grouse River might hope to see more documents of course means nothing, and there is no evidence that Netsuite did not properly apply the ESI terms to the custodians that the parties conferred about and ultimately agreed upon.

[3] Defendant's counsel could estimate that the number of documents is roughly 300-400% larger than would be the case if this case was a pure breach of contract matter.

3

**disproportional to the issues in dispute**." Gattey Decl., ¶5 and Exhibit 3 thereto. This in a case where Plaintiff would suggest it is entitled to millions of dollars of damages!

Importantly, the evidence also reflects that Grouse River's CEO: 1) made a conscious decision not to retain any of the Company's financial data for the period after February 2016 and until it discontinued operations in June 2017 (Ex. 6 to Gattey Decl. at pp. 46-47, 23-28, 31-32, 56 ("Fallis Deposition"); and 2) has failed to produce documents that Grouse River provided to a third party (Grant Thorton) who, after reviewing the NetSuite/Grouse River project concluded Grouse River was wholly disorganized and had not done the necessary homework to undertake the NetSuite implementation. Gattey Decl., ¶7 and Exhibit 5 thereto; Ex. 6 to Gattey Decl. (Fallis Deposition) at 74, 78-79.[4]

In cases involving many players and work done over the course of multiple years, it is not atypical for documents to be produced in a rolling fashion. Both parties have done that here. And NetSuite has been fully upfront when it has determined that additional documents might be available for production – timely notifying Grouse River's counsel and taking steps to produce such documents in a reasonable timeframe and offering to accommodate Plaintiff should it consider that it has been prejudiced. *Id.* at ¶4, Exs.1-2.

Grouse River suggests that it has "evidence" that NetSuite has instant messages it has not produced.[5] According to Plaintiff, this evidence apparently consists of two things. First, Grouse River's counsel suggests he received an e-mail -- allegedly sent by a former NetSuite employee --

---

[4] As the Court will recall, the parties agreed that the project was a shared one with the parties working together. While Grouse River would like to suggest otherwise, this is not a project where NetSuite agreed to come in and simply "make things work" however Grouse River might have hoped. Rather, a customer's dedicated involvement to the project is key. Here, unfortunately, Grouse River's commitment – and its resources - were conspicuously absent.

[5] Grouse River would also suggest that there are "Project Log Notes" that it hasn't seen. In support of this argument, it again cites the non-existent e-mail from an alleged former employee as well as testimony from Ms. Messick. However, while suggesting that Ms. Messick indicated that there was a system that captures all interactions with customers, Plaintiff chose not to provide the Court will the full context. In fact, Ms. Messick testified that it was only "important" or "key" documents were in this alleged log. Ex. 4 to Gattey Decl., p.138-139. She also testified that it was completely up to employees as to whether include documents in the "log." *Id.* In this case NetSuite ran the ESI terms on the agreed upon custodians and produced (and continues to produce) responsive documents, including many that could be called logs or spreadsheets. The "key" or "important" documents were likely already produced as part of the ESI process. The fact that Plaintiff expects to see some sort of smoking gun documents doesn't establish that such a document exists and is being withheld.

suggesting such messages exist.  Motion at 3:12-4:8.  A review of what this former employee allegedly said, however, demonstrates that he says *absolutely nothing* about either instant messages or texts.  *Id.* Further, a cursory review of Plaintiff's "evidence" demonstrates a complete lack of the same. Plaintiff's counsel inexplicably fails to presents a copy of the purported e-mail – instead apparently cutting and pasting from what counsel suggests was an e-mail he received.  Of course, this is not evidence – let alone admissible evidence.  No foundation whatsoever is laid as to whether this individual worked in the business unit at issue here, when this person worked at NetSuite, where this person worked, that this person had any interactions with anyone who worked on the NetSuite/Grouse River project, was familiar with the technology used at NetSuite between 2012-2016, etc.  As such, the Court can and should disregard this "evidence."

Plaintiff also suggests that a witness, Ms. Messick unambiguously "confirmed" that NetSuite uses and retains a system of Instant Messages of internal communications.  Motion at p.3:8-9. Reviewing the transcript, however, reflects that Ms. Messick was only "assuming" that such a system existed.  Messick Deposition, Ex. 1 to Kieve Declaration [Docket 125-2], p.239:18; Gattey Decl., ¶6, Ex.4 at p. 138:12-139:4.[6]

Most importantly, and as Mr. Kieve might have learned had he elected not to walk out of the Court's ordered two hour meet and confer session after fourteen (14) minutes, is that NetSuite *did not have* a messaging system that retained employee communications.  See Declaration of Ladislav Sidlo in Opposition to Motion Re: Instant Messages ("Sidlo Decl.").

The evidence reflects that the parties engaged in a comprehensive process that resulted in identifying custodians and search terms.  Grouse River presents absolutely no evidence that NetSuite has not complied with its discovery obligations – instead throwing up numerous arguments – all

---

[6] As noted previously, Plaintiff seeks to have Ms. Messick criminally prosecuted for perjury.  NetSuite would suggest that this is because Ms. Messick categorically rejected the conspiracy theories that Plaintiff seeks to advance.  Messick testified, among other things, that: 1) while working for NetSuite she never worked on a project that did not "Go Live;" 2) Grouse River used the NetSuite solution to run its business for many years after the project went live; 3) she is not aware of anyone associated with NetSuite making any false statements to Grouse River; and 4) NetSuite worked hard to address the concerns Grouse River raised.  Gattey Decl., ¶6, Ex.4 at pp. 130-131; 135-7.

without factual support – to suggest that because the facts aren't turning out as Plaintiff might hope NetSuite must be withholding very important information.  Such speculation and conjecture can be easily rejected – especially when considered in light of the fact that all the instant motions were filed in the hours before a Settlement Conference.  The Court can easily connect the dots.

Finally, despite the fact it is not able to demonstrate any misconduct, Plaintiff suggests that the Court should impose an adverse inference instruction.  There is absolutely no factual or legal basis for such a request.  Defendant commends the principal case cited by Plaintiff to the Court – *Keithly v. Home Store, Inc.* No. C-03-04447SI (EDL) 2008 U.S. Dist. LEXIS 61741 (N.D. Cal. Aug. 12, 2008). That case involved conduct that Judge Laporte noted was among the most egregious she had seen, including spoliation of evidence, material misrepresentations to the court, deceptive conduct and the last-minute production of documents that a party had previously suggested to the Court did not exist. Of course, there is absolutely no such evidence here.  Plaintiff's request can thus be denied.

### III.  CONCLUSION

Plaintiff chose to file a scattershot array of motions on the eve of a settlement conference.  Its actions clearly demonstrate an intent to use this court as a tool to increase Plaintiff's leverage at that settlement conference.  There is no evidence presented that NetSuite engaged in any wrongful conduct or discovery abuse.  Instead, the evidence indicates that Plaintiff's counsel sought to misuse (and has misused) the judicial process.  For the foregoing reasons, Plaintiff's motion should be denied.

Dated: October 9, 2018          /s/ Scott D. Gattey

Scott D. Gattey
Gattey Law Office
Attorneys for NetSuite Inc.

**CERTIFICATE OF SERVICE**

     I hereby certify that on October 9, 2018, a true and correct copy of the foregoing and its associated two declarations were filed electronically and served by e-mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

                          */s/ Scott D. Gattey*

                          Scott D. Gattey