1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

10   San Francisco Division

11   GROUSE RIVER OUTFITTERS LTD,                    Case No. 16-cv-02954-LB

12        Plaintiff,

13        v.                                          **ORDER GRANTING IN PART AND
                                                      DENYING IN PART DEFENDANT'S
14   ORACLE CORPORATION,                             MOTION IN LIMINE 10**

15        Defendant.                                  Re: ECF No. 316

16

17      Defendant Oracle Corp. moves to exclude "any new and undisclosed computations of [Grouse

18   River's] lost profits or out-of-pocket damages."[1] Plaintiff Grouse River Outfitters Ltd. filed an

19   opposition,[2] Oracle filed a reply,[3] Grouse River filed a sur-reply,[4] and the court held a hearing. For

20   the reasons stated on the record at the hearing and below, the court grants in part and denies in part

21   Oracle's motion in limine.

22

23

24

25   _____
     [1] Def. Mot. – ECF No. 316. Citations refer to material in the Electronic Case File ("ECF"); pinpoint
26   citations are to the ECF-generated page numbers at the top of documents.

     [2] Pl. Opp'n – ECF No. 318.
27
     [3] Def. Reply – ECF No. 324.

28   [4] Pl. Sur-Reply – ECF No. 325.

     ORDER – No. 16-cv-02954-LB

### 1. Governing Law

"[Federal] Rule [of Civil Procedure] 26(a)(1)(A)(iii) requires the disclosure of 'a computation of each category of damages claimed by the disclosing party.'" *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008). "Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures 'in a timely manner' when the prior response is 'incomplete or incorrect.'" *Id.* "'Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.'" *Id.* (quoting *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id.* (citing *Yeti by Molly*, 259 F.3d at 1106). "[This] portion of Rule 37 . . . has been described as a 'self-executing, automatic sanction to provide a strong inducement for disclosure of material.'" *Id.* at 1180 (quoting *Yeti by Molly*, 259 F.3d at 1106). "The implementation of the sanction is appropriate 'even when a litigant's entire cause of action will be precluded.'" *Id.* (internal brackets and ellipsis omitted) (quoting *Yeti by Molly*, 259 F.3d at 1106). "The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).

"Computation of each category of damages," as used in Rule 26, "contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages." *Silver State Broad., LLC v. Beasley FM Acquisition*, No. 2:11-CV-01789-APG-CWH, 2016 WL 320110, at *2 (D. Nev. Jan. 25, 2016) (citing *City and Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) and other cases), *aff'd*, 705 F. App'x 640 (9th Cir. 2017). A party cannot satisfy its Rule 26 obligation to provide a "computation of each category of damages" simply by producing to the other side the documents or figures the disclosing party claims support its damages claims. "Rule 26(a) . . . requires Plaintiffs to disclose their 'computation' of lost profits, and cases have rejected the claim that the mere possession of raw financial data by the opposing party satisfies Rule 26." *Bennion and Deville Fine Homes Inc. v. Windermere Real Estate Servs. Co.*, No. ED CV 15-01921-DFM, 2018 WL 4802011, at *6 (C.D. Cal. July 17, 2018)

(quoting *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459 ABC (PLAx), 2011 WL 13127349, at *6–7 (C.D. Cal. Sept. 15, 2011), *vacated on recons. in part*, 2011 WL 13127211 (C.D. Cal. Oct. 13, 2011)); *accord, e.g.*, *Silver State*, 2016 WL 320110, at *4 ("[A] plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages. The Defendants are not required to compute damages, Rule 26 requires plaintiffs to do so.") (citations and internal quotation marks omitted). For example, a plaintiff's disclosing "lump sums for each year of decline in its business and a lump sum for lost business opportunities" without "describ[ing] the assumptions required to calculate those lump sums" or "explain[ing] how it calculated its annual lost revenues, or how it calculated damages from lost business opportunities," is insufficient to comply with Rule 26. *Valley Surgical Ctr. v. Cty. of Los Angeles*, No. CV 13-2265-DDP (AGRx), 2017 WL 10574240, at *3 (C.D. Cal. June 29, 2017).

### 2. Application

In its motion, Oracle asks the court to exclude Grouse River's claimed damages for its supposed failure to comply with its Rule 26 disclosure obligations. The court therefore addresses only the Rule 26 issue and does not address whether Grouse River has admissible evidence to support its claimed damages.[5]

Grouse River produced an initial chart of claimed damages with its initial disclosures on December 27, 2016.[6] It produced an updated version of this chart on May 19, 2017, during its

---

[5] For example, the court does not address in this order whether Grouse River produced evidence to support the damages claimed in its disclosures because that is a separate issue from whether it provided adequate damages computations. *Contra* Def. Reply – ECF No. 324 at 4. Similarly, the court does not address whether Grouse River's former CEO Glen Fallis can lay the foundation for his testimony (or is otherwise competent to testify) about Grouse River's claimed damages or whether NetSuite (as opposed to other factors) caused the damages. Contrary to Grouse River's claim, *contra* Pl. Opp'n – ECF No. 318, Oracle has not waived the right to object to Mr. Fallis's testimony on damages. The court remains skeptical that Mr. Fallis can lay a foundation to testify about damages and causation. *Cf.* Final Pretrial Order – ECF No. 292 at 18. In sum, the court does not further address the evidentiary questions about Mr. Fallis's testimony in this order because its analysis is confined to Rule 26.

[6] Def. Mot. Ex. B (Pl. Initial Disclosures) – ECF No. 316-2 at 7.

Rule 30(b)(6) deposition.[7] It then produced a spreadsheet that it claims supports the damages figures in its chart.[8] The court addresses each category of damages in turn.

| PROJECT COSTS | |
|---|---|
| Paid to NetSuite (initially disclosed as $360,000; disclosed on revised chart as $360,000; disclosed on spreadsheet as $405,690.62) | **Adequately disclosed**<br><br>The amount that Grouse River paid to NetSuite was disclosed on the "Project Costs by Vendor" and "NetSuite" tabs of the spreadsheet.[9] |
| Paid to partners, consultants, systems, and support related to NetSuite (initially disclosed as $200,000; disclosed on revised chart as $200,000; disclosed on spreadsheet as $158,548.68) | **Adequately disclosed**<br><br>Grouse River's computations were disclosed on the "Project Costs by Vendor" and subsequent tabs of the spreadsheet.[10] |
| Project-related wages (initially disclosed as $1,000,000; disclosed on revised chart as $1,200,000; disclosed on spreadsheet as $1,342,309.59) | **Inadequately disclosed**<br><br>This number appears to be derived from the "Wage Impact" tab of the spreadsheet.[11] That tab takes a column labeled "Wages" and multiplies it by a column labeled "% Allocation to [NetSuite] Project & Repercussions" to arrive at a "Wages Allocated to NetSuite." Assuming without deciding that the total wages were adequately disclosed, the spreadsheet provides no explanation of how the % Allocation column was calculated or what assumptions went into those percentages. This is inadequate. *Cf. Valley Surgical*, 2017 WL 10574240, at *3. |

---

[7] Pl. Opp'n – ECF No. 318 at 3; Pl. Opp'n Ex. 2 (Pl. updated damages chart) – ECF No. 318-1 at 9–10. The fact that Grouse River produced this updated chart as a deposition exhibit as opposed to as part of an updated set of initial disclosures is not per se disqualifying. *Cf. Aspect Sys., Inc. v. Lam Research Corp.*, 404 F. App'x 136, 139 (9th Cir. 2010) (affirming district court's decision that damages disclosure made as part of a mediation statement satisfied Rule 26's damages-disclosure obligation).

[8] Pl. Opp'n – ECF No. 318 at 3; Pl. Opp'n Ex. 4 (Pl. spreadsheet) – ECF No. 318-1 at 18–46 (GRN00022231–59). Grouse River provided the court with a copy of this spreadsheet in native format.

[9] Pl. Opp'n Ex. 4 (Pl. spreadsheet) – ECF No. 318-1 at 24–25 (GRN00022237–38).

[10] *Id.* at 24 (GRN00022237), 26–30 (GRN00022239–43), 33–35 (GRN00022246–48), 38–46 (GRN00022251–59).

[11] *Id.* at 22 (GRN00022235).

| REPERCUSSIONS ON REVENUE, INTRODUCTION OF INEFFICIENCIES, ADDITIONAL COSTS | |
|---|---|
| Lost gross profits (not initially disclosed (lost revenue was disclosed instead); disclosed on revised chart as $6,500,000; disclosed on spreadsheet as $6,666,299.50) | **Inadequately disclosed**<br><br>This number appears to be derived from the "Revenue Impact" tab of the spreadsheet.[12] That tab takes a column labeled "Actual Revenue" (not profits), and then derives from it a column labeled "Sales Delta" based on an assumption that Grouse River's revenue would have grown $1.5 million per year, and then totals the entries in the Sales Delta column and multiplies it by 35% (without explanation) to arrive at a figure labeled "Lost Gross Profits." This spreadsheet does not provide any explanation of the assumptions for Grouse River's continued growth, the 35% rate, or any other assumptions behind its conversion from an initial column of "Actual Revenues" (not profits) to a column of hypothetical "Lost Profits" (not revenues). This is inadequate. *Cf. Valley Surgical*, 2017 WL 10574240, at *3 (a plaintiff's disclosing "lump sums for each year of decline in its business and a lump sum for lost business opportunities" without "describ[ing] the assumptions required to calculate those lump sums" or "explain[ing] how it calculated its annual lost revenues, or how it calculated damages from lost business opportunities," is insufficient to comply with Rule 26); *Frontline Med. Assocs. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009) (disclosures of revenues without, e.g., computations of expenses, are not sufficient to constitute disclosures of lost profits).[13] |

---

[12] *Id.* at 21 (GRN00022234).

[13] Grouse River cannot now revert to claiming lost-revenue (as opposed to lost-profit) damages. While its initial disclosures listed a "Lost Revenue" figure, Def. Mot. Ex. B (Pl. Initial Disclosures) – ECF No. 316-2 at 7, its later disclosures removed its claim for "Lost Revenue" and replaced it with a claim for "Lost gross profits." Pl. Opp'n Ex. 2 (Pl. updated damages chart) – ECF No. 318-1 at 9; Pl. Opp'n Ex. 4 (Pl. spreadsheet) – ECF No. 318-1 at 18 (GRN00022231). Having removed "Lost Revenues," Grouse River cannot change its theory on the eve of trial and claim lost-revenue damages now. *Cf. Vivint, Inc. v. Northstar Alarm Servs., LLC*, No. 2:16-cv-00106-JNP-EJF, 2019 WL 1098986, at *9 (D. Utah Mar. 8, 2019) (holding that damages categories were not adequately disclosed for Rule 26 purposes where plaintiff removed the categories in its later supplemental disclosures).

| | |
|---|---|
| Write-off of costs associated with business downsizing (initially disclosed as $600,000; disclosed on revised chart as $600,000; disclosed on spreadsheet as $468,868) | **Inadequately disclosed**<br><br>This number appears to be derived from the "Equipment" tab of the spreadsheet.[14] This tab contains rows labeled "Leaseholds," "Furniture & Fixtures," and "Computer Equipment," with no explanation of what these numbers are or how they relate to any write-off of costs associated with business downsizing or the assumptions that went into this computation. This is inadequate. |
| Lease expenses related to project associated requirements for staffing and testing of secondary location (not separately listed in initial disclosures or revised chart; disclosed on spreadsheet as $202,064.72) | **Adequately disclosed**<br><br>Grouse River's computations were disclosed on the "Lease" tab of the spreadsheet.[15] (The court's holding that Grouse River's computations were adequate for Rule 26 purposes does not mean that that these lease expenses are proper damages that Grouse River can claim against NetSuite.) |
| Legal and Financial Expenses incurred from negative project impact (initially disclosed as $250,000; disclosed on revised chart as $300,000; disclosed on spreadsheet as $423,289.79) | **Inadequately disclosed**<br><br>This number appears to be derived from the "Finance Costs" and "Legal Fees" tabs of the spreadsheet,[16] but this tab simply lists shareholder loans and interest taken on the loans and apparent legal fees paid, with no explanation of how these numbers relate to the "negative project impact" or the assumptions that went into this computation. This is inadequate. |
| Lost co-op and vendor early-pay discounts (initially disclosed as $450,000; disclosed on revised chart as $450,000; disclosed on spreadsheet as $258,182.20) | **Inadequately disclosed**<br><br>This number appears to be derived from the "Ad Expense Impact" tab of the spreadsheet,[17] but this tab does not adequately explain its computations (and, among other things, appears to arbitrarily add $100,000 in additional damages for "Loss of vendor sponsored ads & access to promo opportunities," without explaining how this figure was calculated). This is inadequate. |

---

[14] Pl. Opp'n Ex. 4 (Pl. spreadsheet) – ECF No. 318-1 at 31 (GRN00022244).

[15] Id. at 36 (GRN00022249).

[16] Id. at 32 (GRN00022245), 37 (GRN00022250).

[17] Id. at 23 (GRN00022236).

| | |
|---|---|
| Inability to address shrinkage, inventory errors, and margin inefficiencies through lack of visibility into go-live deliverables (initially disclosed as $350,000; disclosed on revised chart as $300,000; disclosed on spreadsheet as $500,000) | **Inadequately disclosed**<br><br>It is not clear how or from where these numbers were computed. It is not readily apparent from where in the spreadsheet they come (if at all) or what assumptions went into this calculation. They appear to simply be lump-sum figures, which is insufficient. *Cf. Valley Surgical*, 2017 WL 10574240. Even assuming that these numbers are somehow derivable from the spreadsheet, it is not clear how this would be done. This is insufficient; it is Grouse River's obligation to clearly disclose its damages computation, not Oracle's (or the court's) job to try to piece it together for Grouse River. *Cf. Silver State*, 2016 WL 320110, at *4. |
| **FUTURE COSTS** ||
| NetSuite Future (disclosed initially, on revised chart, and on spreadsheet as $45,000) | **Inadequately disclosed**<br><br>It is not clear how or from where these numbers were computed. It is not readily apparent from where in the spreadsheet they come (if at all) or what assumptions went into this calculation. They appear to simply be lump-sum figures, which is insufficient. *Cf. Valley Surgical*, 2017 WL 10574240. Even assuming that these numbers are somehow derivable from the spreadsheet, it is not clear how this would be done. This is insufficient; it is Grouse River's obligation to clearly disclose its damages computation, not Oracle's (or the court's) job to try to piece it together for Grouse River. *Cf. Silver State*, 2016 WL 320110, at *4. |
| Partners & Consultants Future (disclosed initially, on revised chart, and on spreadsheet as $75,000) ||
| Wages Future (disclosed initially, on revised chart, and on spreadsheet as $325,000) ||
| Lost co-op and vendor early-pay discounts (initially disclosed as $550,000; disclosed on revised chart as $500,000; disclosed on spreadsheet as $500,000) ||
| Inability to address shrinkage, inventory errors, and margin inefficiencies through lack of visibility (initially disclosed as $350,000; disclosed on revised chart as $500,000; disclosed on spreadsheet as $500,000) ||

| FUTURE COSTS MIGRATION | |
|---|---|
| Software (disclosed initially, on revised chart, and on spreadsheet as $150,000) | **Inadequately disclosed** <br><br> It is not clear how or from where these numbers were computed. It is not readily apparent from where in the spreadsheet they come (if at all) or what assumptions went into this calculation. They appear to simply be lump-sum figures, which is insufficient. *Cf. Valley Surgical*, 2017 WL 10574240. Even assuming that these numbers are somehow derivable from the spreadsheet, it is not clear how this would be done. This is insufficient; it is Grouse River's obligation to clearly disclose its damages computation, not Oracle's (or the court's) job to try to piece it together for Grouse River. *Cf. Silver State*, 2016 WL 320110, at *4. |
| Implementation & Services (disclosed initially, on revised chart, and on spreadsheet as $250,000) | |
| Migration Project Wages (disclosed initially, on revised chart, and on spreadsheet as $500,000) | |
| Add 20% for Migration Inefficiencies and Opportunity Costs (disclosed initially, on revised chart, and on spreadsheet as $160,000) | |
| ADDITIONAL IMPACTS AND REBUILDING | |
| Morale & Turnover (initially disclosed as $500,000; disclosed on revised chart as $600,000; disclosed on spreadsheet as $600,000) | **Withdrawn** <br><br> Grouse River agrees to withdraw its claim for these damages.[18] The court strikes these damage claims and grants Oracle's motion to exclude Grouse River's presenting these alleged damages at trial. |
| Decline in market share, search presence, and customer satisfaction/retention plus marketing/loyalty efforts required to recoup (disclosed initially, on revised chart, and on spreadsheet as $2,000,000) | |
| Strained and lost relationships with vendors (initially disclosed as $2,500,000; disclosed on revised chart as $3,000,000; disclosed on spreadsheet as $3,000,000) | |
| Personal stress on relationships, family, finances of executives and key employees (disclosed initially, on revised chart, and on spreadsheet as $1,000,000) | |
| Loss of Brand Equity Value and strained relations with lenders/investors (disclosed initially, on revised chart, and on spreadsheet as $3,000,000) | |

---

[18] Pl. Sur-Reply – ECF No. 325 at 4.

Given that trial starts tomorrow (and was supposed to start today), Grouse River's failure to disclose adequate computations for those categories of damages listed as inadequate above is not harmless error, and it was not substantially justified. The court grants Oracle's motion in limine in part for the categories listed above as inadequately disclosed or withdrawn and excludes Grouse River's evidence and arguments regarding those damages categories. The court denies Oracle's motion for the categories of damages listed above as adequately disclosed.[19]

**IT IS SO ORDERED.**

Dated: July 8, 2019

_____
LAUREL BEELER
United States Magistrate Judge

---

[19] This does not mean that evidence regarding those damages categories necessarily is admissible. (Among other things, Grouse River must lay a foundation for its claimed damages.)