LATHAM & WATKINS LLP
   Sarah M. Ray (Bar No. 229670)
    *sarah.ray@lw.com*
   Alicia R. Jovais (Bar. No. 296172)
    *alicia.jovais@lw.com*
   Diana A. Aguilar (Bar No. 304427)
    *diana.aguilar@lw.com*
   505 Montgomery Street, Suite 2000
   San Francisco, California  94111-6538
   Telephone: +1.415.391.0600
   Facsimile: +1.415.395.8095

   Elyse M. Greenwald (Bar No. 268050)
    *elyse.greenwald@lw.com*
   200 Clarendon Street, 27th Floor
   Boston, MA 02116
   Telephone: +1.617.948.6000
   Facsimile: +1.617.948.6001

GATTEY LAW OFFICE
   Scott D. Gattey (Bar No. 180875)
    *scott@gatteylaw.com*
   1001 Laurel Street, Suite C
   San Carlos, California 94070
   Telephone: +1.650.596.7123
   Fax: +1.866.371.3491

*Attorneys for Defendant Oracle Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GROUSE RIVER OUTFITTERS LTD., | Case No. 3:16-cv-02954-LB |
| Plaintiff, | **ORACLE CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |
| v. | |
| ORACLE CORPORATION, | |
| Defendant. | |

1     Oracle Corporation ("Oracle" or "NetSuite") moves pursuant to Fed. R. Civ. P. 50(a) for

2     judgment as a matter of law because no reasonable jury could conclude that there is a legally

3     sufficient evidentiary basis for a finding of fraud, or to award Grouse River Outfitters ("Grouse

4     River") either compensatory or punitive damages.  Moreover, having now had the opportunity to

5     review the trial transcripts, Grouse River put forward no evidence to substantiate the two remaining

6     fraud allegations that are based on supposed oral representations that NetSuite made to Grouse

7     River regarding NetSuite's ability to meet certain of Grouse River's requirements for a software

8     solution.  Oracle thus respectfully requests that the Court grant its motion for judgment as matter

9     of law and enter judgment in its favor, or in the alternative, strike Grouse River's fraud allegations

10    that are not supported by any evidence in the trial record.

11    **ARGUMENT**

12    Under Federal Rule of Civil Procedure 50(a), if a party has been fully heard on an issue,

13    the Court may "resolve the issue against the party" if the Court "finds that a reasonable jury would

14    not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P.

15    50(a).[1]  While the Court views the evidence in the light most favorable to the non-moving party,

16    the court must enter judgment as a matter of law where there is not "substantial evidence" to

17    support the claim.  *See Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975);

18    *Elliott v. Versa CIC, L.P.*, 2019 WL 414499, at *5 (S.D. Cal. Feb. 1, 2019); *see also Telemasters,*

19    *Inc. v. Vintange Club Master Ass'n*, 371 F. App'x 771, 775 (9th Cir. Mar. 19, 2010) (affirming

20    district court's grant of Rule 50(a) motion on punitive damages because evidence did not support

21    a finding of oppression, fraud, or malice).  "Substantial evidence" is "relevant evidence as

22    reasonable minds might accept as adequate to support a conclusion."  *Amor Ministries v. Century*

23    *Sur. Co.,* 2016 WL 1388077, at *5 (S.D. Cal. Apr. 7, 2016) (citations and quotations omitted).

24    The standard for granting a Rule 50(a) motion "mirrors" the summary judgment standard, and as

25    with Rule 56, a "scintilla of evidence" will not defeat a motion for judgment as a matter of law.

26

27

28    [1]     A motion for judgment as a matter of law may be made at any time before the case is
      submitted to the jury.  Fed. R. Civ. P. 50(a)(2).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

*Elliott*, 2019 WL 414499, at *5.  Grouse River has not met even this low evidentiary threshold for its fraud claims or its request for damages.

### A.     There Is Not A Legally Sufficient Evidentiary Basis For A Finding Of Fraud

Grouse River has not put forward sufficient evidence to establish that the NetSuite sales representatives who allegedly made the false representations had any reason to know that they were false when made.  Grouse River also introduced no evidence that certain of the allegedly false representations were ever even made.

### 1.     No Reasonable Jury Could Conclude That NetSuite Knowingly Made False Representations To Grouse River

To prevail on its fraud claims, Grouse River must prove that the NetSuite individuals who made the allegedly false representations knew that the statements were false when made or that those individuals made the representations without regard for their truth.  *See* Dkt. 339-1 (Grouse River must prove that NetSuite "knew that the representation was false when it made it, or that it made the representation recklessly and without regard for its truth").  Grouse River has failed to put forward sufficient evidence that the NetSuite individuals who made the allegedly false representations knew or should have known they were false.

There is no evidence in the record that any of the NetSuite individuals involved in the sales process had any knowledge that the statements they were making were false when made (and, in fact, they were not false), nor that they were made with reckless disregard for the truth.  Grouse River's sole evidence of fraudulent intent is based on circumstantial evidence of communications among NetSuite employees—***who had no involvement in the sales process***—written months or years after the parties' contracts were entered.  This circumstantial evidence is insufficient as a matter of law to support a finding of fraud.  *See Precise Aero Mfg. v. MAG Aero. Indus., LLC*, 2018 U.S. Dist. LEXIS 119100, at *19-21 (C.D. Cal. Feb. 16, 2018) (granting summary judgment on fraud claim where only evidence of fraud was communications made long after the alleged misrepresentations).

Nor can Grouse River rely on evidence of NetSuite's supposed non-performance of its contractual obligations to support a finding of fraudulent intent.  *See id.* (granting summary

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

1    judgment on fraud claim where there was not "sufficient evidence" of fraudulent intent); *Mazed v.*

2    *JP Morgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 48589, at *19 (C.D. Cal. Apr. 7, 2014)

3    (granting summary judgment on fraud claim where plaintiff had only put forward evidence of

4    "non-performance"); *Tenzer v. Superscope, Inc.,* 39 Cal. 3d 18, 31 (1985) ("[I]f plaintiff adduces

5    no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will

6    never reach a jury.").

7         Based on the evidence that Grouse River has put forward, no reasonable jury could

8    conclude that the NetSuite sales representatives that made the allegedly false representations knew

9    the representations were false or made those representations with reckless disregard for their truth.

10   **2.    There Is No Evidence In The Record That Two Of The Allegedly False Representations Were Ever Even Made**

11

12        There are two remaining allegedly false representations that are based on supposed oral

13   representations that NetSuite allegedly made to Grouse River[2]:

| At a January 6, 2014 meeting between NetSuite and Grouse River | 13.  NetSuite's representatives represented that NetSuite could and would meet Grouse River's POS functionality requirements. |
|---|---|
| At a (1) February 7, 2014 meeting, (2) a March 13, 2014 meeting, and (3) a March 17, 2014 meeting between NetSuite and Grouse River | 16.  NetSuite's sales team repeatedly expressed full confidence that NetSuite could and would provide a system that would meet Grouse River's detailed stated business requirements. |

19        At the pre-trial conference on June 20, 2019, when the parties and the Court were

20   discussing the remaining allegedly false representations, the Court stated that if there was no

21   testimony that the allegedly false oral representations were made, the allegations would need to be

22   removed from the chart of actionable allegations before the chart could go to the jury.[3]  Grouse

---

2        *See* Dkt. 291, which is currently the operative chart of actionable allegations.  In the

25   updated chart that Oracle submitted on July 13, these are representations Nos. 5 and 7.  *See* Dkt. 342-1.

26   3        Ex.  A, June 20, 2019 Hearing Tr., 74:4-17 ("It is possible that . . . [an] oral representation

27   can be testified about at trial as long as they're disclosed in that chart; right? . . .  And it's possible that they're oral.  And it's possible that they could be elicited by whoever you call or whoever you cross-examine.  But that's an issue with that chart going to the jury at the get-go.  If every single

28   thing in that chart were tethered to a document that was admissible, then that's fine. . . .  If some

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

1   River has now put on its case-in-chief and there is no testimony in the record that establishes that

2   NetSuite ever made the above representations.

3          Mr. Fallis did not testify that on or about January 6, 2014, NetSuite represented that

4   "NetSuite could and would meet Grouse River's POS functionality requirements."  Instead,   Mr.

5   Fallis testified that on January 6, 2014, he had a telephone call with Branden Jenkins and Cole

6   Waldron where they discussed "some e-commerce requirements" and "point-of-sale

7   requirements." Ex. B, July 10, 2019 Tr. 240:2-15.  Mr. Fallis, however, provided *no testimony*

8   regarding the substance of that telephone call.  *He never testified that anyone from NetSuite, on*

9   *or about January 6, 2014, "represented that NetSuite could and would meet Grouse River's POS*

10  *functionality requirements,"* and did not otherwise testify that any specific statement—false or

11  otherwise—was made regarding the point of sale on or about January 6, 2014.

12         Nor did Mr. Fallis testify that on or about February 7, 2014, March 13, 2014, or March 17,

13  2014, anyone from NetSuite's sales team "expressed full confidence that NetSuite could and would

14  provide a system that would meet Grouse River's detailed stated business requirements."  Instead,

15  Mr. Fallis testified that his "detailed stated business requirements" were reflected in a spreadsheet

16  that he provided to NetSuite, and that NetSuite sent back to him *on October 24, 2013*, indicating

17  which features were "native" and which features required customization or a partner solution.  *See*

18  Ex. B, July 9, 2019 Tr. 206:10-207:5; *see also* TX 200.  The Court has already held, however, that

19  Grouse River "cannot" base its fraud claim upon Mr. Waldron's October 24, 2013 email or the

20  attached spreadsheet (TX 200).  *See* Dkt. 314 ("Grouse River also claims that its own list of

21  objectives (and NetSuite's comments thereto) constitute representations by NetSuite that are

22  predicates for Grouse River's fraud claims, citing paragraph 42 of its complaint and TX 200.  It

23  cannot.").  Mr. Fallis provided no other testimony to support his allegation that on or about certain

24  dates in February and March 2014 that NetSuite's sales representatives expressed "full

25  confidence" that NetSuite could and would "meet Grouse River's detailed stated business

26  requirements."

27  ────────────────

28  are tethered to testimony, you know, then that allegation survives as long as there's evidence that
    it was -- the representation actually was made.  But if it wasn't made, that chart, in the end, for that
    thing doesn't go to the jury."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

1      Mr. Fallis should not be allowed to attempt to cure these evidentiary deficiencies in Grouse

2 River's case-in-chief by offering rebuttal testimony related to these allegations. *See* Dkt. 344 at

3 3-4.   It is Grouse River's burden to put forward testimony that supports its allegations and Mr.

4 Fallis should not be allowed to backdoor in evidence critical to his claims that he failed to provide

5 in his direct testimony. *See id.*

6      Given the lack of evidentiary support for these two allegations, Oracle requests that the

7 Court strike them from the chart of actionable allegations that will be going to the jury.   This is

8 particularly critical because the Court has elected to use a verdict form that does not require that

9 the jury identify which representations form the basis of any finding of fraud.  If these allegations

10 remain, and the jury returns a finding of fraud, there will be no way to know whether the jury's

11 verdict rests on allegations that have sufficient evidentiary support.

12     **B.**     **No Reasonable Jury Could Conclude That There Is A Sufficient Evidentiary Basis To Award Damages**

13

14      Grouse River has also not offered a legally sufficient evidentiary basis for a reasonable

jury to award either compensatory or punitive damages.

15     **1.**     **There Is Not A Legally Sufficient Evidentiary Basis To Award Compensatory Damages**

16

17      It is Grouse River's burden to demonstrate, by a preponderance of the evidence, the amount

18 of its damages. *See* Dkt. 339-1 at 8.  The jury must determine the amount of damages based on

19 ***evidence*** and not on ***speculation, guesswork,*** or ***conjecture*** but that is all Grouse River has

20 provided. *Id.*; *see also In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006) (reversing

21 damages award that was based on "speculation or guesswork").

22      The ***only*** evidence of Grouse River's damages is the following 26 lines of testimony from

23 Mr. Fallis:

        Q.     All right.  How much did you pay NetSuite?

24         A.     Roughly $ 405,000.

        Q.     Are you claiming this as damages?

25         A.     Yes.

        Q.     Did you pay anyone else?

26         A.     We did.

        Q.     Who did you pay?

27         A.     We hired the partners and consultants that we have

28             mentioned here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
5
CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

| | |
|---|---|
| Q. | And how much was that? |
| A. | Roughly $160,000. |
| Q. | Okay.  Are you claiming additional damages? |
| A. | We are. |
| Q. | Are you claiming damages for lease expenses related to the project? |
| A. | We are.  We had leased an additional space that was supposed to support as a second location.  As I indicated earlier, the software was going to support a distribution center and delivery to stores. |
| Q. | And how much is that? |
| A. | Roughly $200,000. |
| Q. | Okay.  Are you claiming this as damages? |
| A. | Yes, we are. |
| Q. | What is the total amount of compensatory damages you're claiming at this time in this lawsuit? |
| A. | It's about $766,000. |

Ex. B, July 10, 2019 Tr. 335:2-336:2.

Grouse River's *entire* damages case is Mr. Fallis testifying that he spent "*roughly*" $405,000 on NetSuite, "*roughly*" $160,000 on some unidentified "partners and consultants," and "*roughly*" $200,000 on a lease for additional space "that was supposed to support a second location."  There is no other evidence of damages in the record.  There is no evidence of any payments to NetSuite or any "partners" or "consultants" that supports the damages figures that Mr. Fallis testified to.  Nor does Grouse River ever even identify the specific partners or consultants that it supposedly paid, or how much it paid to each.  In the spreadsheet that Grouse River disclosed that purports to provide the computation for its request for $158,548.68 in damages for amounts paid to "partners" and "consultants", Grouse River identified 16 different "partners" and "consultants."  *See* Dkt. 326.  During his testimony, Mr. Fallis only "mentioned" the work of three "consultants"—Chris Szczepko, Inoday, and Explore Consulting—but never testified about the amount he paid to any consultant or explained why Grouse River's reliance on NetSuite's supposed misrepresentations caused him to incur those expenses.

Mr. Fallis's testimony regarding the damages he seeks for leasing additional office space to "support . . . a second location" suffers from the same defect—a complete lack of evidence other than Mr. Fallis's guesswork—but also a more fundamental problem.  Mr. Fallis offered no testimony, and there is no other evidence to support, that Grouse River leased the additional office

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

space because of its decision to enter into its contracts with NetSuite.  Grouse River is not entitled to recover those damages because there is no evidence that Grouse River incurred those lease expenses for a supposed "second location" or "distribution center" as a result of its decision to enter into any contract with NetSuite.

### 2. No Reasonable Juror Could Conclude That There Is Clear And Convincing Evidence That NetSuite Intended To Harm Grouse River

Grouse River also has not made a legally sufficient evidentiary showing to send its request for punitive damages to the jury.  To prevail on its claim of punitive damages, Grouse River must demonstrate by "***clear and convincing evidence***" that NetSuite engaged in ***fraud "intending to harm*"** Grouse River.  CACI 3945.[4]  The clear and convincing standard requires that the evidence "be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind."  *Larkin v. Home Depot Inc.*, 2015 WL 1049716, at *1-3 (N.D. Cal. Mar. 9, 2015) (granting summary judgment on punitive damages); *Amor Ministries v. Century Sur. Co.,* 2016 WL 1388077, at *10-12 (S.D. Cal. Apr. 7, 2016) (granting Rule 50(b) motion and reversing award of punitive damages).

Grouse River has put forward no evidence from which a reasonable jury could conclude that NetSuite engaged in fraud with the ***intent to harm*** Grouse River, much less clear and convincing evidence of such intent.  Mr. Fallis never testified that NetSuite intended to harm Grouse River.[5]  Instead, even Mr. Fallis recognized that NetSuite wanted Grouse River to succeed on its software so that Grouse River could be a reference customer and help NetSuite break into the Canadian retail market.[6]  Based on this testimony, no reasonable jury could conclude that

---

[4]     Should the Court allow Grouse River to argue for punitive damages on the basis of malice or oppression, *see* Dkt. 344, the result is the same.

[5]     Ex. B, July 10, 2019 Tr. 337:16-23 (Q.  Are you asking the jury to award punitive damages for what's happened here?  A.  Yes.  We would ask that there be punitive damages for what's happened here.  Q.  Why?  A.  Because NetSuite lied to us in terms of what they represented they could do.").

[6]     Ex. B, July 10, 2019 Tr. 417:12-22 (Q.  Now, NetSuite had disclosed to you that it was interested in obtaining more of the Canadian retail market; correct?  A.  That's correct.  Q.  In fact, you wrote to Mr. Waldron, after the contracts were signed, that you were going to help him, quote, sell like a madman; right?  A.  I thought that we could use the account, once it was successfully up and running, and my software experience to help NetSuite promote their product if they wanted to sure.  Q.  And NetSuite thought that too; right?  A.  I believe so.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW

NetSuite committed fraud with the intent to harm Grouse River and judgment as a matter of law on the issue of punitive damages is warranted.

Dated: July 14, 2019                                   Respectfully submitted,

                                                      */s/ Sarah M. Ray*

                                                      Sarah M. Ray (Bar No. 229670)
                                                      LATHAM & WATKINS LLP
                                                      505 Montgomery Street, Suite 2000
                                                      San Francisco, CA 94111-6538
                                                      Telephone: +1.415.391.0600
                                                      Fax: +1.415.395.8095
                                                      Email: sarah.ray@lw.com

                                                      *Attorney for Defendant Oracle Corporation*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S MOTION FOR
JUDGMENT AS A MATTER OF LAW