# EXHIBIT B

```
                              Volume 1

                              Pages 1 - 215

             UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

GROUSE RIVER OUTFITTERS, LTD., )
                               )
         Plaintiff,            )
                               )
  VS.                          )      NO. C 16-02954 LB
                               )
ORACLE CORPORATION,            )
                               )
         Defendant.            )
                               )
```

                                    San Francisco, California
                                    Tuesday, July 9, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                SUSMAN GODFREY LLP
                1000 Louisiana Street - Suite 5100
                Houston, Texas  77002
      **BY:  STEPHEN D. SUSMAN, ATTORNEY AT LAW**

                SUSMAN GODFREY LLP
                1900 Avenue of the Stars - Suite 1400
                Los Angeles, California  90067
      **BY:  MENG XI, ATTORNEY AT LAW**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Ana M. Dub, CSR No. 7445, RDR, CRR
              Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporters

1       **MR. KIEVE:**  I've not asked the question yet.

2       **THE COURT:**  Okay.  He's not asked the question yet.

3   Okay.

4       **MR. KIEVE:**  Thank you.

5       **THE COURT:**  So you've laid the predicate for the

6   question because he already -- just for the record, he already

7   identified these as the alleged representations on which he

8   relied.  So what's your question?

9   **BY MR. KIEVE:**

10  **Q.**   Were the must haves and important items on this chart that

11  NetSuite responded to your detailed stated business

12  requirements?

13  **A.**   Yes.

14      **MS. RAY:**  Can I -- I'm going to make my objection, if

15  I may, for the record.

16      **THE COURT:**  Overruled.

17      **MR. KIEVE:**  Thank you.

18  **Q.**   To confirm again, I'll repeat the question, were the must

19  haves and important items on this chart TX200 that NetSuite

20  responded to with its part of the chart part of Grouse River's

21  detailed stated business requirements?

22  **A.**   Yes, absolutely.

23  **Q.**   Were there more?

24  **A.**   Pardon me?

25  **Q.**   Were there more?

1  **A.**  Nothing substantial outside of that document, no.
2  **Q.**  Okay.  Did Grouse River rely on these representations by
3  NetSuite about its ability to provide the must have functions
4  that Grouse River specified?
5  **A.**  Yes, we certainly did.
6  **Q.**  Would Grouse River have entered into contracts with
7  NetSuite if NetSuite had not told Grouse River that it could
8  and would satisfy these specific requirements in its system?
9  **A.**  Absolutely not.
10 **Q.**  Why not?
11 **A.**  This was the essence of why we would change software
12 platforms in the first place.  There would be no reason for us
13 to enter those contracts if these couldn't be delivered.
14 **Q.**  Do you believe it was reasonable for you and Grouse River
15 to rely on NetSuite's representations?
16 **A.**  Yes, I do.
17 **Q.**  Why?
18 **A.**  NetSuite are the providers of that system.  They should
19 know what it does.  We knew what our business required, and we
20 laid it out for them and they responded.
21 **Q.**  With your software background, weren't you a sophisticated
22 person?
23 **A.**  I would think reasonably so, yes.
24          **MS. RAY:**  Objection.
25          **THE COURT:**  Well, I -- basis for the objection?

1     (Proceedings adjourned at 5:03 p.m.)

2                   ---oOo---

3

4

5           **CERTIFICATE OF REPORTERS**

6     I certify that the foregoing is a correct transcript

7  from the record of proceedings in the above-entitled matter.

8

9  DATE:    Tuesday, July 9, 2019

10

11

12

13  _____

14       Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                 U.S. Court Reporter
15

16

17  _____

18        Ana M. Dub, CSR No. 7445, RDR, CRR
                 U.S. Court Reporter

**Volume 2**

**Pages 216 - 441**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

```
GROUSE RIVER OUTFITTERS, LTD., )
                               )
          Plaintiff,           )
                               )
   VS.                         )     NO. C 16-02954 LB
                               )
ORACLE CORPORATION,            )
                               )
          Defendant.           )
                               )
```

San Francisco, California
Wednesday, July 10, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        SUSMAN GODFREY LLP
        1000 Louisiana Street - Suite 5100
        Houston, Texas  77002
  **BY:  STEPHEN D. SUSMAN, ATTORNEY AT LAW**

        SUSMAN GODFREY LLP
        1900 Avenue of the Stars - Suite 1400
        Los Angeles, California  90067
  **BY:  MENG XI, ATTORNEY AT LAW**


(APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Ana M. Dub, CSR No. 7445, RDR, CRR
              Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporters

1   A.   No.  It occurred twice a year.
2   Q.   Do you recall a follow-up telephonic meeting around
3   January 6, 2014, with NetSuite?
4   A.   Yes.
5   Q.   Can you recall who was on that call?
6   A.   It was myself, Cole Waldron, I believe.  I'm not sure who
7   else was there.
8   Q.   Okay.  What did you discuss, if you can recall?
9   A.   I recall specifically diving into some e-commerce
10  requirements post that discussion, and discussing some more
11  aspects of the responsive sales design of the e-commerce
12  website.
13  Q.   Was Branden Jenkins on the phone?
14  A.   Yes.  He was there to discuss the point-of-sale
15  requirements, I believe.
16  Q.   Who is or was -- who is, was at the time -- what was his
17  position with NetSuite?
18  A.   Branden Jenkins was somebody who was in charge, I believe,
19  of the overall point-of-sale system at NetSuite.
20  Q.   Okay.  Did Mr. Jenkins follow up that meeting with an
21  e-mail?
22  A.   He did.  He sent over a document outlining the current
23  point of sale, as well as some follow-up communication from the
24  meeting.
25  Q.   Could we please take a look at Exhibit 356.

```
 1   BY MR. KIEVE:
 2   Q.   All right.  How much did you pay NetSuite?
 3   A.   Roughly $405,000.
 4   Q.   Are you claiming this as damages?
 5   A.   Yes.
 6   Q.   Did you pay anyone else?
 7   A.   We did.
 8   Q.   Who did you pay?
 9   A.   We hired the partners and consultants that we have
10   mentioned here.
11   Q.   And how much was that?
12   A.   Roughly $160,000.
13   Q.   Okay.  Are you claiming additional damages?
14   A.   We are.
15   Q.   Are you claiming damages for lease expenses related to the
16   project?
17   A.   We are.  We had leased an additional space that was
18   supposed to support as a second location.  As I indicated
19   earlier, the software was going to support a distribution
20   center and delivery to stores.
21   Q.   And how much is that?
22   A.   Roughly $200,000.
23   Q.   Okay.  Are you claiming this as damages?
24   A.   Yes, we are.
25   Q.   What is the total amount of compensatory damages you're
```

1  claiming at this time in this lawsuit?
2  A.   It's about $766,000.
3  Q.   Has Grouse River been damaged in other ways?
4  A.   We have.
5  Q.   How?
6         MS. RAY:  Objection, Your Honor.
7         THE COURT:  So objection sustained as to the word
8  "damages."  And also I query whether you've already asked all
9  those questions.
10        The damages are as they've been defined as the
11 compensatory damages that Mr. Fallis just --
12        MR. KIEVE:  There's a difference between having
13 suffered damages and --
14        THE COURT:  Harm.  Use the word "harm."
15        MR. KIEVE:  Good idea.
16        THE COURT:  Yeah.
17 BY MR. KIEVE:
18 Q.   Has Grouse River been harmed in other ways?
19 A.   Yes, absolutely.
20 Q.   How?
21 A.   We put our entire business through hell with this system
22 and -- pardon my language --
23        MS. RAY:  Objection, Your Honor.
24        THE WITNESS:  -- it cost us an extreme amount of money
25 to try and overcome that.

```
 1            MR. KIEVE:  Thank you.
 2            THE COURT:  Objection overruled.
 3   BY MR. KIEVE:
 4   Q.   What was your sustained growth as of the time that you
 5   went live with NetSuite?
 6   A.   We had never grown less than 23 percent per year.
 7   Q.   And what was your revenue in that year?
 8   A.   $7.2 million.
 9   Q.   Why aren't you claiming damages for this?
10            MS. RAY:  Objection, Your Honor.
11            THE COURT:  Yeah.  As a relevance objection and also
12   cabined by the Court's previous rulings?
13            MR. KIEVE:  Got it.
14            THE COURT:  Okay.  Objection sustained.
15   BY MR. KIEVE:
16   Q.   Are you asking the jury to award you anything else?
17   A.   Yes.  We would ask that there be punitive damages for
18   what's happened here.
19   Q.   Why?
20   A.   Because NetSuite lied to us in terms of what they
21   represented they could do.  It had an extreme impact on our
22   company, our employees, our finances, and I believe that's
23   just.
24   Q.   Is there any component of the fact that you thought you
25   were a guinea pig?
```

| | | |
|---|---|---|
| 1 | Q. | And you read it before you signed it? |
| 2 | A. | Yes, I did. |
| 3 | Q. | And you understood it before you signed it? |
| 4 | A. | Yes, I thought so. |
| 5 | Q. | Let's take a look at page 3 of Trial Exhibit 4.  Do you |
| 6 | | see the first number on this page is a subtotal of 405,900? |
| 7 | A. | Yes. |
| 8 | Q. | And then a discount of 361,251? |
| 9 | A. | That's correct. |
| 10 | Q. | That's almost a 90 percent discount; right? |
| 11 | A. | That's about right. |
| 12 | Q. | Now, NetSuite had disclosed to you that it was interested |
| 13 | | in obtaining more of the Canadian retail market; correct? |
| 14 | A. | That's correct. |
| 15 | Q. | In fact, you wrote to Mr. Waldron, after the contracts |
| 16 | | were signed, that you were going to help him, quote, sell like |
| 17 | | a madman; right? |
| 18 | A. | I thought that we could use the account, once it was |
| 19 | | successfully up and running, and my software experience to help |
| 20 | | NetSuite promote their product if they wanted to, sure. |
| 21 | Q. | And NetSuite thought that too; right? |
| 22 | A. | I believe so. |
| 23 | Q. | Let's turn to Trial Exhibit 7, the business requirements |
| 24 | | document signed by Grouse River and NetSuite. |
| 25 | | And you reviewed this document before you signed it? |

1  okay, and we'll have a good day tomorrow.  I'll see you then.
2          **MR. KIEVE:**  Thank you again, Your Honor.
3          **THE COURT:**  All right.
4              (Proceedings adjourned at 3:06 p.m.)
5                      ---oOo---
6
7                  **CERTIFICATE OF REPORTERS**
8       I certify that the foregoing is a correct transcript
9  from the record of proceedings in the above-entitled matter.
10
11 DATE:   Wednesday, July 10, 2019
12
13
14
15 _____
16      Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                  U.S. Court Reporter
17
18
19 _____
20        Ana M. Dub, CSR No. 7445, RDR, CRR
                  U.S. Court Reporter
21