LATHAM & WATKINS LLP
   Sarah M. Ray (Bar No. 229670)
     *sarah.ray@lw.com*
   Alicia R. Jovais (Bar. No. 296172)
     *alicia.jovais@lw.com*
   Diana A. Aguilar (Bar No. 304427)
     *diana.aguilar@lw.com*
   505 Montgomery Street, Suite 2000
   San Francisco, California  94111-6538
   Telephone: +1.415.391.0600
   Facsimile: +1.415.395.8095

   Elyse M. Greenwald (Bar No. 268050)
     *elyse.greenwald@lw.com*
   200 Clarendon Street, 27th Floor
   Boston, MA 02116
   Telephone: +1.617.948.6000
   Facsimile: +1.617.948.6001

GATTEY LAW OFFICE
   Scott D. Gattey (Bar No. 180875)
     *scott@gatteylaw.com*
   1001 Laurel Street, Suite C
   San Carlos, California 94070
   Telephone: +1.650.596.7123
   Fax: +1.866.371.3491

*Attorneys for Defendant Oracle Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GROUSE RIVER OUTFITTERS LTD., <br><br> Plaintiff, <br><br> v. <br><br> ORACLE CORPORATION, <br><br> Defendant. | Case No. 3:16-cv-02954-LB <br><br> **ORACLE CORPORATION'S RESPONSE TO GROUSE RIVER'S "REPLY" (DKT. 347)** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S RESPONSE TO GROUSE
RIVER'S "REPLY" (DKT. 347)

1    Grouse River's latest filing, Dkt. 347, only confirms that the Court should preclude Mr.

2    Fallis from offering any rebuttal testimony.

3    **First**, Grouse River had the opportunity to depose Oracle's trial witnesses but **elected** not

4    to do so for strategic reasons.[1]  Oracle disclosed to Grouse River on May 10, 2019—two months

5    before trial—during the parties' pre-trial meet and confer that it would be bringing Ryan Murphy

6    and Jeff Swan to trial and said it was looking into bringing Branden Jenkins.   Oracle then

7    confirmed on May 30, 2109—more than a month before trial—that it would be bringing Mr.

8    Murphy, Mr. Swan, and Mr. Jenkins to trial when it filed its witness list.  Dkt. 241-3.  Oracle's

9    witness list disclosed that Mr. Jenkins would be testifying about the "pre-contract negotiations

10   with Grouse River," and the "representations made (or not made) to Grouse River."  *Id.* at 5.  If

11   Grouse River wished to depose Oracle's witnesses, it could have done so, but it chose not to.

12   Grouse River's counsel's misguided trial strategy does not make the testimony of Oracle's

13   witnesses "unforeseen" or open the door to rebuttal testimony.

14   **Second**, it was Grouse River's obligation to put on evidence, **in its case-in-chief**, to support

15   its allegations, including that in a "meeting" on or about January 6, 2014, NetSuite "represented

16   that NetSuite could and would meet Grouse River's POS functionality requirements."  Dkt. 291.

17   As Oracle explained in its motion for judgment as a matter of law that it filed earlier today, while

18   Mr. Fallis testified that he had a call with Mr. Jenkins and Mr. Waldron on January 6, 2014, he

19   **never testified** regarding the substance of the discussion that took place and **did not testify** that

20   anyone from NetSuite represented on that call that it "could and would" meet Grouse River's

21   requirements regarding the point-of-sale.  Dkt. 346 at 5.  Mr. Fallis only offered the following

22   testimony:

23        Q.      Do you recall a follow-up telephonic meeting around January 6, 2014, with
                  NetSuite?
24        A.      Yes.
25        Q.      Can you recall who was on that call?

26   ───────────────

27   [1]      Mr. Kieve has informed the Court previously that his practice is not to take depositions
         because "[i]t's much more fun to get them at trial when you've not given them any advance
         warning . . . ."  Ex. A, January 17, 2019, 12:17-20; *see also id.* at 12:23-13:1  ("I don't need to
28   take this guy's deposition because I'm going to lacerate him, I'm going to lacerate him, I'm going
         to destroy him at trial, and I said, why should I take the time to do that . . . .").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S RESPONSE TO GROUSE
RIVER'S "REPLY" (DKT. 347)

| | | |
|---|---|---|
| 1 | A. | It was myself, Cole Waldron, I believe. I'm not sure who else was there. |
| 2 | Q. | Okay. What did you discuss, if you can recall? |
| | A. | I recall specifically diving into some e-commerce requirements post that |
| 3 | | discussion, and discussing some more aspects of the responsive sales design of |
| | | the e-commerce website. |
| 4 | Q. | Was Branden Jenkins on the phone? |
| | A. | Yes. He was there to discuss the point-of-sale requirements, I believe. |
| 5 | Q. | Who is or was – who is, was at the time – what was his position with NetSuite? |
| 6 | A. | Branden Jenkins was somebody who was in charge, I believe, of the overall point-of-sale system at NetSuite. |
| 7 | Q. | Okay. Did Mr. Jenkins follow up that meeting with an e-mail? |
| | A. | He did. He sent over a document outlining the current point of sale, as well as |
| 8 | | some follow-up communication from the meeting. |

9   Ex. B, July 10, 2019 Tr. 240:2-24. That is the ***entirety*** of Mr. Fallis's testimony regarding any

10   "meeting" with NetSuite regarding the point-of-sale on or about January 6, 2014. It is thus false

11   that Mr. Fallis "said what happened [on] that call." Dkt. 347 at 2. Grouse River should not be

12   allowed to cure the deficiencies in its case-in-chief through Mr. Fallis's rebuttal testimony.

13       ***Third,*** nothing in Mr. Jenkins testimony was "unforeseen" or "surprising." Not only did

14   Oracle's witness list disclose the substance of Mr. Jenkins' expected testimony, but in its opening

15   statement, Oracle told Grouse River that Mr. Jenkins would be testifying about his conversation

16   with Mr. Fallis "about the point of sale capabilities," and that Mr. Jenkins would explain "exactly

17   what [he and Mr. Fallis] discussed and what [Mr. Jenkins] told [Mr. Fallis]," including that "[Mr.

18   Jenkins] discussed with [Mr. Fallis] everything that the point-of-sale could do and also the

19   limitations of the point-of-sale." Ex. B, July 9, 2019 Tr. 145:8-16. Grouse River thus was on

20   notice that Mr. Jenkins would be testifying regarding the January 2014 call with Mr. Fallis, and

21   Grouse River should have addressed the substance of that call during Mr. Fallis's direct testimony.

22   Grouse River and Mr. Fallis should not be allowed to lay-in-wait, hear Mr. Jenkins' testimony,

23   ***and only then***, have Mr. Fallis testify regarding the substance of the parties' discussions,

24   particularly when that conversation is the basis of one of Grouse River's own allegations. Again,

25   that is not the proper purpose of rebuttal testimony.[2]

26   _____

27   [2]    Nor is there any reason that Mr. Fallis should be allowed to testify to address the testimony of Mr. Murphy and Mr. Swan regarding the term "native." Dkt. 347 at 2-3. Mr. Fallis ***already***

28   ***testified*** as to his understanding of the term. Ex. B, July 9, 2019 Tr. 193:14-19 (Q. "With your software experience, what did you understand [native] to mean? A. When I hear the word "native"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S RESPONSE TO GROUSE
RIVER'S "REPLY" (DKT. 347)

***Lastly***, given that Grouse River has put forward insufficient evidence of its damages, *see* Dkt. 346 at 6-8, Oracle has decided that there is no need to waste the Court or the jury's time with testimony from its damages expert, David Perry, and no longer intends to call him as a witness on Monday.   There is thus nothing for Mr. Fallis to rebut.   Given that Oracle has not offered any testimony challenging Mr. Fallis's testimony regarding damages, to the extent the Court allows any rebuttal, it should make clear that Mr. Fallis may not testify regarding damages and attempt to belatedly cure the evidentiary deficiencies in its case-in-chief.

\* \* \*

Grouse River's latest filing only confirms that Mr. Fallis does not intend to offer any actual rebuttal testimony and instead only seeks to try to cure the gaping holes in Grouse River's case-in-chief.   That is not a permissible use of rebuttal testimony, and it would be unfairly prejudicial to Oracle for the Court to allow Grouse River to avoid its obligation to put on its affirmative case during the direct testimony of Mr. Fallis.   Oracle thus respectfully requests that the Court preclude Mr. Fallis from offering any rebuttal testimony.   The parties should deliver their closing arguments in the morning and the case can then be delivered to the jury for deliberations shortly thereafter.

Dated: July 14, 2019                                   Respectfully submitted,

*/s/ Sarah M. Ray*

Sarah M. Ray
LATHAM & WATKINS LLP
*Attorney for Defendant Oracle Corporation*

---

I take it to understand that the feature is part and parcel of the existing software system.  I took this to mean that all of these features were there and that they were integrated into one platform.").  Mr. Fallis has had his opportunity to testify on this issue and, again, there is nothing for him to rebut.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 3:16-CV-02954-LB
ORACLE CORP.'S RESPONSE TO GROUSE
RIVER'S "REPLY" (DKT. 347)