UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| GROUSE RIVER OUTFITTERS LTD, | Case No. 16-cv-02954-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS** |
| ORACLE CORPORATION, | Re: ECF Nos. 387, 400 |
| Defendant. | |

**INTRODUCTION**

The plaintiff Grouse River Outfitters was a Canadian outdoor-equipment retailer, and it sued NetSuite, Inc., a provider of commercial software systems, for breach of contract and fraud after the software's functionalities (capturing sales, tracking inventory, and maintaining customer information, for example) allegedly did not perform as NetSuite said they would.[1] The contract had a fees provision providing for fees and costs to the prevailing party.[2] Ultimately, Grouse River elected to proceed only on its fraud theory.[3] The parties agreed that the fees provision meant that

---

[1] Second Amended Compl – ECF No. 43. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Subscription Services Agreement, Ex. A to Ray Decl. – ECF No. 373 at 10.

[3] Order – ECF No. 235 at 1–2.

ORDER – No. 16-cv-02954-LB

the prevailing party at trial would be entitled to recover its fees and costs.[4] Oracle (NetSuite's successor) prevailed at trial.[5] It moved for total fees of $5,814,057.73 and non-taxable costs of $77,996.13.[6] Pursuant to the parties' contract, the court awards the fees and costs.

**STATEMENT**

**1. The Subscription Services Agreement**

The full fees provision of the contract is as follows.

> This Agreement shall be governed in accordance with the laws of the State of California and any controlling U.S. federal law and excluding the Uniform Computer Information Transactions Act (UCITA). Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement (or the Service) shall be subject to the exclusive jurisdiction of the state and federal courts located in California and must be brought in state or federal courts located in San Mateo or San Francisco County, California, as permitted by law. In the event of any litigation of any controversy or dispute arising out of or in connection with this Agreement, its interpretations, its performance, or the like, the prevailing party shall be awarded reasonable attorneys' fees and/or costs.[7]

The parties do not dispute that Oracle is the prevailing party and that this provision provides for the award of fees and costs to the prevailing party in this lawsuit.[8]

**2. Facts Relevant to Fees Motion**

As the case docket shows, the parties litigated the case extensively. There were motions to dismiss, discovery disputes (and the accompanying extensive discovery), a mostly successful motion for judgment on the pleadings, a challenge to NetSuite's expert, a shifting landscape before trial that culminated in Grouse River's dropping its contract claim, its dropping of its negligent

---

[4] *Id.* at 1 (citing Pl. Mot. For Leave to Amend – ECF No. 221 at 3).

[5] Verdict – ECF No. 355.

[6] Mot. – ECF No. 387 at 24; Ray Decl. – ECF No. 393-1 at 4 (¶ 9).

[7] Ex. A to Ray Decl. − ECF No. 373 at 10.

[8] Order – ECF No. 235 at 1; Mot. – ECF No. 387 at 8; Opp. – ECF No. 390.

ORDER – No. 16-cv-02954-LB  2

misrepresentation claim, its proceeding only on its fraud claims, many *in limine* motions, a shifting damages landscape, a jury trial, and, ultimately, a complete defense verdict.[9]

Scott Gattey and his associates handled the litigation initially.[10] The Gattey timekeepers billed the following hours at the following rates.

| Timekeeper | Position | Rate | Hours Billed |
|---|---|---|---|
| Scott D. Gattey | Partner | $425–$500 | 1,504.63 |
| Paul D. Byrne | Senior Attorney | $425 | 560 |
| Peter Scoolidge | Contract Attorney | $380 | 545.5 |
| Amy Kashiwabara | Contract Attorney | $380 | 94.8 |
| Isabelle Smith | Contract Attorney | $380 | 73.85 |
| Melissa Cardinale | Paralegal | $200 | 30.20 |
| **Total Hours** | | | 2,808.98 |

Mr. Gattey gave a 15% discount from his usual rates.[11] The total fees are $1,187,077.75.

The breakdown of the work is as follows. There were three dispositive motions: a motion to dismiss the first amended complaint, a motion to dismiss the second amended complaint, and a motion for judgment on the pleadings that whittled down the actionable fraud allegations to 16.[12] Discovery was extensive and contentious, requiring the court's intervention.[13] Grouse River ultimately produced 44,000 documents.[14] Mr. Gattey deposed four Grouse River witnesses and defended depositions of three NetSuite witnesses.[15] Mr. Gattey hired an accounting expert, David

---

[9] Verdict − ECF No. 355.

[10] Gattey Decl. – ECF No. 389 at 5 (¶ 16); Ray Decl. – ECF No. 388 at 3 (¶ 5).

[11] Gattey Decl. – ECF No. 389 at 6 (¶ 20).

[12] *Id.* at 2–3 (¶¶ 5–7).

[13] *Id.* at 3 (¶¶ 8–9); Orders – ECF Nos. 65, 100 (ordering Grouse River to run search terms), 102, 105, 113, 114, 118, 161, 165, 184 (financial-information kerfuffle), 192, &198

[14] Gattey Decl. – ECF No. 389 at 4 (¶ 11).

[15] *Id.* at 4 (¶ 12).

ORDER – No. 16-cv-02954-LB            3

1  Perry, and worked with him to prepare the initial report.[16] (Ultimately, the court denied Grouse

2  River's motion to exclude the expert reports.[17]) Under Mr. Gattey's watch, Oracle moved for

3  summary judgment, and the court granted the motion in part, holding that the limitation of liability

4  applied to the non-fraud claim (and also holding that fact issues precluded summary judgment on

5  the fraud claims).[18] Mr. Gattey participated in two mediations.[19]

    Mr. Gattey submitted a declaration that recounts the experience of his team. Mr. Gattey has 24 years of experience handling software-implementation matters for technology companies and has billed Oracle (and Oracle paid) the rates reflected in the chart for the different timekeepers.[20] He has substantial experience representing NetSuite and was in-house at Oracle and at Siebel Systems.[21] Paul Byrne is a principal at the Cornerstone Law Group with a commercial-litigation practice and 20 years of litigation experience, including trying multiple cases through verdict and handling numerous arbitrations.[22] Amy Kashiwabara is a contract lawyer who graduated from Stanford Law School in 2000 and specializes in, among other things, intellectual property and breach-of-contract cases.[23] Peter Scoolidge, who worked on discovery matters in the case, graduated from Brooklyn Law School *cum laude* in 2008, clerked for a district judge in the Eastern District of New York, and is an attorney at Scoolidge, Peters, Russotti, and Fox.[24] Isabelle Smith graduated from U.C., Hastings College of the Law in 1998, was Executive Director of the Hastings Law Journal, was a former partner at Howry LLP, and has 20 years of litigation experience.[25]

---

[16] *Id.* (¶ 13).

[17] Order – ECF No. 205.

[18] Mot. – ECF No. 119; Order – ECF No. 172.

[19] Gattey Decl. – ECF No. 389 at 5 (¶ 15).

[20] *Id.* at 7 (¶ 25).

[21] *Id.*

[22] *Id.* (¶ 26).

[23] *Id.* (¶ 27).

[24] *Id.* at 7−8 (¶ 28).

[25] *Id.* at 8 (¶ 29).

After the court's summary-judgment order, Oracle hired Latham & Watkins to try the case.[26] The Latham timekeepers billed the following hours at the following rates.

| Timekeeper | Position | Rate | Hours Billed (to July 2019) | Hours Billed (to Sept. 2019) |
|---|---|---|---|---|
| Sara M. Ray | Partner/Lead | $787.50–$840.00 | 1,230.40 | 1,244.90 |
| Elyse Greenwald | Senior Associate | $746–$796 | 1,167 | 1,178.60 |
| Alicia R. Jovais | Senior Associate | $713–$760 | 1,079.40 | 1,185.60 |
| Diana A. Aguilar | Senior Associate | $713–$760 | 884.60 | 917.60 |
| Chad Hejl | Junior Associate | $510–$544 | 812.50 | 830.90 |
| Jessica Oglesbee | Junior Associate | $416–$444 | 744 | 771.20 |
| Katharine White | Litigation Services | $320 | 20.80 | 34.60 |
| Andrea Casalett | Litigation Services | $320 | 5.50 | 11.50 |
| Victor Cayanan | Paralegal | $330–$352 | 659.30 | 746.10 |
| Monique Handy-Jones | Paralegal | $333.75–$356 | 235.40 | 236.50 |
| **Total Hours** | | | 6,838.9 | 7,157.5[27] |

Latham's rates were a "significant discount from the firm's usual rates."[28] Latham charged, and Oracle paid, the rates reflected in the chart.[29] The total fees are $4,452.178.20 through July 2019 and (accounting for the fees litigation) $4,626,979.98 through September 2019.[30]

---

[26] Ray Decl. – ECF No. 388 at 3 (¶ 5).

[27] *Id.* at 7–8 (¶ 16); Ray Supp. Decl. – ECF No. 393-1 at 3–4 (¶ 7). Oracle did not seek fees for October 2019, the fees spent preparing its reply brief, or its time preparing for and attending the fees hearing. Ray Supp. Decl. – ECF No. 393-1 at 2 (¶ 7 n.1). It will seek its fees for any time on appeal. *Id.* at 4 (¶ 8).

[28] Mot. – ECF NO. 387 at 11; *see* Ray Decl. – ECF NO. 388 at 7 (¶ 15) (discounted rates were negotiated).

[29] Ray Decl. – ECF No. 388 at 8 (¶ 19). Latham confirmed at the hearing that Oracle paid the invoices that reflect the hours and rates in this order.

[30] *Id.* (¶ 20).

ORDER – No. 16-cv-02954-LB    5

When Latham entered its appearances, the litigation escalated in anticipation of trial. Among the events in the months that preceded trial were the following: pretrial orders compelling Grouse River to produce financial information; pretrial preparation (including motions *in limine*, challenges to the damages expert, the pretrial order, jury instructions, exhibits, and the verdict form); litigating Grouse River's change of its trial strategy (by withdrawing the breach-of-contract claim and proceeding only on theories of fraud), and challenging Grouse River's lost-profits expert.[31] The month-by-month breakdown of Latham's work is as follows.

In January 2019, Latham's timekeepers provided the following services: analyzing pleadings, document productions, deposition transcripts, expert reports, and witness-interview materials; discussing case background and litigation strategy with Oracle; legal research; developing case strategy; preparing for and attending a case-management conference; and addressing discovery disputes (including with the court).[32] The timekeepers and their hours in this period were as follows: Sarah Ray (122.70); Elyse Greenwald (75.20); Diana Aguilar (12.80); Alicia Jovais (44.70); Jessica Oglesbee (20.90 hours); and Victor Cayanan (48.30).[33]

In February 2019, Latham's timekeepers provided the following services: reviewing financial records in the NetSuite database; analyzing over 58,000 documents (totaling more than 250,000 pages), discovery responses, deposition transcripts (over 2,300 pages), and witness interview materials; developing trial themes; identifying documents missing from Grouse River's production and raising discovery issues; legal research; working with Oracle's expert to revise his report based on newly disclosed Grouse River financial information; preparing a case schedule; preparing for and attending a case-management conference; strategizing for fact development; preparing for the deposition of Grouse River's CEO, Glenn Fallis; and working to obtain documents from Grouse River's accounting firm, Grant Thornton.[34] The timekeepers and their

---

[31] *See* Docket.

[32] Ray Decl. – ECF No. 388 at 3 (¶ 6) & Ex. C – ECF No. 388-1 at 2.

[33] *Id.*

[34] *Id.* at 3–4 (¶ 7) & Ex. D – ECF No. 388-2 at 2.

hours in this period were as follows: Sarah Ray (114.50); Elyse Greenwald (75.80); Diana Aguilar (41.30); Alicia Jovais (68); Jessica Oglesbee (10.50); and Victor Cayanan (2.90).[35]

In March 2019, Latham's timekeepers provided the following services: working to revise their expert report based on newly disclosed Grouse River financial information; obtaining documents from Grant Thornton; analyzing "hot" documents and deposition transcripts to develop trial themes; negotiating discovery disputes; analyzing Grouse River's fraud allegations and the contractual commitments; preparing for the depositions of three Grouse River witnesses (including Glenn Fallis); summarizing documents and testimony relating to key software functionalities; and identifying and interviewing witnesses.[36] The timekeepers and their hours in this period were as follows: Sarah Ray (91.30); Elyse Greenwald (97.40); Diana Aguilar (57.70); Alicia Jovais (102.20); Chad Hejl (19.70); Jessica Oglesbee (104.30); and Victor Cayanan (28).[37]

In April 2019, Latham's timekeepers provided the following services: preparing for and taking the depositions of two Grouse River deponents (including Glenn Fallis); identifying and interviewing potential trial witnesses; finalizing Oracle's expert's final report and preparing a supplemental rebuttal report; legal research; developing trial themes; researching and drafting motions *in limine* and the trial brief; preparing the exhibit list; designating deposition testimony for trial; and outlining the opening statement.[38] The timekeepers and their hours in this period were as follows: Sarah Ray (177.50); Elyse Greenwald (138.30); Diana Aguilar (110.60); Alicia Jovais (128.60); Chad Hejl (140.50); Jessica Oglesbee (106.80); Monique Handy-Jones (1.20); Victor Cayanan (52.20); Andrea Casalett (1.50); and Katharine White (1.70).[39]

In May 2019, Latham's timekeepers provided the following services: finalizing Oracle's expert's supplemental rebuttal report; interviewing potential trial witnesses; conferring with

---

[35] *Id.*

[36] *Id.* at 4 (¶ 8) & Ex. E – ECF No. 388-3 at 2.

[37] *Id.*

[38] *Id.* at 4−5 (¶ 9) & Ex. F – ECF No. 388-4 at 2.

[39] *Id.*

Grouse River about pretrial filings; deposing Grouse River's expert; developing trial themes; opposing Grouse River's motion to amend its complaint to withdraw its breach-of-contract claim; researching and filing motions *in limine*, the trial brief, and jury instructions; opposing Grouse River's motions *in limine*; preparing the trial exhibit list, witness list, proposed pretrial order, verdict form, jury questionnaire, voir dire questions, and actionable fraud allegations (a key issue in the trial); and designating testimony for trial.[40] The timekeepers and their hours in this period were as follows: Sarah Ray (246.80); Elyse Greenwald (288.30); Diana Aguilar (257.50); Alicia Jovais (247.50); Chad Hejl (232.30); Jessica Oglesbee (187); Monique Handy-Jones (19.10); Victor Cayanan (163.60); Andrea Casalett (0.60); and Katharine White (6.30).[41]

From May 30 to June 17, 2019, Latham's timekeepers provided the following services: researching, drafting, and filing additional motions *in limine*; opposing Grouse River's motion *in limine*; researching, drafting, and filing objections to Grouse River's trial exhibits; preparing for mock-jury exercise; answering Grouse River's amended complaint; preparing witnesses for trial; designating deposition testimony for trial; and drafting the opening statement.[42] The timekeepers and their hours in this period were as follows: Sarah Ray (99.30); Elyse Greenwald (94.80); Diana Aguilar (97.20); Alicia Jovais (96.40); Chad Hejl (93.50); Jessica Oglesbee (99.30); Monique Handy-Jones (48.50); Victor Cayanan (86.50); H. Nguyen (0.60);[43] Andrea Casalett (0.60); and Katharine White (6.30).[44]

From June 14, 2019 to June 30, 2019, Latham timekeepers provided the following services: a mock jury exercise; researching and drafting a brief regarding Rule 602; preparing objections to late-disclosed evidence; responding to Grouse River's amended proposed jury instructions; participating in the pretrial conference; settlement discussions; drafting briefs regarding the fraud

---

[40] *Id.* at 5 (¶ 10) & Ex. G – ECF No. 388-5 at 2.

[41] *Id.*

[42] *Id.* at 5−6 (¶ 11) & Ex. H – ECF No. 388-6 at 2.

[43] Oracle does not seek fees for the 0.60 hours billed by H. Nguyen.

[44] Ray Decl. – ECF No. 388 at 5−6 (¶ 11) & Ex. H – ECF No. 388-6 at 2.

allegations that Grouse River could pursue at trial; drafting a motion *in limine* to exclude late-disclosed damages figures; drafting direct and cross-examination outlines; drafting the opening and closing argument; and preparing witnesses for trial.[45] The timekeepers and their hours in this period were as follows: Sarah Ray (166.60); Elyse Greenwald (164.10); Diana Aguilar (106); Alicia Jovais (158.20); Chad Hejl (100.90); Jessica Oglesbee (68.40); Monique Handy-Jones (36.90); Victor Cayanan (98.70); Andrea Casalett (2.80); and Katharine White (1.00).[46]

In July 2019, Latham's timekeepers provided the following services: researching and drafting a motion *in limine* to exclude Grouse River's late-disclosed damages figures; drafting direct and cross-examination outlines, the opening statement, and closing argument; preparing witnesses; legal research about evidentiary issues; participating in a hearing regarding Grouse River's late-disclosed damages; preparing for motion for judgment as a matter of law; serving as counsel in the week-long trial; preparing a bill of costs; and working on the attorney's fees motion.[47] The timekeepers and their hours in this period were as follows: Sarah Ray (211.70); Elyse Greenwald (233.10); Diana Aguilar (201.50); Alicia Jovais (233.80); Chad Hejl (225.60); Jessica Oglesbee (146.80); Monique Handy-Jones (129.70); Victor Cayanan (179.10); and Katharine White (5.50).[48]

In August 2019, Latham's timekeepers worked on the attorney's fees motion.[49] The timekeepers and their hours in this period were as follows: Sarah Ray (2.50); Elyse Greenwald (4.50); Diana Aguilar (11.60); Alicia Jovais (61.20); Chad Hejl (18.40); Monique Handy-Jones (1.10); Victor Cayanan (29.70); and Katherine White (10.40).[50]

---

[45] *Id.* at 6 (¶ 12) & Ex. I – ECF No. 388-7 at 2.

[46] *Id.*

[47] *Id.* at 6−7 (¶ 13) & Ex. J – ECF No. 388-8 at 2.

[48] *Id.*

[49] Ray Supp. Decl. – ECF No. 393-1 at 2 (¶ 5) & Ex. A – ECF No. 393-2 at 2.

[50] *Id.*

In September 2019, Latham's timekeepers billed the following hours for the fees motion: Sarah Ray (12); Elyse Greenwald (7.10); Diana Aguilar (21.40); Alicia Jovais (45); Jessica Oglesbee (27); Victor Cayanan (57.10); Katherine White (3.40) and Andrea Casalett (6).[51]

Ms. Ray submitted a declaration that recounts the experience of her team. Ms. Ray is a graduate of U.C. Berkeley School of Law (where she was Order of the Coif), a former law clerk to two district judges in the Northern District of California, and a partner at Latham with significant experience in federal and state court antitrust and unfair-competition cases and with prior representation of Oracle in competition and contract-related matters.[52] Elyse Greenwald is an associate at Latham, graduated in 2009 from the University of Michigan (*magna cum laude* and Order of the Coif), and clerked for a district judge in the Eastern District of California.[53] Alicia Jovais is an associate at Latham, graduated *summa cum laude* from the U.C. Hastings College of the Law, was a senior editor of the law journal, and was a law clerk for a circuit judge of the Ninth Circuit Court of Appeals.[54] Diana Aguilar is an associate at Latham, graduated from Cornell Law School in 2012 (*cum laude*), and was an associate editor of a journal there.[55] Chad Hejl was an associate at Latham and graduated in 2017 from University of California, Los Angeles, School of Law (where he was Order of the Coif).[56] Jessica Oglesbee is an associate at Latham, graduated from U.C. Berkeley School of Law in 2018, was an associate editor on a journal, and was Moot Court Director for international competitions.[57] Victor Cayanan is a senior paralegal at Latham, has 33 years of litigation experience, and has worked on many trials.[58] Monique Handy-Jones is a

---

[51] *Id.* at 3 (¶ 6) & Ex. B – ECF No. 393-3 at 2.
[52] Ray Decl. – ECF No. 388 at 9 (¶ 22).
[53] *Id.* (¶ 23).
[54] *Id.* (¶ 24).
[55] *Id.* (¶ 25).
[56] *Id.* (¶ 26).
[57] *Id.* (¶ 27).
[58] *Id.* (¶ 28).

senior paralegal at Latham with over 25 years of litigation experience.[59] Andrea Casalett is the Litigation Services Supervising Attorney at Latham, graduated from Golden Gate University School of Law in 2006, and has 13 years of litigation experience.[60] Katharine White is a Litigation Services Attorney at Latham, graduated from Santa Clara University School of Law in 2012, has six years of litigation experience, and has worked on hundreds of filings at Latham.[61]

In support of its hourly rates, Oracle provided the following information. The lawyers in the case charged — and Oracle paid — the hourly rates and amounts on the invoices.[62] The rates are consistent with the prevailing rates for lawyers in the district and the rates that courts have awarded Latham and other large law firms in complex civil matters.[63] It points out that it is a sophisticated consumer of legal services, and it paid the rates here.[64] The rates of Grouse River's counsel — both high-end lawyers — exceed the rates of its counsel here.[65]

Oracle offered in its motion to lodge its unredacted billing invoices and complete time entries and — at the court's request — lodged its invoices on November 27 for the court's *in camera* review (and reflected that lodging on the public record by filing — again at the court's request — a notice of lodging).[66] It notes that — as explained in the Ray and Gattey declarations — it is not asking for fees for work by non-attorneys who billed few hours on the case or costs already taxed

---

[59] *Id.* at 10 (¶ 29).

[60] *Id.* (¶ 30).

[61] *Id.* (¶ 31).

[62] Ray Decl. – ECF No. 388 at 7−8 (¶ 16); Gattey Decl. – ECF No. 389 at 6 (¶ 20). Through counsel, Oracle confirmed at the hearing that it paid the fees reflected in its fees motion and in this order.

[63] Ray Decl. – ECF No. 388 at 8 (¶ 18); *see* Mot. – ECF No. 387 at 21–22 (collecting cases awarding fees to Latham and approving rates that exceed the hourly rates that the lawyers here request).

[64] Mot. – ECF No. 387 at 22.

[65] *Id.* (citing declarations in other litigation about counsel's hourly rates).

[66] *Id.* at 18 n. 8 & 19 n.9; Orders – ECF No. 404, 405; Notice of Lodging – ECF No. 406; *see* N.D. Cal. Civ. L. R. 54-5 ("Court may require production of an abstract of or the contemporary time records for inspection, as the Judge deems appropriate").

by the court.[67] The court reviewed the lodged documents, which match (and thus support) the submissions in the fees motion.

As set forth in the following charts, Oracle seeks $77,996.13 in non-taxable costs.[68] (The clerk already taxed costs of $36,554.95.[69])

| Gattey Costs | |
| --- | --- |
| Air and ground transportation | $ 588.96 |
| Copying | $1,534.69 |
| Court filing | $ 337.70 |
| Mailing | $ 201.02 |
| Messenger | $ 735.68 |
| Online legal research | $ 260.00 |
| Meals | $ 334.75 |
| Out-of-state subpoena service | $1,129.60 |
| Transcripts and related costs | $1,160.95 |
| Travel and lodging | $8,897.35 |
| Subpoena fees | $ 100.00 |
| **Total** | **$15,280.70** |

| Latham Costs | |
| --- | --- |
| Air and ground transportation | $6,186.82 |
| Copying | $ 818.09 |
| Court filing | $1,423.10 |

---

[67] Notice of Lodging – ECF No. 406 at 2.

[68] Gattey Decl. – ECF No. 389 at 9 (¶ 32); Ray Decl. – ECF No. 388 at 11 (¶ 33).

[69] Clerk's Taxing of Costs – ECF No. 370.

ORDER – No. 16-cv-02954-LB 12

| Mailing | $9,228.80 |
| --- | --- |
| Practice support | $6,263.25 |
| Meals | $2,472.56 |
| Courtroom technology | $4,475.15 |
| Travel and lodging | $31,666.70 |
| **Total** | **$62,715.43** |

## ANALYSIS

The parties do not dispute that under their contract, the prevailing party (here, Oracle) is entitled to fees and costs.[70] Cal. Code Civ. P. § 1021; Cal. Civ. Code § 1717(a). Grouse River contends that Oracle did not justify its fees motion (either by competent evidence about hourly rates or through billing records) and cannot recover non-taxable costs.[71] The parties agree that the relevant legal standard under the contract (applying California law) is the lodestar.[72] Applying the lodestar, the court awards the fees and (under the relevant authority) non-taxable costs.[73]

### 1. Lodestar Fees

Under California law, the lodestar is calculated by multiplying the number of hours that the prevailing party reasonably expended in the litigation by a reasonable hourly rate. *PLCM Grp. v.*

---

[70] *See* Opp'n – ECF No. 393 (not contesting that the contract allows the prevailing party in litigation to recover its fees and costs); Order – ECF No. 235 at 1–2; Final Pretrial Order – ECF No. 292 at 2 (the prevailing party will seek fees and costs). During the pretrial process, when Grouse River dropped its breach-of-contract claim, the parties agreed that the contract provision applied to the fraud case that went to trial.

[71] Opp'n – ECF No. 390 at 2; *see* Clerk's Taxing of Costs – ECF No. 370 at 2 (taxing costs of $36,554.95). The parties do not contest the Clerk's taxing of costs.

[72] Mot. – ECF No. 371-5 at 18; Opp'n – ECF No. 390 at 4.

[73] Grouse River also contends that the court should deny Oracle its fees because — in contravention of the Northern District's local rules — it did not meet and confer sufficiently. *See* N.D. Cal. Civ. L. R. 54-5(b)(1); Opp'n – ECF No. 390 at 3. For the reasons set forth in Oracle's reply and supporting declaration, the court rejects this argument. Reply – ECF No. 393 at 12–13; Ray Dec. – ECF No. 388 at 2−3 (¶ 4) & Ex. B – ECF No. 373-2. Grouse River also contends that the court should deny the motion because Mr. Gattey disclosed a settlement demand. Opp'n – ECF No. 390 at 11. Oracle points out that the demand was in the public record as part of the initial disclosures (at ECF No. 318-1) and in any event withdrew the submission. Reply – ECF No. 393 at 13. The court does not consider it and denies the request to strike the fees motion on this ground.

*Drexler*, 22 Cal. 4th 1084, 1095 (2000). The next two sections address the hourly rates and the hours billed.

### 1.1 Hourly Rate

"The reasonable hourly rate is that prevailing in the community for similar work." *Id*. The court looks to the rates of comparable lawyers in the forum. *Nishiki v. Danko Meredith, APC*, 25 Cal. App. 5th 883, 898 (2018). The court fixes a fee "at the fair market rate for the particular action." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citation omitted). Among other factors, the court can consider the rates previously awarded to attorneys in matters of comparable complexity. *Id.; see Monolithic Power Sys., Inc. v. O2 Micro. Int'l, Ltd.*, No. 08-04567 CW, 2012 WL 161212, at *2 (N.D. Cal. Jan. 176, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

Oracle justified its (discounted) rates here. They are reasonable and are less than the rates for comparable lawyers in cases of comparable complexity. In particular, Oracle cites cases where courts in the district have awarded higher rates.[74] The court reviewed those cases, did independent research to identify similar cases, and has its perspective based on ten years of fees litigation (on the court's docket). As discussed at the hearing, the court's knowledge of the prevailing rates for big-law lawyers in cases involving similar work (including those cited by Latham) confirms that rates here meet the "prevailing rate" standard.

### 1.2 Hours Billed

A prevailing party has the initial "burden of establishing entitlement to an award and documenting the appropriate hours expended…." *Hensley*, 461 U.S. at 437. Grouse River contends that Oracle is not entitled to fees because it did not submit its time records.

For the reasons advanced by Oracle in its motion and reply brief, Oracle provided sufficient information in the form of its declarations and its invoices to justify its fee request.[75] In addition, as discussed at the December 5 hearing, the court was intimately involved in the litigation from its

---

[74] *Id.* at 22 (collecting cases in the district awarding rates higher than those here); Reply – ECF No. 393 at 9–10 (collecting cases).

[75] Mot – ECF No. 371-5 at 18 n.8 & 20; Reply – ECF No. 393 at 7.

inception. The court's particular knowledge of the litigation is relevant to its assessment of the reasonableness of counsel's hours. *See Hill v. Kaiser*, No. 3:10-cv-02833-LB, ECF No. 341 at 44 (N.D. Cal. Sept. 19, 2016). Moreover, this is a breach-of-contract case where the parties — in forming their contract — bargained for and allocated their risk about damages, fees, and costs. That bargain drives this result. (The court would have taken a different approach (and required disclosure of billing records to opposing counsel) if this were a case involving statutory fees to a prevailing party. The inquiry there is markedly different than it is in this case, which involves a bargain between sophisticated parties.)

In sum, applying the contract's fees provision, the court awards $5,814,057.73, the amount that Oracle paid its attorneys.

## 2. Costs

Grouse River does not challenge the amount of non-taxable costs. It does contend that Oracle cannot recover non-taxable costs.[76] Its argument in full is as follow:

> Nor has Oracle come close to justifying its extravagant lump-sum expenses. It also is not entitled to "costs" beyond those already taxed by the Clerk's office. *Micro Modular Techs. PTE Ltd. V. Atheros Commc'ns, Inc.*, No. SA CV10-00443 JAK (MLGx), 2012 WL 13015026, at *6 (C.D. Cal. Dec. 18, 2012) ("California appellate courts have adopted a clear rule that 'litigants cannot expand the definition of "costs" in section 1717 [of the California Code of Civil Procedure] to include items not permitted under section 1033.5 of the Code of Civil Procedure.'").

The court follows the rule in *Cataphora Inc. v. Parker*. *See* No. C09–5749 BZ, 2012 WL 174817, at *2 (N.D. Cal. Jan. 20, 2012). There, the court held that a similar provision in a contract allowed the prevailing party to recover its non-taxable costs. *Id.* A contrary result undermines the ability of parties to contract and allocate risk. As the *Cataphora* court observed, "as the Supreme Court has recognized on many occasions, parties are free to enter into contracts which shift attorneys' fees

---

[76] Opp'n – ECF No. 390 at 8 (citing and quoting *Micro Modular Techs. PTE v. Atheros Commc'ns, Inc.*, No. SA CV10-00443 JAK (MLGx), 2012 WL 13015026, at *6 (C.D. Cal. Dec. 18, 2012)).

ORDER – No. 16-cv-02954-LB 15

and costs to the prevailing party." *Id.* (citations omitted). Limiting contract costs to taxable costs makes no sense because the prevailing party already is entitled to statutory costs. *Id.*

The costs here are reasonable. The court's assessment applies to the travel costs too, given the nexus of the litigation to Canada, where Grouse River was located.

## CONCLUSION

The court grants Oracle's motion and awards fees of $5,814,057.73 and non-taxable costs of $77,996.13. The court denies the motion to strike as moot. This disposes of ECF Nos. 387 & 400.

**IT IS SO ORDERED.**

Dated: December 6, 2019

LAUREL BEELER
United States Magistrate Judge