LATHAM & WATKINS LLP
  Sarah M. Ray (Bar No. 229670)
   *sarah.ray@lw.com*
  Alicia R. Jovais (Bar. No. 296172)
   *alicia.jovais@lw.com*
  505 Montgomery Street, Suite 2000
  San Francisco, California  94111-6538
  Telephone: +1.415.391.0600
  Facsimile: +1.415.395.8095

Elyse M. Greenwald (Bar No. 268050)
  *elyse.greenwald@lw.com*
200 Clarendon Street, 27th Floor
Boston, MA 02116
Telephone: +1.617.948.6000
Facsimile: +1.617.948.6001

Eric J. Konopka (admitted *pro hac vice*)
  *eric.konopka@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

Attorneys for Defendant
ORACLE CORPORATION

KIEVE LAW OFFICES
  Loren Kieve (56280)
2655 Steiner Street
San Francisco, California 94115-1141
Telephone: 415.364.0060
Facsimile: 435.304.0060
Email:  *lk@kievelaw.com*

Attorneys for Plaintiff
GROUSE RIVER OUTFITTERS, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GROUSE RIVER OUTFITTERS LTD., <br><br> Plaintiff, <br><br> v. <br><br> ORACLE CORPORATION, <br><br> Defendant. | Case No. 3:16-cv-02954-LB <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Time:    9:30 AM <br> Date:    July 22, 2021 <br> Place:    Courtroom B, 15th Floor (By Zoom) <br> Judge:    The Honorable Laurel Beeler |

1    In accordance with the Court's order, Dkt. 423, Grouse River Outfitters, Ltd ("Grouse

2    River") and Oracle Corporation ("Oracle") provide the following statement.

3    **I.       Case Status**

4         **A.      Grouse River Statement.**

5    By memorandum opinion dated February 26, 2021, the Court of Appeals reversed in part,

6    affirmed in part, vacated and remanded this action for a new trial. The mandate issued on April

7    26, 2021. Pursuant to the Court of Appeals' decision, the case will be retried *de novo* on Grouse

8    River's claims for (a) fraudulent inducement and (b) treble-damages under California Penal Code

9    § 496.

10   As grounds for reversal and remand for a new trial, the Court of Appeals held that this

11   Court erroneously dismissed Grouse River's § 496 cause of action, and erroneously excluded from

12   the jury Grouse River's allegations of fraudulent misrepresentation in paragraphs 31 and 69 of the

13   SAC:

14        Paragraph 31 claims that Oracle represented: "Speed of deployment in months not

15        years." It was error to strike this representation. First, it is not necessarily too "generalized"

16        or "vague" a statement to be actionable. *See id*. A deployment in less than twelve months

17        meets the representation, and a deployment that takes longer (or materially longer) does

18        not.  Given the importance that Grouse River claims it placed on the speed with which the

19        new software was to be implemented, adapted, and deployed, such a representation could

20        be material. Therefore, viewing this allegation in the light most favorable to Grouse River,

21        Oracle's knowledge that this representation as to speed of deployment was false, could

22        support a fraud allegation.

23        Paragraph 69 of the SAC reads: "The [November 26, 2013] NetSuite presentation

24        [to Grouse River] went on to show that the software only requires a subscription and

25        eliminates the need to back-up, upgrade, migrate, tune, or replace software." These

26        statements are not too general to be actionable. A statement can be both broad and

27        sweeping, and yet specific, not general. The statement, made during a demonstration

28        intended to induce Grouse River to buy, was that if Grouse River purchased a NetSuite

subscription, there was no need to back-up, upgrade, migrate, tune, or replace software. Sweeping yes, but also specific. Evidence that Grouse River did indeed need to back up, upgrade, or replace the software could prove the alleged representation false.

[Mem. Op. at 6-7]

### 1. Grouse River Should Be Permitted to Update and/or Amend its Rule 26(a) Initial Disclosures.

In view of the Court of Appeal's ruling, Grouse River should be permitted to update and/or amend its Rule 26(a) initial disclosures to set out all the damages that flow from these crucial parts of its claims that the jury was not permitted to consider.

*First*, the damages that flow from a § 496 cause of action are not necessarily the same that flow from one sounding in fraud. For example, in *Switzer v. Wood*, 35 Cal.App.5th 116, 247 (2019), the jury was given a separate instruction on the statute and a separate set of special questions on the verdict form. Copies are attached as Appendices 1 and 2, and Grouse River requests that this Court take judicial notice of them. *See Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069, at *1 (N.D. Cal. July 2, 2018) ("the Court takes judicial notice of these documents as they were filed as part of the public record in a court").

The elements the *Switzer* jury found were "(i) [defendants] obtained by theft property belonging to [plaintiff], and concealed or withheld such property and/or aided in concealing or withholding such property from [plaintiff]; (ii) [defendants] knew the property was obtained by theft at the time they received, withheld, concealed, or aided in concealing or withholding the property from [plaintiff]; and (iii) [defendants'] violation of section 496(a) caused [plaintiff] to suffer actual damage, loss or harm," which the California Court of Appeal held "clearly establish violation(s) of section 496(a)." 35 Cal.App.5th at 128. *See* Appendix 2 at 14-15.

These are distinct from the eight elements of fraud on which the jury below was charged. [Dkt. 352-1 at 6:10.] They are also distinct from the elements of fraud on which the *Switzer* jury was charged. *See* Appendix 1 at 6-8, Appendix 2 at 3-6, 10-11, 14-15. As the *Switzer* court made clear: "Section 496(c) clearly and simply requires, as a prerequisite for treble damages, that a 'violation' of the criminal offense described in the statute has been shown and that such violation

1    has caused actual damage." 35 Cal.App.5th at 129.

2          **Second,** the damages that flow from the allegations in paragraphs 31 and 69 – including

3    loss of revenue and other damages – are clearly recoverable. With these claims now in the case,

4    Grouse River should be permitted to recover based on them.

5          **Third**, the Court "'has broad discretion in its control and management of [a] new trial.

6    Decisions respecting the admission of additional witnesses and proof should be guided by

7    considerations of fairness and justice to all parties.' 11 C. Wright, A. Miller, & E. Cooper, federal

8    Practice & Procedure § 2803; *see also, e.g., Yong ex rel. Yong v. The Nemours Foundation,* 432

9    F.Supp.2d 439, 441 (D. Del.2006) ("[A]s a general rule, a retrial should not involve the addition

10    of new issues, evidence, or witnesses. However, this general rule does not foreclose a party from

11    demonstrating that an exception may be warranted in the appropriate circumstances."); *Hoffman*

12    *v. Tonnemacher,* No. CIV F 04–5714(AWI)(DLB), 2006 WL 3457201, * 2 (E.D. Cal. Nov. 30,

13    2006) ("With respect to retrials, district courts have the discretion to admit or exclude new

14    evidence or witnesses on retrial.")." *White v. McDermott,* No. 3:08CV634 JBA, 2010 WL

15    4876025, at *1 (D. Conn. Nov. 19, 2010).

16          As in *White v. McDermott,* allowing the additional evidence of damages "will not

17    complicate the case to any significant extent, since the additional . . . testimony only impacts the

18    damages claimed, not Defendant's liability." *Id.,* at *2. As there, "[t]he threshold dispute [in this

19    case, fraud and, now, liability under Penal Code § 496] remains the same as during the first trial,

20    and thus Defendant's ability to rely upon previous trial testimony would not be compromised." *Id.*

21    As there, here, "Plaintiff sought to introduce [in this case, evidence of additional damages] during

22    the first trial, and although this Court did not allow Plaintiff to do so . . . Defendant was on notice

23    of Plaintiff's claim . . . . Thus, Defendant would not be prejudicially surprised by the subject matter

24    of [the components of Grouse River's damages]." *Id.*

25          Moreover, as in *White v. McDermott,* permitting Grouse River to offer this evidence "will

26    advance the objective of trying a claim on its merits." *Id.,* at *3.

27          **Fourth,** the damages calculations are reflected in the spreadsheet analysis previously

28    provided on multiple occasions to NetSuite/Oracle, and all that will be required is to provide a

narrative explanation of how the calculations are derived, and from what sources.

Oracle can then take Mr. Fallis's deposition if it wishes to inquire further. *Id.; see also Hoffman v. Tonnemacher,* No. CIVF045714AWIDLB, 2006 WL 3457201, at *3 (E.D. Cal. Nov. 30, 2006), on reconsideration in part, No. CIV F04-5714 AWIDLB, 2007 WL 214554 (E.D. Cal. Jan. 26, 2007), and modified, No. CIVF 04-5714 AWI DLB, 2007 WL 2318099 (E.D. Cal. Aug. 10, 2007), aff'd, 362 F. App'x 839 (9th Cir. 2010), and aff'd in part, 593 F.3d 908 (9th Cir. 2010), and aff'd in part, 362 F. App'x 839 (9th Cir. 2010) ("Given the probable retrial date, and considering that some of the deposition costs are recoverable costs for a prevailing party, the Court believes that most of the surprise and prejudice to Hoffman is readily curable.").

If the Court has any doubt on these issues, Grouse River requests that it be permitted to brief them in more detail.

> ### 2.      Grouse River Should Be Permitted to File an Amended or Supplemental Complaint.
>
> #### (a) Additional facts have come to light since the October 31, 2016 SAC.

Since the time it filed the SAC, and after the first trial, the following additional information has come to Grouse River's attention.

*First,* Grouse River has learned that NetSuite's representation that its SuiteCommerce Advanced or "SCA" product "only requires a subscription and eliminates the need to back-up, upgrade, migrate, tune, or replace software," *see* SAC ¶ 69, quoted above, was a flagrant lie.

As the website of a leading NetSuite "consultant & developer partner," Anchor Group, states (emphases added):

> Are there benefits to having a bundle that is not managed? (*SCA does not manage upgrades*.)
>
> Absolutely, and this is because of the many customizations that SuiteCommerce Advanced customers tend to add to their ecommerce platform. *Companies rely on having a platform that doesn't break whenever a managed upgrade occurs.* When you have customizations in your ecommerce solution, *you don't want them to break when a managed upgrade to the latest version occurs.* You want to make the transition when you have had

1   the time to test out the upgrade in sandbox first to ensure that all of your customizations

2   still work properly. *This is the reason that SCA is version locked, meaning that it doesn't*

3   *automatically upgrade to the latest version.* Whenever you want to upgrade, you will want

4   to get in touch with your development team to audit the theme and extensions, test the new

5   version in sandbox, make any updates to a customization, and deploy to production when

6   fully tested.

7   https://www.anchorgroup.tech/suitecommerce (accessed June 2, 2021) (emphases added). As

8   discussed below, doing all this testing is enormously expensive.

9     **Second,** between March 2015, when Grouse River "went live" on the SCA platform, and

10   2016 and the following years when Grouse River's SCA platform repeatedly crashed, the number

11   of users of the SuiteCommerce Advanced platform steadily began to decline. This trend has

12   continued to date. As of today, there are 821 live websites using SCA. 341 users have abandoned

13   it. *See* https://trends.builtwith.com/shop/Netsuite-SuiteCommerce-Advanced (accessed June 2,

14   2021). There are only 17 total SCA websites with more than $1 million in annual sales revenue.

15   *Id.* This paltry showing underscores that the SCA platform is a commercial failure in addition to

16   being a fundamentally flawed one, underscoring the fact of substantial economic losses to users,

17   like Grouse River, of the SCA platform.

18     **Third,** contrary to the representations NetSuite made to Grouse River, reflected in

19   NetSuite's January 29, 2015 press release, that "Business-to-consumer (B2C) and B2B businesses

20   are increasingly adopting SuiteCommerce's robust, reliable, scalable and flexible cloud-based

21   commerce solution to meet customer expectations to buy, fulfill and return via the channel of their

22   choice," *see* https://www.netsuite.com/portal/company/pressreleases/01-29-15c.shtml (accessed

23   June 2, 2021), the uncontroverted evidence is that NetSuite's SCA customers were doing just the

24   opposite, and discontinuing by the hundreds their use of SCA. *Id.*

25     **Fourth,** at the same time  Grouse River was negotiating with NetSuite and then struggling

26   with SCA, numerous other customers were experiencing the same devastating repercussions that

27   Grouse River experienced, demonstrating that the SCA platform was anything but a "robust,

28   reliable, scalable and flexible cloud-based commerce solution to meet customer expectations to

1    buy, fulfill and return via the channel of their choice."

2        An online review dated April 27, 2017 begins with the statement: "Buying this was THE

3    worst business decision I have made." *See* https://www.capterra.com/p/136019/NetSuite-

4    SuiteCommerce/reviews/ (accessed June 2, 2021).

5        It continues:

6        Pros: It is integrated directly to netsuite but if you are moving from the older

7        SiteBuilder it doesn't use all of the same config so you still need to redo a load of things

8        e.g. all images and categories.

9        Cons: Poor support, everything that should be easy and out the box is difficult e.g.

10       product feeds, micro data, analytics, seo, payment gateways, version upgrades. Chronic

11       SEO issues. There is not much of an echo system of developers so it's not easy to get help

12       either. Its sold for a first class price but you're get the experience of an alpha tester. Use

13       netsuite for ERP but don't buy their ecommerce, they have such a long way to go it seems

14       unlikely they could ever catch up.

15       Another similar online review dated February 12, 2018 is captioned "RUN."

16   https://www.capterra.com/p/136019/NetSuite-SuiteCommerce/reviews/ (accessed June 2, 2021).

17       It reads:

18       Cons: Expensive, limited, terrible customer service...please use Shopify, switching

19       increased our revenue x3 first year.

20       **(b) Fed. R. Civ. P. 15(a), (d) authorizes the filing of an amended or supplemental**
         **complaint.**

21

22       Grouse River should be permitted to serve an amended or supplemental complaint setting

         forth these facts that have come to light since the SAC was filed on October 31, 2016.

23

24       Judge Chen's recent decision in *Food & Water Watch, Inc. v. United States Env't Prot.*

     *Agency,* No. 17-CV-02162-EMC, 2021 WL 1893063, at *4 (N.D. Cal. May 11, 2021), sets out the

25

     applicable standards:

26

27       Supplemental pleadings are governed by Rule 15(d), which provides that, "[u]pon

28       motion of a party the court may, upon reasonable notice and upon such terms as are just,

permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d).

New claims, new parties, and allegations regarding events that occurred after the original complaint was filed are all properly permitted under Rule 15(d). *See Griffin v. Cnty. School Bd. of Prince Edward Cnty.,* 377 U.S. 218, 226 (1964); *see also Eid v. Alaska Airlines, Inc.,* 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed."); *Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir. 1988) ("Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings."). Importantly, Rule 15(d) "is a tool of judicial economy and convenience" and "is intended to give district courts broad discretion in allowing supplemental pleadings." *Keith,* 858 F.2d at 473. The rule "enabl[es] a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *Id.* (emphasis added) (quoting *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 28–29 (4th Cir. 1963)). Therefore, because the goal of Rule 15(d) is to promote judicial efficiency, supplementation is generally favored. *See Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (citing *Keith* 858 F.2d at 473).

"The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a)." *Lyon v. U.S. Immigr. & Customs Enf't,* 308 F.R.D. 203, 214 (N.D. Cal. 2015) (quoting *Paralyzed Veterans of Am. v. McPherson,* No. C 06–4670 SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008)). In determining whether leave should be granted to supplement (or amend) the pleadings pursuant to a district court's discretion, the Supreme Court has stated that:

> [I]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

1  of allowance of the amendment, futility of amendment, etc.—the leave sought

2  should, as the rules require, be "freely given."

3  *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Ninth Circuit, the above listed factors—

4  referred to as the Foman factors—are not weighted equally. *Eminence Cap., LLC v.*

5  *Aspeon, Inc.,* 316 F.3d 1048, 1051–52 (9th Cir. 2003) ("Not all of the factors merit equal

6  weight. As this circuit and others have held, it is the consideration of prejudice to the

7  opposing party that carries the greatest weight.") (citing *DCD Programs, Ltd. v. Leighton,*

8  833 F.2d 183, 185 (9th Cir. 1987)). Rather, courts have held that "the crucial factor is the

9  resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1190

10  (9th Cir. 1973). A motion may be denied, however, on grounds of futility of the proposed

11  amendments irrespective of prejudice. See generally *Hoang v. Bank of Am., N.A.,* 910 F.3d

12  1096, 1103 (9th Cir. 2018); see also *Ecological Rights Found. v. Pac. Gas & Elec. Co.*,

13  713 F.3d 502, 520 (9th Cir. 2013).

14  Courts also consider whether allowing leave to supplement would align with the

15  goal of Rule 15(d), which is to promote judicial efficiency by resolving the parties' disputes

16  in one action. See *Planned Parenthood of S. Ariz.,* 130 F.3d at 402; *Keith*, 858 F.2d at 473.

17  (c)  ***Oracle will suffer no undue prejudice.***

18  As in *LaSalvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1119 (9th Cir. 1986),

19  "[b]ecause most of the information on the added claim would be available in [Oracle]'s own files,

20  little additional discovery would be needed" so there would be "no prejudice to defendant[] in

21  allowing the amendment" (reversing the district court's refusal to allow it).

22
23  ***(d) Grouse River should be permitted to serve a supplemental, or further amended, complaint.***

24  Grouse River should therefore be permitted to serve a supplemental complaint. *Id.*

25  Alternatively, and for the convenience of the Court, Grouse River should be permitted to serve a

26  further Amended Complaint that is restricted to (a) the outstanding claims consistent with the

27  Court of Appeal's ruling and (b) the supplemental material set forth above.

28

1

**B.      Oracle's Statement**

2

**1.      The First Trial & Ninth Circuit Order**

3

As the Court is well aware, Grouse River sued NetSuite in 2016, alleging that NetSuite

4

knew its cloud-based business-management software could not provide the functionality it

5

promised Grouse River.[1]   During the pre-trial proceedings, this Court excluded Grouse River's

6

expert's opinions regarding its alleged lost profit damages, and then, when Grouse River sought

7

to revert back to a spreadsheet that supposedly detailed its damages, the Court held that Grouse

8

River had failed to provide a computation that satisfied Rule 26(a) for certain categories of

9

damages that it sought.   After parsing Grouse River's damages spreadsheet, the Court allowed

10

Grouse River to seek approximately $766,000 in compensatory damages.   In July 2019, after a

11

five-day jury trial on Grouse River's claims for fraudulent inducement and fraudulent

12

misrepresentation, the jury deliberated for less than two hours and returned a complete defense

13

verdict for Oracle.

14

On appeal, the Ninth Circuit affirmed this Court's exclusion of certain categories of Grouse

15

River's damages under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and thus upheld this

16

Court's decision to limit Grouse River's compensatory damages to approximately $766,000.   Dkt.

17

No. 416 ("Mem. Op."), at 8-9.[2]   Grouse River petitioned for rehearing of that ruling, but the Ninth

18

Circuit denied the petition.   *See* Dkt. No. 417.   The Ninth Circuit, however, partially reversed two

19

pleading-stage rulings:

20

***First***, the Ninth Circuit reversed the dismissal of Grouse River's claim under California

21

Penal Code § 496.   The Ninth Circuit held, in essence, that the allegations that ostensibly supported

22

Grouse River's fraud claims could also support a claim under § 496.   *See, e.g.*, Mem. Op. 4-5

23

("[B]ecause the district court held that Grouse River had adequately pleaded its fraud claims, it

24

follows that Grouse River adequately pleaded theft by false pretense (which satisfies the first

25

26

27

[1]      Oracle later acquired NetSuite and was substituted as a party.

28

[2]      Grouse River did not appeal this Court's decision to exclude the opinions of its expert regarding its supposed lost profit damages.

element of a § 496 violation) because the elements of a civil fraud claim closely track those of theft by false pretense.").

**Second**, the Ninth Circuit held that two alleged representations by NetSuite—those in paragraphs 31 and 69 of Grouse River's second amended complaint—were not puffery and could potentially give rise to a fraud claim. Mem. Op. 6-7. The Ninth Circuit instructed this Court to "permit these representations to go to the jury in a new trial, ***absent a challenge by Oracle on other grounds not considered that the district court deems proper.***" Mem. Op. 7 (emphasis added). The Ninth Circuit held that, because it could not determine "the impact" of the exclusion of the allegations in paragraphs 31 and 69 on the allegations that did go to trial, if there is a new trial on paragraphs 31 and 69, the Court "must also permit the representations it previously deemed actionable to go to the jury in the new trial." Mem. Op. 8.

### 2.    How This Case Should Proceed Before This Court

As this case resumes before this Court, Oracle respectfully requests, as a first step, that it be allowed to move for summary judgment on two matters that this Court previously resolved at the pleading stage and on which Oracle has not yet had an opportunity to move for summary judgment.

**First**, Oracle requests permission to move for summary judgment on the two allegations—paragraphs 31 and 69—that the Ninth Circuit revived and held were not puffery. The Ninth Circuit expressly recognized that Oracle might have other grounds for challenging those allegations not previously considered by the Court, and Oracle has such grounds, including (but not limited to) the following:

Like a number of allegations previously excluded by this Court, both paragraphs 31 and 69 rest on representations that NetSuite supposedly made in specific documents but, in reality, neither document supports Grouse River's allegations. *See* Dkt. No. 291, at 2-3 (excluding representations "because Grouse River alleges in its complaint that these representations were made in certain specified documents but . . . does not offer evidence that those documents actually contain the alleged representations"); *see also* Dkt. No. 314. Oracle never had the opportunity to move for summary judgment on paragraphs 31 and 69 or test their supposed evidentiary basis, and thus

respectfully requests the opportunity to do so now before this case proceeds further before this Court.

Allowing Oracle to file a motion for summary judgment on paragraphs 31 and 69 would streamline the case and promote judicial economy. If Oracle's motion for summary judgment with respect to the two new fraud allegations were granted, there would be no need to re-try Grouse River's fraud claims, leaving only Grouse River's § 496 claim. Not only would it streamline any re-trial if it were limited to only a single claim (as opposed to three), it would impact the damages that are available to Grouse River.[3] Contrary to what Grouse River says (*infra* at 17-18), Oracle is not seeking to move for summary judgment on a "fact" or an "element of a claim." Instead, Oracle intends to move for summary judgment on Grouse River's fraud claims, to the extent they rest on paragraphs 31 and 69, because, among other reasons, there is no evidence to support Grouse River's allegations. That is entirely appropriate.

**Second**, Oracle requests permission to move for summary judgment on Grouse River's § 496 claim. The Ninth Circuit reversed the dismissal of that claim at the pleading stage—and did not, as Grouse River asserts (*infra* at 19), hold that it had to be submitted to a jury or otherwise preclude summary judgment, *see* Mem. Op. 2-5—and Oracle should have the chance to move for summary judgment on it before a jury hears it. That is particularly true in light of the many developments in the case law on § 496 in the nearly five years since this Court dismissed Grouse River's § 496 claim—including, for example, the California Supreme Court's grant of review in *Siry Investment L.P. v. Farkhondehpour*, No. S262081 (rev. granted July 8, 2020)—and the heightened evidentiary standard that applies to the alleged theft by false pretenses on which that claim is based, *see* Cal. Penal Code § 532(b).[4]

---

[3]    If a re-trial were limited to a claim under § 496, Grouse River would be entitled to pursue treble damages but **not** punitive damages. In addition, Grouse River's actual damages would be limited to damages stemming from the alleged violation of § 496, *i.e.*, the money NetSuite allegedly obtained through false pretenses.

[4]    Grouse River contends that § 532(b) applies only to criminal trials, but nothing in the text of § 532(b) limits its applicability to criminal trials. In any event, Grouse River has the burden of proving a violation of § 496, a *criminal* statute, which also requires proving a *criminal* theft by false pretenses. Section 532(b)'s evidentiary standard must apply even though this is a civil case.

1

### 3. The Ninth Circuit's Order Does Not Give Grouse River License To Re-Try An Entirely Different Case

Grouse River makes clear that it seeks to use the Ninth Circuit's remand to re-litigate the exclusion of its damages and further expand the allegations in its complaint. The Court should reject both Grouse River's request to "update" its initial disclosures to seek additional damages and its attempt to amend its complaint for a *fifth* time.

### a. Grouse River Should Not Be Allowed To "Update" Or "Amend" Its Initial Disclosures To Seek Additional Damages

The Court should deny Grouse River's request to "update" or "amend" its initial disclosures to seek additional damages. The Court excluded certain categories of damages as a discovery sanction because Grouse River failed to adequately disclose them, and the Ninth Circuit *affirmed* this Court's decision. Dkt. No. 327; *see* Fed. R. Civ. P. 26(a)(1)(A)(iii), 37(c)(1); Mem. Op. 8-9. Having failed to convince the Ninth Circuit to reverse that sanction, Grouse River now seeks to re-litigate (yet again) this Court's decision. Grouse River's request is inappropriate and its arguments are baseless.

*First*, this Court and the Ninth Circuit have already definitively excluded the categories of damages that Grouse River proposes to re-introduce. "Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'" *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (citation omitted).[5] A new trial "is not cause for an exception." *United States v. Alexander*, 106 F.3d 874, 877 (9th Cir. 1997); *see also Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1079 (9th Cir. 2010) ("District courts must implement both the letter and the spirit of the mandate.").[6]

*Second*, Grouse River downplays the flaws in its disclosures that caused this Court to exclude certain categories of its damages. The Ninth Circuit agreed with this Court that "Rule

---

[5] Courts may sometimes revisit rulings before entering judgment, but not once the ruling has been addressed by the appellate court. *See, e.g.*, *Robins v. Spokeo, Inc.*, 742 F.3d 409, 411 (9th Cir. 2014), *vacated and remanded on other grounds*, 136 S. Ct. 1540 (2016).

[6] In fact, Grouse River implicitly recognized that the Ninth Circuit's affirmance of the discovery sanction would carry over to any new trial. It petitioned the Ninth Circuit for rehearing specifically to overturn that sanction. *See generally* Grouse River Pet'n for Reh'g, 9th Cir. Dkt. No. 50. The Ninth Circuit denied that petition.

26(a)(1)(A)(iii) contemplates damages computation analysis and explanation" and that "Grouse River did not adequately disclose several of the damage calculations."  Mem. Op. 8.  Grouse River's proposal to "provide a narrative explanation of how the calculations are derived, and from what sources" cannot cure the deficiencies identified.  As this Court recognized, the problems with Grouse River's disclosures were fundamental and wide-ranging, including (i) providing lump sum figures where more precise figures are required, (ii) failing to disclose assumptions, (iii) failing to show how certain figures related to the alleged fraud, (iv) failing to support the figures, and (v) seeking damages (*e.g.*, lost revenues) that it is not entitled to recover as a matter of law.  *See* Dkt. No. 327, at 4-7.

*Third*, Grouse River's own authorities recognize that new evidence should generally *not* be admitted at a new trial.  *See, e.g.*, *Yong ex rel. Yong v. Nemours Found.*, 432 F. Supp. 2d 439, 441 (D. Del. 2006) ("[A]s a general rule, a retrial should not involve the addition of new issues, evidence, or witnesses.").  And an oft-cited case giving district courts discretion to admit new evidence at a retrial makes clear that such evidence must have been "not otherwise readily accessible or known" at the time of the first trial.  *Cleveland ex rel. Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993) (cited in Wright & Miller, *Federal Practice and Procedure* § 2803 & nn.11-12), *abrogated in part on other grounds as recognized in US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010).  None of the cases Grouse River cites (*supra* at 3-4 and *infra* at 16-17) allowed a party to present evidence at a retrial that had been affirmatively *excluded* from the first trial—let alone evidence whose exclusion was upheld on appeal.[7]

*Fourth*, allowing Grouse River to re-do its damages disclosures now would be extremely prejudicial to Oracle.  Grouse River has the obligation to show harmlessness, *Torres v. City of Los*

---

[7]  Indeed, one of Grouse River's cases specifically denied a request to introduce testimony at a new trial—following a mistrial rather than an appeal—that had been excluded from the first trial as a discovery sanction for inadequate disclosure.  *See Hoffman v. Tonnemacher*, No. CIV F 04-5714 AWI DLB, 2006 WL 3457201, at *5 (E.D. Cal. Nov. 30, 2006) ("At the first trial, the Court excluded the testimony of Nurse Barbara Osburn as a sanction because [the defendant] failed to disclose Osburn's contact information in violation of Rule 26(a)(1)(A). . . .  It is true that there is now additional time for Plaintiff to depose Nurse Osburn since there will be a retrial, but the mere fact that a retrial will occur is generally insufficient grounds for a court to alter a previous ruling.").

1    *Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008), yet it proposes to impose a massive new burden on

2    Oracle.  Grouse River subjected Oracle to the time and expense of challenging its damages expert,

3    moving *in limine* to exclude Grouse River's eleventh-hour attempt to rely on inadequately

4    disclosed damages, and then trying a case based on the damages that this Court found to be

5    adequately disclosed.  Grouse River now wants to use the Ninth Circuit's remand for completely

6    unrelated reasons as a foothold to expand its recoverable damages and impose even more time and

7    expense on Oracle to challenge those damages in a new round of discovery and pre-trial motions.

8    The cases Grouse River cites (*infra* at 16-17) are inapposite, because they address the lack of

9    prejudice from delayed disclosures of experts before an *initial* trial.  Grouse River had its chance

10   to introduce expert and other evidence of damages at the first trial.  Almost all of that evidence

11   was excluded, and the exclusion was either not challenged on appeal or affirmatively upheld by

12   the Ninth Circuit.  Grouse River cites nothing that comes anywhere close to approving the do-over

13   it seeks.[8]

14        ***Fifth***, the Ninth Circuit's reversal of the dismissal of Grouse River's § 496 claim does not

15   require any new discovery or new damages calculations.  Grouse River's § 496 claim simply

16   repackages the exact same fraud allegations as a different cause of action.  Indeed, the Ninth Circuit

17   reversed the dismissal of the § 496 claim for that very reason:  It found that "because the district

18   court held that Grouse River had adequately pleaded its fraud claims, it follows that Grouse River

19   adequately pleaded theft by false pretense"—the linchpin of Grouse River's § 496 claim.  Mem.

20   Op. 4.  Moreover, the Ninth Circuit recognized that the jury verdict in Oracle's favor on Grouse

21   River's fraud claims would have rendered the dismissal of its § 496 claim harmless but for the

22   theoretical possibility that the verdict rested on the affirmative defense of waiver.  Mem. Op. 4-5.

23   _____

[8]       In analogizing to other cases, Grouse River insinuates (*infra* at 16-17) that it may seek to
24   add a new and unnamed damages expert.  Grouse River should not have the opportunity to add a
     new damages expert.  The time to disclose a damages expert expired—and expert discovery
25   closed—years ago.  *See* Dkt. No. 207.  Accordingly, Grouse River was unable to add a new
     damages expert for the first trial after Oracle successfully excluded the testimony of Grouse
26   River's first damages expert.  *See* Dkt. No. 292, at 14-19.  The Ninth Circuit's remand did not
     reopen fact or expert discovery, and the mere fact that the Ninth Circuit remanded for a possible
27   new trial does not give Grouse River carte blanche to add a new damages expert.  Moreover, any
     attempt to add a new expert would prove prejudice to Oracle, as Oracle would need to depose that
28   new expert, prepare a new expert rebuttal report, and likely, move to exclude any new expert
     opinions.

Contrary to what Grouse River says, the damages that flow from its § 496 claim are no broader than those that supposedly flow from its fraud claims.

**Finally**, the two new fraud allegations provide no basis to expand Grouse River's damages. Grouse River's initial damages calculations included all damages that supposedly flowed from NetSuite's misrepresentations, including allegations related to the supposed delay in going live on NetSuite as well as allegations related to updates.  Grouse River's initial damages calculations included any damages that would have flowed from the allegations in paragraphs 31 and 69.

    **b.**  **Grouse River Should Not Be Allowed To Amend Its Complaint For A Fifth Time**

This Court should also deny Grouse River's request to supplement or amend its pleadings because of supposedly "new" information.  All of the information Grouse River points to is either not new or entirely irrelevant.

**First**, Grouse River completely misunderstands the purpose of supplemental pleadings under Federal Rule of Civil Procedure 15(d).  "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of *claims which arise after the initial pleadings are filed*."  *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981) (emphasis added); *see* Wright & Miller, *Federal Practice and Procedure* § 1504 (Rule 15(d) may allow a party to, *e.g.*, add new claims, forms of relief, or defenses, or cure a defective pleading).[9]  That is not what Grouse River proposes.  It does not seek to add new claims, or even to add new allegations regarding its dealings with NetSuite that gave rise to the claims that remain in the case.  Rather, it seeks to add allegations that have nothing to do with the relationship between Grouse River and NetSuite—and that are irrelevant to Grouse River's remaining claims.  All of Grouse River's remaining claims relate to whether NetSuite made fraudulent misrepresentations to *induce* Grouse River to enter into contracts with NetSuite *in 2014*.  Those claims properly focus on, *e.g.*, whether the alleged representations were

---

[9]  The primary case on which Grouse River relies addresses supplementing the pleadings to cure a potential standing problem, which may indisputably be cured through a supplemental pleading.  *See Food & Water Watch, Inc. v. EPA*, No. 17-cv-02162-EMC, 2021 WL 1893063, at *4 (N.D. Cal. May 11, 2021) ("The EPA does not dispute that Plaintiffs 'may cure standing deficiencies through supplemental pleadings.'" (quoting *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015))).

false *at that time*, whether NetSuite knew they were false *at that time*, and whether NetSuite had an intent to defraud *at that time*.  *See, e.g.*, *Manderville v. PCG&S Group, Inc.*, 55 Cal. Rptr. 3d 59, 68 (Ct. App. 2007).  Allegations about statements made by third parties as late as 2021 and allegations about data from 2015 onward have no bearing whatsoever on what was true, or NetSuite's knowledge and intent, *in 2014*.

**Second**, to the extent Grouse River is preemptively seeking to expand the evidence it may be able to offer at any new trial, it runs into its own case law recognizing that new evidence is generally not permitted, as well as the Rules of Evidence.  *See supra* at 13; *see also, e.g.*, Final Pretrial Order, Dkt. No. 292, at 7-8 (excluding evidence about certain other customers because its probative value was substantially outweighed by a danger of confusing the issues, misleading the jury, causing undue delay, and wasting time and/or because it was inadmissible hearsay).

**Third**, Oracle would suffer severe prejudice if Grouse River were permitted to supplement or amend its complaint at this stage of the litigation.  Oracle has invested substantial time and expense into the pre-trial, trial, and appellate proceedings.  It should not have to defend against new allegations that fall far outside of the scope of the Ninth Circuit's remand and that have nothing to do with Grouse River's remaining claims.  While Grouse River suggests (*supra* at 8) that Oracle would suffer no prejudice because the information is already in Oracle's files, that is false.  Most of the information Grouse River seeks to add to its complaint is from third parties.

**Finally**, if Grouse River wishes to supplement or amend its complaint, it should be required to file a properly noticed motion as Rule 15 requires, and Oracle should have the opportunity to respond.  *See* Fed. R. Civ. P. 15(d) ("*On motion and reasonable notice*, the court may, on just terms, permit a party to serve a supplemental pleading . . . ." (emphasis added)); Civil L.R. 7-1, 7-2.  Indeed, Grouse River acknowledges as much (*infra* at 19-20).

### C.  Grouse River Response to Oracle's Statement.

#### 1.  Good cause exists for allowing Grouse River to supplement its initial disclosures.

As in *Watt v. All Clear Bus. Sols., LLC,* 840 F. Supp. 2d 324, 327 (D.D.C. 2012), "no trial date has been set," Oracle "does not describe any significant prejudice [it] would suffer from

reopening discovery for the limited purpose of adding an economic expert [in this case supplementing Grouse River's initial-disclosures damages calculations], the disclosures "will lead to relevant evidence of the scope of the damages at issue, and [Oracle] will have a fair opportunity to meet the new evidence." *Cf. Torres v. Dematteo Salvage Co. Inc.,* No. CV14774ADSAKT, 2016 WL 845326, at *5 (E.D.N.Y. Mar. 2, 2016) ("courts in the Second Circuit addressing this issue 'have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial'" (citations omitted)).

Contrary to Oracle's footnote assertion, *supra,* fn. 8, Grouse River is not seeking to add a "new expert." It is merely seeking to supplement the damages information it has already supplied to NetSuite/Oracle numerous times with more specific detail of how this information is calculated. *See, e.g., Pronechen v. Sec'y of U.S. Dep't of Homeland Sec.,* No. CV 06-01726 LEW, 2011 WL 43552, at *1 (E.D. Cal. Jan. 6, 2011) ("Plaintiff substantially complied with his Rule 26 disclosure obligations by identifying to the Defendant the formula he relied upon in calculating his loss and providing to Defendant DHS the data regarding his interim earnings."). It is axiomatic that a company's founder and CEO is competent to testify as to the company's financial condition and the losses it has incurred. *See DSPT Int'l, Inc. v. Nahum,* 624 F.3d 1213, 1222–23 (9th Cir. 2010); *Pet Food Exp. Ltd. v. Royal Canin USA, Inc.,* No. C-09-1483 EMC, 2011 WL 6140874, at *11 (N.D. Cal. Dec. 8, 2011) ("business owners are qualified to testify about their companies' projected profits or losses due to their particularized knowledge ... by virtue of [their] position in the business.' Rule 701, adv. comm. note, ¶ 4 (2000).").

### 2.    Oracle cannot move for "summary judgment" on specific fraud allegations that the Ninth Circuit has held should go the jury.

The Ninth Circuit has held that paragraphs 31 and 69 of the SAC should go to the jury on retrial, "absent a challenge by Oracle on other grounds not considered that the district court deems proper."

Consistent with the Ninth Circuit's mandate, Oracle cannot, however, move for summary judgment on these discrete allegations. And it offers no other "grounds not considered." This Court did consider NetSuite's "grounds," in its prior Rule 12(c) rulings.

1     "[C]ourts throughout the country have held that Rule 56 does not authorize a motion which

2     is solely intended to establish the truth of particular facts. *See Milliner v. Mut. Sec., Inc.*, 2017 WL

3     1064978, at *5 (N.D. Cal. Mar. 18, 2017), vacated in part on other grounds, 2017 WL 3453340

4     (N.D. Cal. Aug. 11, 2017) (finding no authority "for the proposition that Rule 56 can be used as a

5     stand-alone motion to establish mere independent facts"); *Schiff v. Barrett,* 2011 WL 6963096, at

6     *21 (N.D. Cal. Sept. 8, 2011) ("Rule 56(g) does not authorize a party to bring an independent

7     motion to establish certain facts as true"); *see also Davis v. D.C.,* 2020 WL 6134670, at *6 n.8

8     (D.D.C. Oct. 19, 2020) (denying partial summary judgment as to a prima facie element of a claim;

9     citing cases); *Collins v. Cottrell Contracting Corp.,* 733 F. Supp. 2d 690, 698 (E.D.N.C. 2010)

10    (former Rule 56(d) [now Rule 56(g)] does not permit "an independent motion for adjudication of

11    undisputed facts prior to trial"); *Renguette v. Bd. of Sch. Trustees ex rel. Brownsburg Cmty. Sch.*

12    *Corp.,* 2007 WL 1536841, at *9 (S.D. Ind. May 23, 2007) (Rule 56 "[does] not authorize

13    independent motions that would dispose of disputed factual issues in litigation piecemeal")

14    (citation omitted)." In the present case, Plaintiff does not seek summary judgment, or summary

15    adjudication, with respect to any claim or defense or any part of any claim or defense. Rather,

16    Plaintiff seeks an adjudication of discrete, assertedly undisputed facts. The use of Rule 56 for this

17    purpose is inappropriate." *Robertson v. F. Martin*, No. CV 20-4173-JLS(E), 2021 WL 545895, at

18    *2 (C.D. Cal. Jan. 4, 2021); *see also Renguette v. Bd. of Sch. Trustees ex rel. Brownsburg Cmty.*

19    *Sch. Corp.,* No. 1:05-CV-1548-SEB-JMS, 2007 WL 1536841, at *9 (S.D. Ind. May 23, 2007)

20    ("However, the rule "do[es] not authorize independent motions that would dispose of disputed

21    factual issues in litigation piecemeal." (citation omitted)); *Davis v. D.C.,* 496 F. Supp. 3d 303, 312

22    (D.D.C. 2020) ("[A] party may not file a motion for partial summary judgment on a fact or an

23    element of a claim."  (citation omitted)).

24          Contrary to Oracle's assertions, the false representations set out in paragraphs 31 and 69

25    are set out in specific documents, as well as oral communications. *See* SAC ¶¶ 14, 31, 65-68. *See*

26    *also*  http://www.slideshare.net/CloudTechERP/netsuite-enterprise-brochure-28395890 (accessed

27    June 9, 2021).

28

1

### 3.    Oracle cannot move for summary judgment on the § 496 claim.

2    The Ninth Circuit held that Grouse River stated a viable claim for the jury to assess under

3  Penal Code § 496. That is the law of the case.

4    Oracle has provided no basis on which it would be able to have that claim dismissed as a

5  matter of undisputed fact and clear law. Given that both the Ninth Circuit and this Court have held

6  that Grouse River has valid claims for fraud, there is no basis upon which to dismiss the § 496

7  claim "as a matter of law."

8    Contrary to Oracle's *ipse dixit,* there have been no "developments in the case law on § 496

9  in the nearly five years since this Court dismissed Grouse River's § 496 claim" that would subject

10  that claim to summary adjudication. If there were any, the Ninth Circuit would have addressed

11  them. The only development that matters is the Ninth Circuit's ruling.

12    The California Supreme Court's pendng review of *Siry Investment L.P. v.*

13  *Farkhondehpour*, No. S262081 (rev. granted July 8, 2020), is irrelevant. So too is Cal. Penal Code

14  § 532(b), which applies to a criminal trial, not a civil one:

15    (b) Upon a trial for having, with an intent to cheat or defraud another designedly,
16  by any false pretense, obtained the signature of any person to a written instrument, or
   having obtained from any person any labor, money, or property, whether real or personal,
17  or valuable thing, the defendant cannot be convicted if the false pretense was expressed in
   language unaccompanied by a false token or writing, unless the pretense, or some note or
18  memorandum thereof is in writing, subscribed by or in the handwriting of the defendant,
   or unless the pretense is proven by the testimony of two witnesses, or that of one witness
19  and corroborating circumstances. This section does not apply to a prosecution for falsely
   representing or personating another, and, in that assumed character, marrying, or receiving
20  any money or property.

21  *See Switzer v. Wood*, 35 Cal.App.5th 116, 247 (2019) (setting out elements of a civil cause of

22  action), and Appendices 1 (*Switzer* jury instructions, at 3-4) and 2 (*Switzer* verdict form, at 10-11,

23  14-15) hereto (preponderance of the evidence). *Cf. Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479,

24  491 (1985); *In re EDC, Inc*., 930 F.2d 1275, 1280 (7th Cir. 1991); *Wilcox v. First Interstate Bank,*

25  *N.A.,* 815 F.2d 522, 532 (9th Cir. 1987) (all holding that the burden of proof in a Civil RICO action

26  is preponderance of the evidence).

### 4.    Grouse River should be allowed to move for leave to amend and/or
   supplement its complaint.

27

28  Oracle has not addressed the showing Grouse River has made above; Grouse River agrees

1  that it should file a motion for leave to amend and/or supplement, and Oracle should have an

2  opportunity to respond. The purpose of this joint case management statement is to set out the

3  parties' views on how the case should proceed going forward, not to brief specific substantive

4  issues.

5    The new evidence cited above does not simply go to what NetSuite told Grouse River

6  during the contract negotiations (and afterward, when it convinced Grouse River that it should

7  stick with the NetSuite "solution"), but what NetSuite knew at the time – and it knew that its

8  "solution" was flawed and could not provide the functionality Grouse River had asked for and

9  NetSuite said it could and would deliver.

10   This information is in NetSuite's (now Oracle's) files.

11   **II.  Proposed Schedule Going Forward.**

12   The parties do not know the state of the Court's calendar or whether and when it will hold

13 jury trials, and in what format. That said, assuming there will be a trial, the following sets forth

14 their positions.

15   **A.  Grouse River Position**

16   Assuming the Court permits Grouse River to serve amended Rule 26(a) initial disclosures

17 and a supplemental (or further amended) complaint, the Court should permit focused but limited

18 discovery as to the amended initial disclosures and the supplemental allegations, with discovery

19 to close on September 1.

20   Grouse River would request a new trial date in mid-October, with the standard pretrial

21 events (witness lists, etc.) scheduled consistent with the Court's normal chain-of-pretrial events.

22 For the reasons set out above, Oracle has no basis upon which to move for summary judgment on

23 any issue. Latham & Watkins is a major, international law firm. As reflected in its fees submission,

24 it has some 15 or more timekeepers devoted to this case. It has just added another attorney of

25 record to its team. *See* Dkt. 421. It cannot be that undisclosed "other trial obligations this fall"

26 warrant putting off the trial for eight months out.

27

28

**B.    Oracle's Position**

Oracle proposes that the Court adopt the following schedule, which would provide time for Oracle to file, and the Court to hear, its motion for summary judgment:

Oracle's Motion for Summary Judgment:    September 17, 2021

Grouse River's Opposition:    November 12, 2021

Oracle's Reply:    December 10, 2021

Hearing on Summary Judgment:    January 6, 2022

Trial:    April 2022

In any event, due to counsel's other trial obligations this fall, Oracle requests a trial date no earlier than April 1, 2022.

**III.    Settlement**

**A.    Grouse River Position**

Grouse River would request that the Court assign this case for settlement to Chief Magistrate Judge Spero. The parties should have sufficient information at this point to have substantive discussions, aided by Judge Spero. to discuss whether a settlement is possible. Assignment to Judge Spero is not premature, particularly, as the Court knows, given that Judge Spero will maintain a continuing role in overseeing settlement discussions if there is no immediate resolution.

**B.    Oracle's Position**

Oracle believes it would be premature to refer this case for mediation until the Court resolves Grouse River's requests above to update its damages disclosure and to change its damages theory yet again.  Oracle, however, has no objection to Chief Magistrate Judge Spero.

**IV.    Trial**

**A.    Grouse River Position**

Grouse River would request a trial of seven days, with time split evenly between the parties. Experience has shown that the first trial did not provide enough time for an adequate presentation.

1 **B.     Oracle's Position**

2          The Court and the parties know this case is capable of being tried in five days.  Given the

3   scope of remand, no additional time is necessary.

4

5   Dated:  July 15, 2021                                Respectfully submitted,

6                                                        LATHAM & WATKINS LLP

7                                                        By:     /s/ *Sarah M. Ray*
                                                                 Sarah M. Ray
8
                                                                 Attorney for Defendant ORACLE
9                                                                CORPORATION

10

11                                                       KIEVE LAW OFFICES

12                                                       By:     /s/ *Loren Kieve*
                                                                 Loren Kieve
13
                                                                 Attorney for Plaintiff GROUSE RIVER
14                                                               OUTFITTERS LTD.

15

16                             **SIGNATURE ATTESTATION**

17          I, Sarah M. Ray, am the ECF User whose identification and password are being used to file

18   the foregoing Joint Case Management Statement.  Pursuant to Civil Local Rule 5-1(i)(3) regarding

19   signatures, I attest that concurrence in the filing of this document has been obtained.

20

21   Dated:  July 15, 2021                                LATHAM & WATKINS LLP

22                                                        By:     /s/ *Sarah M. Ray*
                                                                  Sarah M. Ray
23                                                                Attorney for Defendant ORACLE
                                                                  CORPORATION
24

25

26

27

28